# EXHIBIT 2

1  MORGAN, LEWIS & BOCKIUS LLP
   ROBERT JON HENDRICKS (SBN 179751)
2  STEPHEN L. TAEUSCH (SBN 247708)
   One Market, Spear Street Tower
3  San Francisco, CA 94105
   Tel: 415.442.1000
4  Fax: 415.442.1001
   rhendricks@morganlewis.com
5  staeusch@morganlewis.com

6  Attorneys for Defendants
   UBER TECHNOLOGIES, INC.,
7  TRAVIS KALANICK and RYAN GRAVES

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11 DOUGLAS O'CONNOR and THOMAS          Case No. 13-03826-EMC
   COLOPY, individually and on behalf of all
12 others similarly situated,            Hon. Edward M. Chen

13                Plaintiffs,            **DEFENDANTS' REPLY IN SUPPORT OF
                                         MOTION TO DISMISS PLAINTIFFS'**
14          v.                           **CLASS ACTION COMPLAINT**

15 UBER TECHNOLOGIES, INC., TRAVIS       Fed. R. Civ. P. 12(b)(6)
   KALANICK, and RYAN GRAVES,
16                                       Date:        Nov. 14, 2013
                Defendants.              Time:        1:30 p.m.
17                                       Courtroom:   5

18                                       Complaint Filed:   August 16, 2013

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
ATTORNEYS AT LAW
 SAN FRANCISCO

Case No. 13-03826-EMC

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|

I. PRELIMINARY STATEMENT ........................................................................... 1

II. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ........................................................................... 2

    A. The California Common Law And Statutory Claims Constitute An Extraterritorial Application Of California Law ............................................. 2

    B. Plaintiffs' Fifth Cause Of Action For Expense Reimbursement Under California Labor Code § 2802 Fails To Allege Facts Sufficient To Demonstrate The Existence Of An Employee-Employer Relationship ............... 6

    C. The Court Should Dismiss Plaintiffs' Fourth Cause Of Action Captioned As Statutory Gratuity Violation Based Upon California Labor Code § 351 .......... 7

        1. California Labor Code § 351 does not provide a private right of action. ...................................................................................... 7

        2. Plaintiffs fail to allege sufficient facts to demonstrate that they would be entitled to any purported gratuities. ................................ 7

    D. The Court Should Dismiss Plaintiffs' Third Cause Of Action For Breach Of Implied Contract ................................................................................. 9

    E. The Court Should Dismiss Plaintiffs' Second Cause Of Action Captioned As Unjust Enrichment/Quantum Meruit Because It Fails To State Sufficient Facts Upon Which Relief Can Be Granted ............................ 10

        1. Unjust enrichment is not a cause of action. ................................. 10

        2. There can be no claim for quantum meruit where there is an express contract covering compensation. ...................................... 10

    F. The Court Should Dismiss Plaintiffs' First Cause Of Action Captioned As Tortious Interference With Contractual And/Or Advantageous Relations Because It Fails To State Sufficient Facts Upon Which Relief Can Be Granted ................................................................................................... 12

        1. Plaintiffs fail to allege sufficient facts to set forth a claim for tortious interference with contractual relations. ......................... 12

        2. Plaintiffs fail to allege sufficient facts to set forth a claim for tortious interference with prospective economic relations. ............ 12

    G. Plaintiffs' Sixth Cause Of Action Is Derivative Of Plaintiffs' Other Causes Of Action .................................................................................... 14

    H. Plaintiffs' Claims Against Kalanick And Graves Fail To State Sufficient Facts Upon Which Relief Can Be Granted As To Them ................................ 15

III. CONCLUSION ............................................................................................... 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 24448963

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................ 10

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ....................................................................................... 1, 15

*Diamond Multimedia Systems, Inc. v. Sup. Crt.,*
19 Cal. 4th 1036 (1999) ...................................................................................... 2

*DiFiore v. Am. Airlines, Inc.,*
646 F.3d 81 (1st Cir. 2011) ............................................................................... 11

*DiFiore v. American Airlines, Inc.,*
483 F. Supp. 2d 121 (D. Mass. 2007) ............................................................... 11

*Doe I v. Wal-Mart Stores, Inc.,*
572 F.3d 677 (9th Cir. 2009) .............................................................................. 6

*Durning v. First Boston Corp.,*
815 F.2d 1265 (9th Cir. 1987) ......................................................................... 6, 7

*Gravquick v. Trimble Navigation International,*
323 F.3d 1219 (2002) .......................................................................................... 4

*Hedging Concepts, Inc. v. First Alliance Mortg. Co.,*
41 Cal. App. 4th 1410 (1996) ................................................................. 3, 10, 11

*Hernandez v. Harvard University,*
2013 WL 1330842 (D. Mass. 2013) .................................................................. 11

*Jogani v. Sup. Ct.,*
165 Cal. App. 4th 901 (2008) ....................................................................... 3, 10

*Korea Supply Co. v. Lockheed Martin Corp.,*
29 Cal. 4th 1134 (2003) ............................................................................... 13, 14

*Kyne v. Ritz-Carlton Hotel,*
835 F. Supp. 2d 914 (D. Haw. 2011) ........................................................... 11, 12

*Lance Camper Mfg. Corp. v. Republic Indem. Co.,*
44 Cal. App. 4th 194 (1996) ............................................................................... 9

*Lectrodryer v. Seoulbank,*
77 Cal. App. 4th 723 (2000) ............................................................................. 10

*Melchior v. New Line Prods., Inc.,*
106 Cal. App. 4th 779 (2003) ........................................................................... 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

Case No. 13-03826-EMC

DEFS. REPLY ISO MOTION TO DISMISS

DB2/ 24448963

**TABLE OF CONTENTS**
(continued)

Page

*Moreno v. L.A. Child Care & Dev. Council, Inc.*,
    963 F. Supp. 876 (C.D. Cal. 1997) ............................................. 9

*Narayan v. EGL, Inc.*,
    616 F.3d 895 (9th Cir. 2010) ............................................. 3, 4, 5

*Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*,
    515 F.2d 1200 (5th Cir. 1975) ............................................. 6

*Olnick v. BMG Entertainment*,
    138 Cal. App. 4th 1286 (2006) ............................................. 4

*Overka v. American Airlines, Inc.*,
    265 F.R.D. 14 (D. Mass. 2010) ............................................. 10

*Pardi v. Kaiser Found. Hosps.*,
    389 F.3d 940 (9th Cir. 2004) ............................................. 13

*People v. Taylor*,
    48 Cal. 4th 574 (2010) ............................................. 10

*Reeves v. Hanlon*,
    33 Cal. 4th 1140 (2004) ............................................. 3, 12

*Rice v. Fox Broad Co.*,
    330 F.3d 1170 (9th Cir. 2003) ............................................. 14

*Roberts v. City of Palmdale*,
    5 Cal. 4th 363 (1993) ............................................. 10

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011) ............................................. 2

*Taylor v. Eastern Connection Operating, Inc.*,
    465 Mass. 191 (Mass. 2013) ............................................. 5

*Vernon v. State*,
    116 Cal. App. 4th 114 (2004) ............................................. 6

*Wadsworth v. KSL Grand Wailea Resort, Inc.*,
    818 F. Supp. 2d 1240 (D. Haw.) ............................................. 11, 12

*Willman v. Gustafson*,
    63 Cal. App. 2d 830 (1994) ............................................. 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

Case No. 13-03826-EMC

**TABLE OF CONTENTS**
(continued)

**Page**

**STATUTES**

Cal. Lab. Code
§ 350 .................................................................................................................................. 8
§ 350(e) ........................................................................................................................... 8, 9
§ 351 ................................................................................................................................ 4, 7
§ 2802 ......................................................................................................................... 4, 6, 14

Cal. Bus. & Profs. Code
§ 17200 ............................................................................................................................. 5, 7

**RULES AND REGULATIONS**

FRCP 8 ............................................................................................................................. 1, 15

**OTHER AUTHORITIES**

Commerce Clause of the United States Constitution .................................................................. 2

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

Case No. 13-03826-EMC

DEFS. REPLY ISO MOTION TO DISMISS

## I.     **PRELIMINARY STATEMENT**

Uber is a software technology company that provides lead generation services for transportation companies and drivers. Uber has developed a mobile application and associated software that enable members of the public to request transportation services from nearby drivers who have signed a software license agreement to use Uber's driver application. Request for Judicial Notice ("RJN") No. 1, SLOSA p. 1. The driver has the option to accept or decline each request for transportation received via the driver application. *Id.* at ¶ 4.2.2. Uber does not own or lease any for-hire vehicles, does not employ any drivers, and does not itself provide any transportation services. *Id.* at p. 1.

Plaintiffs entered into a licensing agreement with Uber to use the Uber driver application to increase their transportation business. *Id.* Under the terms of the agreement, Plaintiffs agreed to pay Uber a Fee per Ride, which is calculated as a percentage of each payment received from the rider for transportation service provided, whenever the Plaintiffs use the Uber driver application to accept a request for transportation from a member of the public. *Id.* at ¶¶ 5.1-5.3.

The gravamen of Plaintiffs' Complaint is that, despite the fact that Uber receives nothing but its contractually agreed upon Fee per Ride, Uber actually retains a portion of passenger "gratuities" for itself. Complaint ("Compt.") ¶¶ 15-16. But as explained in Defendants' moving papers, and as set forth in more detail below, Plaintiffs' Complaint must be dismissed because it utterly fails to meet the pleading standards required by Federal Rule of Civil Procedure 8 and articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Defendants have set forth extensive California authority, which Plaintiffs do not rebut, detailing why Plaintiffs' sparse and conclusory allegations are insufficient to state a claim upon which relief can be granted. Rather than address ***any*** of the binding authority cited by Defendants, Plaintiffs' Opposition attempts instead to rely upon cases from Hawaii and Massachusetts interpreting Hawaii's and Massachusetts' statutory and common law. The crux of Plaintiffs' arguments is – Hawaii and Massachusetts allowed it, so this Court should too. But regardless of what Hawaii or Massachusetts might do under different laws and with different

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1      Case No. 13-03826-EMC

DB2/ 24377285      DEFS. REPLY ISO MOTION TO DISMISS

1  facts, this Court is obligated to comply with California authority – authority which conclusively

2  demonstrates that Plaintiffs' Complaint is simply insufficient.  But even if the Court were to

3  consider this out-of-state authority, it still would not be enough to salvage Plaintiffs' defective

4  Complaint.  That is because the authority cited by Plaintiffs is factually and legally

5  distinguishable.

6         Quite simply, Plaintiffs' Complaint fails to allege sufficient facts to state a claim under

7  California law.  As a result, Defendants' motion should be granted in full.

8  **II.    PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH**
   **RELIEF CAN BE GRANTED**

9
   **A.    The California Common Law And Statutory Claims Constitute An**
10        **Extraterritorial Application Of California Law**

11        In *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011), the California Supreme Court

12  explained that there is a presumption ***against*** extraterritorial application of California law.  *Id.* at

13  1207.  The court explained that courts should presume that a California statute was intended to

14  have no application to events occurring outside California, unless such intent was clearly

15  expressed or reasonably inferred from the language of the statute, or the statute's purpose, subject

16  matter or history.  *Id.* (noting "[n]either the language of the UCL nor its legislative history

17  provides any basis for concluding the Legislature intended the UCL to operate extraterritorially");

18  *see also Diamond Multimedia Systems, Inc. v. Sup. Crt.*, 19 Cal. 4th 1036, 1059 (1999).  Plaintiffs

19  do not dispute that a presumption against extraterritorial application exists, nor do they dispute

20  that, as a general matter, the application of California statutory and common law claims to a

21  putative class of non-California residents predicated upon conduct that takes place wholly outside

22  of California's borders constitutes an extraterritorial exercise of power by a state in violation of

23  the Commerce Clause of the United States Constitution.  Instead, Plaintiffs suggest that California

24  law may nonetheless apply in this case to individuals who never set foot in California and to

25  conduct that occurred entirely outside of California simply because the Licensing Agreement

26  contains a California choice-of-law provision.  *See generally* Plaintiffs' Opposition to

27  Defendants' Motion to Dismiss ("Opp.") at pp. 2-6.  But that argument is a red herring because

28  the dispute in this case is unrelated to the substance of the parties' contractual obligations under

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2                                    Case No. 13-03826-EMC

DB2/ 24377285                 DEFS. REPLY ISO MOTION TO DISMISS

the Licensing Agreement. The dispute in this case relates, instead, to Plaintiffs' allegations that Defendants violated obligations that arose outside the context of the Licensing Agreement (e.g., obligations that might exist if Plaintiffs were Uber employees or obligations created under an implied-in-law contract).[1]

For example, Plaintiffs' first cause of action is for tortious interference with contractual and/or advantageous relationships. But by its very terms, such a claim is not about the Licensing Agreement. Rather, Plaintiffs' claim concerns an alleged interference with a *separate* and *independent* contract alleged to exist between Plaintiffs and third parties – a contract to which Defendants are not even alleged to be parties. *See generally Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004). As a result, the Licensing Agreement's choice-of-law provision is wholly inapplicable to this claim.

Similarly, Plaintiffs' second cause of action is for *quantum meruit*.[2] However, "[a] quantum meruit or quasi-contractual recovery rests upon the equitable theory that a contract to pay for services rendered is ***implied by law*** for reasons of justice." *Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal. App. 4th 1410, 1419 (1996) (emphasis added). Certainly, any choice-of-law provision contained in the Licensing Agreement is inapplicable where Plaintiffs are alleging a claim based upon a contract that is "implied by law for reasons of justice," and not a claim arising from the Licensing Agreement.

The same is true for Plaintiffs' third cause of action for breach of ***implied*** contract.

---

[1]    *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010) explains the distinction between rights arising under a contract and extra-contractual rights arising under the Labor Code. The issue in *Narayan* was whether a contractual choice of law provision requiring use of Texas law applied to alleged California Labor Code violations. The Ninth Circuit explained that the alleged Labor Code violations did not arise out of the contract, reasoning that the plaintiffs' claims depended on whether they were employees (as opposed to independent contractors), which in turn depended "on the definition that the otherwise governing law – not the parties – give to the term 'employee'" *Id.* The court further explained that, although the contracts might be relevant, the Labor Code claims did not arise out of them: "While the contracts will likely be used as evidence to prove or disprove the statutory claims, the claims do not arise out of the contract, involve the interpretation of any contract terms, or otherwise require there to be a contract." *Id.*

[2]    While it is also captioned as for unjust enrichment, as explained in Defendants' moving papers, unjust enrichment is "a general principle underlying various doctrines and remedies." *Jogani v. Sup. Ct.*, 165 Cal. App. 4th 901, 911 (2008). It is not a cause of action.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3                                          Case No. 13-03826-EMC

DB2/ 24377285                    DEFS. REPLY ISO MOTION TO DISMISS

1    Necessarily, Plaintiffs' claim does not arise out of the Licensing Agreement but is instead

2    premised upon the alleged existence of an implied contract that is completely independent from

3    the parties' actual written contract.  Plaintiffs do not explain why this implied contract would

4    have any implied choice-of-law provision governing its terms, nor could they.

5           As with Plaintiffs' other claims, Plaintiffs' fourth and fifth causes of action for violation

6    of California Labor Code §§ 351 and 2802 are also independent of the Licensing Agreement.  *See*

7    *Narayan*, 616 F.3d at 899.  Plaintiffs' attempt to analogize these claims to *Gravquick v. Trimble*

8    *Navigation International*, 323 F.3d 1219 (2002), is unpersuasive.  In *Gravquick*, the Ninth Circuit

9    choice-of-law provision in the contract at issue applied to a claim for violation of the California

10   Equipment Dealers Act ("CEDA"), which expressly regulates the business relationships between

11   certain parties.  Specifically, it prohibits the termination, cancellation, and non-renewal of

12   specific contracts, except under specific circumstances.  *Id.* at 1222.  In *Gravquick*, the plaintiff

13   alleged that the defendant refused to renew a CEDA-covered contract without good cause and

14   without proper notice as required by CEDA.  In other words, the plaintiff alleged a claim for

15   violation of California law that expressly regulated the agreement at issue.

16          Here, in contrast, the statutory provisions upon which Plaintiffs base their claims do not

17   regulate the formation or termination of the Licensing Agreement.  Rather, they establish

18   independent obligations that exist solely between employers and employees.  Because Plaintiffs

19   are seeking to recover based upon independent obligations established by statute and not found in

20   the Licensing Agreement, the choice-of-law provision is inapplicable.

21          Plaintiffs' efforts to analogize this case to *Olnick v. BMG Entertainment*, 138 Cal. App.

22   4th 1286 (2006), are equally unpersuasive.  The contract at issue in *Olnick* was an employment

23   contract, and the claims asserted were based upon statutes specifically designed to regulate that

24   employment relationship.  As the court explained, the parties' obligations under the statutes arose

25   from and could only exist because of the employment contract.  *Id.* at 1297-98.  Here, in contrast,

26   the express language of the Licensing Agreement states that it is *not* creating an employment

27   contract or an employer-employee relationship.  *See, e.g.*, RJN No. 1, SLOSA ¶ 7.2 ("The Parties

28   expressly agree that this Agreement is not an employment agreement or employment relationship.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4                                    Case No. 13-03826-EMC

DB2/ 24377285                    DEFS. REPLY ISO MOTION TO DISMISS

The parties further agree that no employment contract is created between Uber and the Drivers."). Given that the parties expressly stated that the Licensing Agreement is not an employment agreement or established an employment relationship, it cannot be said that the parties intended for the choice-of-law provision of the Licensing Agreement to somehow incorporate California law pertaining to employment relationships.[3] Indeed, the parties' express language demonstrates that their intent was to *exclude* such law from the Licensing Agreement such that any purported obligations under the statute do not arise from or exist because of the Licensing Agreement.

Plaintiffs' sixth cause of action for violation of California Business and Professions Code § 17200 is derivative of Plaintiffs' other claims. Because Plaintiffs' other claims involve an extraterritorial application of California law, so too does Plaintiffs' claim under California Business and Professions Code § 17200.[4]

Finally, even if Plaintiffs were correct – which they are not – their arguments would still be wholly inapplicable to Defendants Kalanick and Graves. Indeed, Plaintiffs have failed to allege the existence of any contractual relationship between Plaintiffs and Kalanick or Graves that would permit the extraterritorial application of California law to either of them. Given this, Plaintiffs' claims fail and should be dismissed.

> **B.** **Plaintiffs' Fifth Cause Of Action For Expense Reimbursement Under California Labor Code § 2802 Fails To Allege Facts Sufficient To Demonstrate The Existence Of An Employee-Employer Relationship**

Plaintiffs do not dispute that, to the extent they have failed to set forth sufficient facts to

---

[3] Plaintiffs' attempted reliance on *Taylor v. Eastern Connection Operating, Inc.*, 465 Mass. 191 (Mass. 2013), is also unavailing. As a preliminary matter, this case was decided entirely under Massachusetts law. *Cf. Narayan*, 616 F.3d at 899. As such, it is wholly inapplicable. Regardless, the choice-of-law provision in *Taylor* was *far* broader than the provision applicable here. There, in addition to the contract, the parties agreed that "*all rights and obligations of the parties*" were to be decided under Massachusetts law. Thus, whether the plaintiffs were entitled to overtime bore directly on their "rights and obligations." That is not the situation here because the choice-of-law provision is limited to the Licensing Agreement which expressly excludes employment issues.

[4] While not pled in the Complaint, to the extent Plaintiffs are attempting to base this claim on non-derivative conduct – such as the allegation that Uber's conduct is "deceptive," Plaintiffs' claim would still constitute an extraterritorial application of California law. Whether Uber's conduct – independent of the Licensing Agreement – is "deceptive" is not based on the Licensing Agreement, and the choice-of-law provision would be inapplicable.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 24377285

5

DEFS. REPLY ISO MOTION TO DISMISS

Case No. 13-03826-EMC

1   demonstrate an employee-employer relationship, their fifth cause of action fails.  Similarly,

2   Plaintiffs do not dispute that the *only* allegation in the Complaint concerning the existence of an

3   employment relationship is that Uber purportedly requires the Plaintiffs to "follow a litany of

4   detailed requirements."  Compt. ¶ 22.  But as previously explained in Defendants initial papers,

5   this allegation "is a conclusion, not a factual allegation stated with any specificity."  *Doe I v. Wal-*

6   *Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009).  Indeed, Plaintiffs fail to provide any factual

7   assertions concerning the nature of the requirements or how they are purportedly imposed.  As

8   such, there is no way to determine whether Uber's alleged conduct reflects the "comprehensive

9   and immediate level of 'day-to-day' authority over employment decisions" necessary to create an

10  employee-employer relationship.  *See generally Vernon v. State*, 116 Cal. App. 4th 114, 127-28

11  (2004).

12       *Doe I* is particularly instructive here.  Like the Complaint in this case, the complaint in

13  *Doe I* alleged that Wal-Mart exercised control over the plaintiff's day-to-day employment.

14  However, the Ninth Circuit expressly rejected such conclusory allegations as insufficient and not

15  stated with sufficient specificity.  *Id.*  Plaintiffs' conclusory allegations here are no different and

16  should be similarly rejected.

17           Regardless, Plaintiffs' conclusory allegations must be rejected because they are

18  expressly contradicted by the parties' contract, without any explanation for the basis of this

19  conflict.  Indeed, the Court must disregard allegations in the complaint that are contradicted by

20  facts established by reference to documents incorporated into the Complaint.  *Nishimatsu Constr.*

21  *Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Durning v. First Boston*

22  *Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).  Here, the plain language of the Licensing Agreement

23  demonstrates that Uber did not exercise the comprehensive and immediate level of day-to-day

24  authority over employment decisions necessary to create an employee-employer relationship.

25  While it is true that merely labeling an individual as an independent contractor is not *dispositive*

26  of employment status, the Licensing Agreement does more than label Plaintiffs as independent

27  contractors.  It makes clear that the parties have expressly agreed that the transportation

28  companies alone "exercise[] *sole control* over the [Plaintiffs]."  RJN No. 1, SLOSA ¶ 3.5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6                                           Case No. 13-03826-EMC

DB2/ 24377285                    DEFS. REPLY ISO MOTION TO DISMISS

(emphasis added). Further, the Licensing Agreement makes clear that "Uber **does not** … exercise **any control** over the [Plaintiffs'] actions or the operation or physical condition of the Vehicle (except as provided under the Agreement)."[5] *Id.* (emphasis added). Because the conclusory allegation of control in Plaintiffs' Complaint conflicts with the parties' express agreement that Uber does not exercise any control over Plaintiffs' actions or the operation or physical condition of their vehicle, Plaintiffs' conclusory allegations must be disregarded.

Because Plaintiffs have failed to allege facts sufficient to demonstrate the existence of an employee-employer relationship, Plaintiffs' fifth cause of action fails to state a claim upon which relief can be granted and should be dismissed by the Court.

### C. The Court Should Dismiss Plaintiffs' Fourth Cause Of Action Captioned As Statutory Gratuity Violation Based Upon California Labor Code § 351

#### 1. *California Labor Code § 351 does not provide a private right of action.*

Plaintiffs do not dispute that California Labor Code § 351 does not provide a private right of action. Rather, they contend that they are pursuing the claim through California Business and Professions Code § 17200. *See* Opp. at p. 8. However, as stated in Defendants' moving papers and which Plaintiffs do not dispute, if this is the case then Plaintiffs' claim is duplicative of their sixth cause of action and should be dismissed for that reason.

#### 2. *Plaintiffs fail to allege sufficient facts to demonstrate that they would be entitled to any purported gratuities.*

Regardless, Plaintiffs' claim still fails because they do not allege sufficient facts to demonstrate that they are entitled to any purportedly withheld "Gratuities" as defined by California Labor Code § 350. Plaintiffs do not dispute that their Complaint lacks any allegation that Defendants collect any money that was **voluntarily** left by any passenger beyond the designated fare. Indeed, even if the allegations contained in Plaintiffs' Complaint are accepted as

---

[5]     The Licensing Agreement provides that Uber will allow the Users to rate the Transportation Companies and Drivers on a five-star scale. The Transportation Company and Drivers acknowledge that there is a minimum star-rating that they must maintain in order to continue to receive access to Uber's Services and Software. RJN No. 1, SLOSA ¶ 4.3.3. However, the star-rating that the Transportation Companies and Drivers receive is not set by Uber or controlled by Uber. Rather, it is set by the Transportation Companies' and Drivers' passengers.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

Case No. 13-03826-EMC

DB2/ 24377285

DEFS. REPLY ISO MOTION TO DISMISS

1    true,[6] Plaintiffs are not referring to tips but to purported fees that are "included in the total cost of

2    the car service." Compt. ¶ 14.

3           Using Plaintiffs' construct for the purposes of argument only, given the plain language of

4    California Labor Code § 350(e), this alleged fee included in the total cost of the car service

5    cannot constitute a "Gratuity" under the statute because it is not an amount "over and above the

6    actual amount due the business for services rendered." Indeed, because it is alleged to be a

7    mandatory fee that is included in the total cost of the car service, it necessarily is the actual

8    amount due for the service rendered. Because it is alleged to be mandatory, the passengers have

9    no discretion to refuse to pay the fee, or to pay a lower fee. Rather, the passenger is obligated to

10   pay the full fee as part of the amount due for the services rendered as a matter of contract.

11          Plaintiffs argue that because under Uber's articulation of the Labor Code, a mandatory

12   gratuity included by a restaurant on the menu for large parties would not constitute a "Gratuity"

13   under California Labor Code § 350(e), Uber's articulation of the rule is "nonsensical." Opp. at p.

14   9. But putting Plaintiffs' personal beliefs aside, Plaintiffs fail to explain why this is a

15   "nonsensical" result. Uber's articulation of the rule is not only consistent with the plain language

16   of the statute, it is also consistent with the interpretive guidance issued by the California

17   Department of Labor Standards Enforcement ("DLSE"). In fact, according to the DLSE, "a

18   specified required service amount listed on the menu of an establishment" is not a "Gratuity"

19   under California Labor Code § 350(e) because such amounts are "owed by the patron to the

20   establishment" and are **not** voluntary. RJN No. 2. In other words, the DLSE does not view

21   Uber's articulation of the rule as "nonsensical."

22          Given this, the alleged fee that the passengers are required by contract to pay as part of the

23   fare is not a "Gratuity" under the plain language of California Labor Code § 350(e). Therefore,

24   Plaintiffs have failed to allege sufficient facts to state a cause of action and this claim must be

25   dismissed.

26

27   _____
     [6]      Uber disputes Plaintiffs' mischaracterization of the fee structure for transportation
28   services requested via the Uber application, but understands for purposes of this motion that
     Plaintiffs' allegations, if they are specific and non-conclusory, must be accepted as true.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 24377285

8                                                        Case No. 13-03826-EMC
DEFS. REPLY ISO MOTION TO DISMISS

**D.** **The Court Should Dismiss Plaintiffs' Third Cause Of Action For Breach Of Implied Contract**

As explained in Uber's moving papers, "[i]t is well settled that an action based on an implied-in-fact … contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996). Here, the Licensing Agreement expressly details how fares and Uber's fees will be collected, calculated, and paid – i.e., Uber is authorized to collect the fare from the passengers on behalf of Plaintiffs, deduct its fee from the fare, and then remit the remainder of the fare to Plaintiffs. *See, e.g.*, RJN No. 1, SLOSA ¶¶ 5.1-5.3. Yet, Plaintiffs allege that Uber *also* had an "implied contract with the drivers to remit to them the total proceeds of all gratuities that are collected from customers." Opp. at p. 15. However, according to Plaintiffs' Complaint, those gratuities are mandatory and included in the passengers' fare. *See, e.g.*, Compt. ¶ 14. Therefore, there cannot exist an express contract concerning the collection and disbursement of fares concurrently and coexistent with an implied contract concerning the collection and disbursement of fares.[7]

As explained in Uber's moving papers, in order to assert a claim for breach of an implied contract, Plaintiffs must first allege that an implied contract actually existed as manifested by the parties' conduct "in light of the surrounding circumstances [and] their tacit understanding." *Moreno v. L.A. Child Care & Dev. Council, Inc.*, 963 F. Supp. 876, 879 (C.D. Cal. 1997). Plaintiffs do not dispute that their Complaint is devoid of *any* allegations demonstrating that an implied contract existed. Indeed, nowhere in their opposition do they cite to the Court any specific factual allegations asserted in the Complaint that set forth the parties' tacit understanding of the existence of the purported implied contract. Given the absence of factual allegations supporting the existence of an implied contract, Plaintiffs' claim must necessarily be dismissed. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Naked assertions devoid of 'further factual enhancement'" are inadequate).

---

[7] It should also be noted that the Licensing Agreement contains an integration clause indicating that the Licensing Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter. RJN No. 1, SLOSA ¶ 13.3.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    **E.    The Court Should Dismiss Plaintiffs' Second Cause Of Action Captioned As Unjust Enrichment/Quantum Meruit Because It Fails To State Sufficient Facts Upon Which Relief Can Be Granted**

2

3           ***1.    Unjust enrichment is not a cause of action.***

4           The California courts have made clear; "[U]njust enrichment is not a cause of action."

5    *Jogani*, 165 Cal. App. 4th at 911.  Rather, "it is a general principle underlying various doctrines

6    and remedies."  *Id*; *see also Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793

7    (2003).  Plaintiffs fail to present **any** California authority that is to the contrary.  Instead, Plaintiffs

8    argue that courts in Hawaii and Massachusetts "have allowed common law claims – including for

9    unjust enrichment" to proceed.  Opp. at pp. 14-15.  The mere fact that both Hawaii and

10   Massachusetts recognize unjust enrichment as a common law cause of action does not change the

11   fact that California case law does not.[8]

12           ***2.    There can be no claim for quantum meruit where there is an express contract covering compensation.***

13

14          Under California law, "[a] *quantum meruit* or quasi-contractual recovery rests upon the

15   equitable theory that a contract to pay for services rendered is implied by law for reasons of

16   justice."  *Hedging Concepts, Inc.*, 41 Cal. App. 4th at 1419.  "However, it is well settled that there

17   is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have

18   an actual agreement covering compensation."  *Id.*; *Willman v. Gustafson*, 63 Cal. App. 2d 830

19   (1994) (holding there can be no implied promise to pay reasonable value for services when there

20   is an express agreement to pay a fixed sum).  Plaintiffs concede that the Licensing Agreement sets

21   forth the parties' compensation agreement.  However, they argue that it "does not specify that a

22   ───────────────

[8]       Plaintiffs also contend that in *Overka v. American Airlines, Inc.*, 265 F.R.D. 14 (D. Mass. 2010), the District Court of Massachusetts held that a claim for unjust enrichment was "viable under California common law."  Opp. at p. 11.  However, the *Overka* court was relying on *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723 (2000), which involved a purported claim for "unjust enrichment."  But this case does not hold that, in fact, there exists an independent cause of action for unjust enrichment.  As a result, Plaintiffs' citation to it is inapposite.  Cases are not authority for propositions they do not consider.  *See Roberts v. City of Palmdale*, 5 Cal. 4th 363, 372 (1993) ("Obviously, cases are not authority for propositions not considered therein."); *People v. Taylor*, 48 Cal. 4th 574, 626 (2010) ("It is axiomatic that an opinion does not stand for a proposition the court did not consider.").  Regardless, *Lectrodryer* was decided before both *Jogani* and *Melchior*, both of which came out of the same appellate district as *Lectrodryer*.  So, to the extent *Lectrodryer* is inconsistent with *Jogani* and *Melchior*, it must be disregarded.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                                        10                          Case No. 13-03826-EMC
DB2/ 24377285                  DEFS. REPLY ISO MOTION TO DISMISS

1  portion of the gratuity intended for drivers would be retained by Uber." Opp. at p. 14. But

2  Plaintiffs' argument is immaterial. Because as Plaintiffs admit the parties have an **actual**

3  **agreement** covering compensation, there is no basis for an implied-in-law promise to pay for

4  services rendered. *Willman*, 63 Cal. App. 2d 830. Indeed, the Licensing Agreement contains an

5  integration clause that provides that it constitutes the parties' "entire agreement and

6  understanding … with respect to its subject matter." RJN No. 1, SLOSA ¶ 13.3. Because the

7  Licensing Agreement constitutes the parties' entire agreement and understanding regarding

8  compensation, there cannot simultaneously exist an implied contract covering that very same

9  issue.

10      Plaintiffs attempt to analogize their claim to *DiFiore v. American Airlines, Inc.*, 483 F.

11  Supp. 2d 121 (D. Mass. 2007). However, *DiFiore* was decided under Massachusetts common

12  law. Indeed, there is absolutely no examination or application of California common law. As

13  such, it is wholly inapplicable.[9] Regardless, *DiFiore* is factually distinguishable. Critically, in

14  *DiFiore* the parties did ***not*** have an actual agreement covering compensation. Here, the parties

15  do. It is the existence of this actual agreement that necessarily dooms Plaintiffs' claims.[10]

16      Plaintiffs also attempt to analogize their claim to *Kyne v. Ritz-Carlton Hotel*, 835 F. Supp.

17  2d 914 (D. Haw. 2011), *Wadsworth v. KSL Grand Wailea Resort, Inc.*, 818 F. Supp. 2d 1240 (D.

18  Haw.), and *Hernandez v. Harvard University*, 2013 WL 1330842 (D. Mass. 2013). ***But none of***

19  ***these cases actually involved a claim of quantum meruit.*** As such, they are irrelevant.

20  Additionally, like *DiFiore*, these cases are distinguishable because they were not decided under

21  California law and the parties did not have an actual agreement covering compensation.

22      Given the existence of an express contract governing compensation, Plaintiffs are unable

23  to state a claim in *quantum meruit,* and this claim should be dismissed with prejudice.

24

25  ───────────────
[9]    It should be noted that in *DiFiore* the Court ultimately granted summary judgment on the

26  *quantum meruit* claim. *See DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 84 (1st Cir. 2011).

27  [10]    It should also be noted that *DiFiore* does not include any substantive legal analysis of the
claims or the basis for the claims. Rather, its primary focus is on whether the plaintiffs' claims

28  were preempted by the Airline Deregulation Act, which is not at issue in this litigation.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

Case No. 13-03826-EMC

DB2/ 24377285

DEFS. REPLY ISO MOTION TO DISMISS

**F.**   **The Court Should Dismiss Plaintiffs' First Cause Of Action Captioned As Tortious Interference With Contractual And/Or Advantageous Relations Because It Fails To State Sufficient Facts Upon Which Relief Can Be Granted**

### 1.   *Plaintiffs fail to allege sufficient facts to set forth a claim for tortious interference with contractual relations.*

The California Supreme Court has made clear that in California, in order to establish a claim for tortious interference with contract, the plaintiff must first demonstrate the existence of an enforceable contract with a third party. *Reeves*, 33 Cal. 4th at 1148. Here, because Plaintiffs do not allege the existence of an ***enforceable*** contract with their passengers, they fail to set forth sufficient facts upon which to base a claim.

Plaintiffs cite to cases decided under Hawaii and Massachusetts common law (not California common law) and argue that because those cases were allowed to proceed, so too should Plaintiffs' claims. But because those cases do not involve California common law, they are immaterial to Defendants' motion. But even if they were somehow material, they would actually support Defendants' motion. For example, in *Wadsworth*, 818 F. Supp. 2d at 1252, the court noted that "[b]ecause the Plaintiffs have not alleged the existence of a contract between themselves and customers," which was a required element for a claim for interference with contract, the plaintiffs were not stating a claim for tortious interference with contract. *See also Kyne*, 835 F. Supp. 2d at 931 (same).

Because there are no facts alleged demonstrating the existence of an enforceable contract between Plaintiffs and the passengers for the payment of gratuities nor could there be, Plaintiffs fail to set forth facts sufficient to state a cause of action. As such, this claim should be dismissed.

### 2.   *Plaintiffs fail to allege sufficient facts to set forth a claim for tortious interference with prospective economic relations.*

Similarly, Plaintiffs fail to allege sufficient facts to set forth a claim for tortious interference with prospective economic relations. Plaintiffs do not dispute that under California law, to state a claim for interference with prospective economic advantage they must demonstrate that an economic relationship existed between Plaintiffs and the passengers with the probability of future economic benefit at the time of the alleged interference. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 940, 852-53 (9th Cir. 2004). Similarly, they do not dispute that they must demonstrate

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    that Defendants' conduct was "wrongful by some legal measure other than the fact of interference

2    itself." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003).

3          Plaintiffs fail to explain how they have alleged facts sufficient to demonstrate that they

4    were in an economic relationship with passengers, which had the probability of future economic

5    benefit in the form of gratuities.  Indeed, according to Plaintiffs' own allegations, Plaintiffs only

6    provided driving services for the passengers *after* Plaintiffs received the transportation request via

7    the Uber application – i.e., after the passengers already understood from communications from

8    Uber that there was no need to provide a gratuity for the transportation.  Because, based on

9    Plaintiffs' own allegations, the passengers understood there was no need to provide a gratuity

10   *prior* to even entering into any economic relationship with Plaintiffs, they cannot allege facts

11   sufficient to demonstrate that there existed an economic relationship with the probability of future

12   economic benefit in the form of gratuities.

13         But putting that aside, the facts of Plaintiffs' Complaint demonstrate that the purported

14   interference occurs *before* Plaintiffs have entered into any economic relationship with the

15   passengers.  According to Plaintiffs, Uber advertises to passengers who use its software that there

16   is no need to leave a gratuity for drivers.  However, this purported "interference" necessarily

17   occurs *before* the driver receives the transportation request from the passenger via the Uber

18   application, and before the driver accepted the request for transportation and resulting in the

19   driver and passenger entering into an economic relationship.  As a result, Plaintiffs fail to

20   demonstrate that Uber knew of the relationship, intended to disrupt the relationship, or even

21   actually disrupted the relationship.  After all, how can Uber's alleged conduct disrupt something

22   that does not yet exist?

23         Recognizing that they are unable to allege sufficient facts to state a claim, Plaintiffs

24   instead simply argue that since purportedly similar claims were allowed in Hawaii and

25   Massachusetts, they should also be allowed here.  But this argument is specious.  As a

26   preliminary matter, what claims are allowed under Hawaii or Massachusetts common law has no

27   bearing on the propriety of claims under California common law.  But more fundamentally, the

28   facts alleged in this case, as set forth above, are sufficiently distinguishable to compel differing

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13                                                          Case No. 13-03826-EMC

DB2/ 24377285                    DEFS. REPLY ISO MOTION TO DISMISS

results. Indeed, unlike in *any* of the cases cited by Plaintiffs, here Plaintiffs have retained Uber to provide lead generation services, i.e. to provide information to Plaintiffs regarding potential passengers seeking the Plaintiffs' services. As such, Plaintiffs' economic relationship is only arising *after* the alleged interference. None of the cases cited by Plaintiffs involve a similar factual pattern.

Regardless, Plaintiffs fail to assert sufficient facts to demonstrate that Uber's conduct in advertising that there was no need to tip the driver was "wrongful by some legal measure." *Id.* Indeed, Plaintiffs' Complaint fails to provide any explanation why advertising that a direct tip to the driver is not required is an independently wrongful or improper act, nor could it when gratuities are, by definition, optional payments. Simply reiterating that fact to passengers is not wrongful by any legal measure.

### G. Plaintiffs' Sixth Cause Of Action Is Derivative Of Plaintiffs' Other Causes Of Action

Plaintiffs' sixth cause of action *only* alleges that Defendants' conduct was unlawful, unfair, or fraudulent, "in that Defendants have committed the tort of tortious interference with contractual and/or advantageous relations, unjustly enriched themselves, breached implied contracts with the drivers and with customers for whom the drivers are third party beneficiaries, and have violated California Labor Code Sections 351 and 2802." Compl. ¶ 41.[11] However, as discussed above, Plaintiffs have failed to set forth sufficient facts to state a claim for those alleged torts or statutory violations. Because Plaintiffs' other claims fail, so too does Plaintiffs' derivative claim for unfair business practices. *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181-82 (9th Cir. 2003) (when the underlying claim in a UCL claim fails, the UCL claim must also fail because "they rise and fall together").

### H. Plaintiffs' Claims Against Kalanick And Graves Fail To State Sufficient Facts Upon Which Relief Can Be Granted As To Them

Plaintiffs assert that they have alleged sufficient facts against Defendants Kalanick and Graves because Plaintiffs have alleged in a summary fashion that Kalanick and Graves are

---

[11] To the extent Plaintiffs are now attempting to articulate a new theory of liability, it is not contained in the Complaint and should be disregarded by the Court.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 24377285

14

DEFS. REPLY ISO MOTION TO DISMISS

Case No. 13-03826-EMC

1   "responsible for the pay practices and employment policies of Uber."  Opp. at p. 17.  But this

2   allegation is conclusory and fails to show why Plaintiffs are entitled to relief against Defendants

3   Kalanick and Graves.  *See generally* FRCP 8(a)(c).  Rather, "further factual enhancement" is

4   required that will "raise a right to relief about the speculative level." *Twombly*, 550 U.S. at 555.

5       Notably, Plaintiffs do not dispute that their Complaint is devoid of any ***specific*** factual

6   allegations as to Kalanick and Graves.  Plaintiffs do not dispute that there are no allegations as to

7   how Kalanick and Graves purportedly interfered with any alleged contract, how they purportedly

8   entered into any express or implied contract with Plaintiffs, or how they entered into any

9   employment relationship with Plaintiffs, let alone an employer-employee relationship.  This

10  complete absence of specific factual allegations necessarily demonstrates that Plaintiffs have

11  failed to satisfy the pleading requirements set forth in the Federal Rules of Civil Procedure.

## III.   CONCLUSION

13      For the foregoing reasons, the Court should grant Defendants' Motion.

Dated: October 24, 2013              MORGAN, LEWIS & BOCKIUS LLP
                                     ROBERT JON HENDRICKS
                                     STEPHEN L. TAEUSCH


                                     By    /s/ Robert Jon Hendricks
                                        Robert Jon Hendricks
                                        Attorneys for Defendants
                                        UBER TECHNOLOGIES, INC., TRAVIS
                                        KALANICK, and RYAN GRAVES