LOCKE LORD LLP
Susan J. Welde, (SBN: 205401)
swelde@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telephone: (213) 485-1500
Facsimile: (213) 485-1200

LOCKE LORD LLP
Martin Jaszczuk, (*Pro Hac Vice*)
mjaszczuk@lockelord.com
Nick J. Di Giovanni, (*Pro Hac Vice*)
ndigiovanni@lockelord.com
111 S. Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-0700
Facsimile: (312) 443-0336

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRY REARDON, et al.,<br><br>          Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.,<br><br>          Defendant. | CASE NO. 14-cv-05678-JST<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:  April 16, 2015<br>Time:  2:00 p.m.<br>Courtroom: 9-19th Floor<br><br>Judge Jon S. Tigar |

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ..................................................................................................1

II. ARGUMENT.........................................................................................................3

    A.    THE ALLEGED MESSAGES TO PLAINTIFFS WERE NOT "ADVERTISING" OR "TELEMARKETING" AND THEREFORE ONLY THE PRIOR EXPRESS CONSENT OF PLAINTIFFS WAS REQUIRED..............................3

        1.    The Alleged Messages To Plaintiffs Related To Potential Independent Contractor Relationships And Were Not "Advertising" Or "Telemarketing." .................3

            A.    Messages Regarding Job Opportunities Or Independent Contractor Positions Are Not "Telemarketing" Or "Advertisements." .............................4

            B.    Plaintiff's Amended Complaint Alleges That The Messages At Issue Related To Independent Contractor Positions..........................................................6

            C.    It Is Not Proper To Take Judicial Notice Of Legal Arguments Or Facts Asserted In Briefs Before Other Courts.........................................................7

        2.    Because The Messages Were Not "Advertising" Or "Telemarketing," Prior Express Consent Is The Proper Standard................................................................9

    B.    PLAINTIFFS PROVIDED PRIOR EXPRESS CONSENT TO UBER BY PROVIDING THEIR CELL PHONE NUMBERS TO UBER ............................................10

III. CONCLUSION ...................................................................................................13

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*AL & PO Corp. v. Med-Care Diabetic & Med. Supplies, Inc.*,
   No. 14 C 01893, 2014 WL 6999593 (N.D. Ill. Dec. 10, 2014) ...................4, 5, 7

*Baird v. Sabre Inc.*,
   995 F.Supp.2d 1100 (C.D. Cal. 2014) ................................................................10

*Brodsky v. Humana Dental Ins. Co.*,
   No. 10 C 3233, 2014 WL 2780089 (N.D. Ill. June 12, 2014) ...............................5

*Emanuel v. Los Angeles Lakers, Inc.*,
   No. CV 12-9936-GW(SHx), 2013 WL 1719035
   (C.D. Cal. April 18, 2013) ..............................................................................2, 10

*Friedman v. Torchmark Corp.*,
   No. 12-CV-2837-IEG (BGS), 2013 WL 1629084
   (S.D. Cal. April 16, 2013) ......................................................................2, 4, 5, 9

*Greene v. DirecTV, Inc.*,
   No. 10 C 117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) ................................10

*Hicks v. Evans*,
   No. C 08-1146 SI(pr), 2012 WL 398821, (N.D. Cal. Feb. 7, 2012) ...........3, 7, 8

*Ibey v. Taco Bell Corp.*,
   No. 12-CV-0583-H (WVG), 2012 WL 2401972 (S.D. Cal. June 18, 2012) .....10

*Jiffy Lube Int'l, Inc. v. Text Spam Litig.*,
   847 F. Supp. 2d 1253 (S.D. Cal. 2012) ..............................................................11

*Lamont v. Furniture North, LLC*,
   No. 14-cv-036-LM, 2014 WL 1453750 (D. N.H. April 15, 2014) ....................10

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ................................................................................8

*Lusskin v. Seminole Comedy, Inc.*,
   No. 12-62173-Civ., 2013 WL 3147339 (S.D. Fla. June 19, 2013) ....................11

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

*Lutz Appellate Services, Inc. v. Curry*,
    859 F. Supp. 180 (E.D. Pa. 1994)......................................................... 2, 4, 5, 9

*Magic, Inc. v. 127 High Street, Inc.*,
    No. 14 C 4344, 2014 WL 6806941 (N.D. Ill. Dec. 2, 2014).............................. 5

*Martin v. Comcast Corp.*,
    No. 12 C 6421, 2013 WL 6229934 (N.D. Ill. Nov. 26, 2013) ......................... 10

*Murphy v. DCI Biologicals Orlando, LLC*,
    No. 6:12-cv-1459-Orl-36KRS, 2013 WL 6865772
    (M.D. Fla. Dec. 31, 2013)................................................................ 2, 9, 10

*O'Connor et al. v. Uber Technologies, Inc.*,
    No. 13-03826-EMC (N.D. Cal.) ............................................................. 7, 8, 9

*Paldo Sign and Display Co. v. Wagener Equities, Inc.*,
    No. 09 C 07299, 2014 WL 4376216 (N.D. Ill. Sept. 4, 2014) .......................... 5

*Pimental v. Google, Inc.*,
    No. C-11-02585-YGR, 2012 WL 691784 (N.D. Cal. March 2, 2012) .............. 6

*Pinkard v. Wal-Mart Stores, Inc.*,
    No. 3:12-cv-02902-CLS, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012)…10, 11, 12

*Roberts v. PayPal, Inc.*,
    No. C 12-0622 PJH, 2013 WL 2384242 (N.D. Cal. May 30, 2013)........ 2, 10, 12

*Ryabyshchuck v. Citibank (South Dakota) N.A.*,
    No. 11-CV-1236-IEG (WVG), 2012 WL 5379143
    (S.D. Cal. Oct. 30, 2012) ............................................................................. 10

*Satterfield v. Simon & Schuster,*
    569 F.3d 946 (9th Cir. 2009) ........................................................................ 12

*Smith v. Kohlweiss, Inc.,*
    No. C 11–00239 SBA, 2012 WL 1156338, (N.D. Cal. March 30, 2012) ........... 8

*St. Louis Heart Care Center, Inc. v. Caremark, L.L.C.*,
    No. 4:12CV2151 TCM, 2013 WL 9988795, (E.D. Mo. April 19, 2013) ........... 6

*Steinhoff v. Star Media Co., LLC*,
    No. 13–cv–1750, 2014 WL 1207804 (D. Minn. Mar. 24, 2014) ...................... 10

*Thrasher-Lyon v. CCS Commercial, LLC*,
 No. 11 C 04473, 2012 WL 3835089 (N.D. Ill. Sept. 4, 2012) ........................... 11

*Van Patten v. Vertical Fitness Group*, *LLC*,
 22 F. Supp. 3d 1069, 1073-1078 (S.D. Cal. 2014) ............................. 2, 10, 11, 12

**FEDERAL REGULATIONS**

47 C.F.R. § 64.1200(a)(1) and (2) ................................................................................ 9

47 C.F.R. § 64.1200(a)(1)-(2) and (f)(1) ..................................................................... 4

47 C.F.R. § 64.1200(a)(1)-(2) and (f)(1) and (12) ..................................................... 2

**OTHER AUTHORITIES**

*In re Rules and Regulations Implementing the Telephone Consumer Protection
 Act of 1991*, 7 FCC Rcd. 8752 ........................................................................ 10

## I. INTRODUCTION

Plaintiffs'[1] Opposition asks this Court to (a) ignore Plaintiffs' own allegations in their Amended Complaint, (b) improperly take judicial notice of Uber's statements in a different lawsuit involving distinct legal issues and, (c) reject the reasoning of an overwhelming majority of courts that considered the same legal issue currently before this Court and ruled against plaintiffs under the same circumstances. The Court should not accept Plaintiffs' invitation to do so. No matter how Plaintiffs may seek to spin their allegations, the undisputed facts will remain:

1. Uber did not initiate contact with these five Plaintiffs. These Plaintiffs came to Uber *first* – seeking to "become a driver" (*see* Amended Complaint, ¶¶ 36, 38, 39, 54,70, 99, 113);
2. All five Plaintiffs *voluntarily provided* Uber with their phone numbers (*id.*; Opposition, p. 1, ln. 7);
3. Plaintiffs were sent text messages regarding entering independent contractor relationships as a direct result of voluntarily providing their cellular phone numbers during the course of "applying to be an Uber driver" (See id., ¶¶ 36, 38, 53-54, 70, 72, 99, 101-103 113, 115, Exhibit B, and Exhibit C).

In short, this is not a situation where a company haphazardly sent text messages to random individuals. Here, the Plaintiffs specifically approached Uber, specifically requested to "become a driver" (Amended Complaint, ¶¶ 36, 54), specifically provided their phone numbers during the process of requesting to "becom[e] a driver for Uber" (Amended Complaint, ¶¶ 53) and then received specific text messages directed to the specific issue for which they contacted Uber. This is not the type of situation the Telephone Consumer Protection Act was intended to punish.

---

[1] The term "Plaintiffs" throughout this Reply refers to the five plaintiffs at issue in Uber's Motion to Dismiss: Kerry Reardon, James Lathrop, Jennifer Reilly, Justin Bartolet, and Jonathan Grindell.

Pursuant to the vast majority of court decisions on this issue, Plaintiffs' conduct constituted "prior express consent" for Uber to contact Plaintiffs on the cell phone numbers they provided. *See, e.g., Van Patten v. Vertical Fitness Group*, LLC , 22 F. Supp. 3d 1069, 1073-1078 (S.D. Cal. 2014); *Roberts v. PayPal, Inc.*, No. C 12-0622 PJH, 2013 WL 2384242, at *1-4 (N.D. Cal. May 30, 2013); *Emanuel v. Los Angeles Lakers, Inc.*, No. CV 12-9936-GW (SHx), 2013 WL 1719035, at *3-4 (C.D. Cal. April 18, 2013). And prior express consent is a complete defense to a TCPA claim involving messages related to independent contractor positions, job opportunities, and recruiting. *See id. See also* 47 C.F.R. § 64.1200(a)(1)-(2) and (f)(1) and (12); *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-cv-1459-Orl-36KRS, 2013 WL 6865772, *5-8 (M.D. Fla. Dec. 31, 2013); *Friedman v. Torchmark Corp.*, No. 12-CV-2837-IEG (BGS), 2013 WL 1629084, *4 (S.D. Cal. April 16, 2013); *Lutz Appellate Services, Inc. v. Curry*, 859 F. Supp. 180, 181-182 (E.D. Pa. 1994).

Plaintiffs cannot salvage their Amended Complaint by claiming in their Opposition that the text messages at issue involved selling an app rather than "becoming a driver for Uber." *See* Amended Complaint, ¶¶ 36, 53, 54. These newfound assertions are belied by the actual allegations in their Amended Complaint. Plaintiffs have not alleged *anywhere* in their Amended Complaint that Uber sent messages to sell them an app. Instead, the allegations—and indeed, the messages themselves quoted in the Amended Complaint and attached as exhibits—repeatedly refer to becoming "an Uber driver." *See* Amended Complaint, ¶¶ 36, 38, 53, 70, 99, 113, 115, Exhibit B, and Exhibit C. Tellingly, in their Amended Complaint Plaintiffs concede that the correct standard to be applied in this case is "prior express consent," which is the lower standard related to independent contractor positions and "recruiting" messages. *See* Amended Complaint, ¶¶ 9-10. The more stringent "prior express *written* consent" standard now advocated by Plaintiffs is only applicable to "advertisements" or "telemarketing." *See* Amended Complaint, ¶¶ 33, 50, 67, 81, 96, 110, 121, 124, 125, and 136. But Plaintiffs do not once refer to "prior express written

consent" in their Amended Complaint and, instead, repeatedly reference the "prior express consent" standard. *See* Amended Complaint, ¶¶ 33, 50, 67, 81, 96, 110, 121, 124, 125, and 136

Plaintiffs' efforts to circumvent their own allegations by quoting statements made by Uber in a different lawsuit—taken out of context—that drivers are "customers" are unavailing and procedurally improper. To begin with, the Ninth Circuit and California district courts have made clear that it is not appropriate to take judicial notice of facts stated in or legal arguments made in other cases. *See e.g., Hicks v. Evans*, No. C 08-1146 SI (pr), 2012 WL 398821, *3 (N.D. Cal. Feb. 7, 2012)(citing *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983)). But even if this Court were to take judicial notice of the briefs cited by Plaintiffs, those briefs repeatedly state that, contractually, Uber and its drivers have an independent contractor relationship – the exact type of relationship that has been held to be subject to the "prior express consent" standard, rather than the more stringent "prior express written consent" standard. *See* Exhibit 1 to Plaintiffs' Request for Judicial Notice, p. 2, 9, 11, 15, 18, 20-22, 27. Thus, despite Plaintiffs' efforts to avoid the actual allegations in their Amended Complaint, their own description of these claims demonstrates that Plaintiffs all provided prior express consent to Uber in "applying to be an Uber driver." Amended Complaint, ¶ 38. Consequently, their claims should be dismissed.

## II. ARGUMENT

### A. THE ALLEGED MESSAGES TO PLAINTIFFS WERE NOT "ADVERTISING" OR "TELEMARKETING" AND THEREFORE ONLY THE PRIOR EXPRESS CONSENT OF PLAINTIFFS WAS REQUIRED.

#### 1. THE ALLEGED MESSAGES TO PLAINTIFFS RELATED TO POTENTIAL INDEPENDENT CONTRACTOR RELATIONSHIPS AND WERE NOT "ADVERTISING" OR "TELEMARKETING."

### a. MESSAGES REGARDING JOB OPPORTUNITIES OR INDEPENDENT CONTRACTOR POSITIONS ARE NOT "TELEMARKETING" OR "ADVERTISEMENTS."

As discussed in detail in Uber's motion to dismiss, courts have held that messages related to job opportunities, independent contractor relationships, or "recruiting" (Compl., ¶ 10) are not "advertisements" or "telemarketing." *See Murphy*, 2013 WL 6865772 at *5-8; *Friedman,* 2013 WL 1629084 at *4; *Lutz*, 859 F. Supp. at 181-182. Those courts have held that, contrary to Plaintiffs' arguments, messages regarding job opportunities—including those for independent contractor positions—do not advertise the commercial availability or quality of services. *See Friedman,* 2013 WL 1629084 at *4-5; *Lutz*, 859 F. Supp. at 181-182. Nor are such messages "advertisements" or "telemarketing" simply because they may result in profits for a defendant. *See Friedman,* 2013 WL 1629084 at *4 (holding messages regarding independent contractor positions were not "unsolicited advertisements" or "telephone solicitations" and rejecting the plaintiff's argument that the calls were "unsolicited advertisements" or "telephone solicitations" because they were designed to make the defendant money in the long run). This reasoning is sound, given that employees make money for the entities for whom or with whom they work. But this does not mean that notices for those jobs "advertis[e] the commercial availability or quality of any property, goods, or services." *See* 47 C.F.R. § 64.1200(a)(1)-(2) and (f)(1). Accordingly, Uber's alleged messages to Plaintiffs regarding entering into an independent contractor relationship, or "becoming a driver for Uber" (*see* Amended Complaint, ¶¶ 36, 53, 54) did not constitute "telemarketing" or "advertisements."

None of the cases Plaintiffs cite are on point. Unlike the independent contractor-related text messages purportedly sent by Uber, the fax at issue in the *Med-Care* case (upon which Plaintiffs rely heavily) listed "various supplies and goods that

Med-Care could provide for the recipient's patients."[2]  In fact, the court in *Med-Care* agreed with *Lutz* and *Friedman* that drawing attention to job openings did not "equate to promoting the 'commercial availability or quality of any property, goods, or services.'" *Id.* at *2.  However, the *Med-Care* court found that the particular fax at issue in that case was an advertisement because it "not only trumpeted [Med-Care's] 'wide variety of quality products,' it specifically listed twelve separate examples" of those products." *Id.* at *3.  The court concluded that, "the TCPA requires a look at 'the precise information included in the fax, such as descriptions of the availability or quality of products'" and that the fax at issue there was an advertisement because it listed several of Med-Care's products.  *Id.*  That is not what Plaintiffs allege here.  The text messages that Plaintiffs allege they received did not trumpet Uber's wide variety of quality products and did not specifically list any examples of such products. To the contrary, as Plaintiffs themselves allege, the text message they claim they received related to becoming "an Uber driver." *See* Amended Complaint, ¶¶ 36, 38, 53, 70, 99, 113, 115, Exhibit B, and Exhibit C.

Not one of the other cases cited by Plaintiffs involved a message regarding job opportunities or independent contractor relationships.  *See Magic, Inc. v. 127 High Street, Inc.*, No. 14 C 4344, 2014 WL 6806941,* 2 (N.D. Ill. Dec. 2, 2014)(specifically distinguishing *Lutz* on grounds that the message in *Magic, Inc.* did not offer employment); *Paldo Sign and Display Co. v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 4376216, *4-5 (N.D. Ill. Sept. 4, 2014)(message referred to database of industrial real estate listings in the hope that recipients would contact Wagner about purchasing or leasing those properties); *Brodsky v. Humana Dental Ins.*

---

[2] *Med-Care* is also distinguishable because the court noted that the plaintiff "had no business relationship" with Med-Care before receiving the fax and that the fax "had not been invited or consented to in any way." *Med-Care*, 2014 WL 6999593 at *1-2. In contrast, Plaintiffs here concede that they provided their phone numbers to Uber during the sign up process to "become an Uber driver." Amended Complaint, ¶¶ 36, 53, 55, 70, 99, 113.

5
REPLY IN SUPPORT OF MOTION TO DISMISS

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

*Co.*, No. 10 C 3233, 2014 WL 2780089, *7 (N.D. Ill. June 12, 2014)(message explicitly referred to a "portfolio of specialty benefits products" and then discussed those products and the advantages and conveniences of them); *Pimental v. Google, Inc.*, No. C-11-02585-YGR, 2012 WL 691784, *1 (N.D. Cal. March 2, 2012)(message promoted group texting service and related app and did not refer to job opportunity); *St. Louis Heart Care Center, Inc. v. Caremark, L.L.C.*, No. 4:12CV2151 TCM, 2013 WL 9988795, *1 (E.D. Mo. April 19, 2013)(message referred to CVS Pharmacy Advisor program geared toward ensuring patients take prescribed medications). Accordingly, the cases cited by Plaintiff are inapposite, and the *Lutz, Friedman*, and *Murphy* cases demonstrate that messages—such as those purportedly sent by Uber here—discussing independent contractor or job opportunities are not "advertisements" or "telemarketing."

### b.   PLAINTIFF'S AMENDED COMPLAINT ALLEGES THAT THE MESSAGES AT ISSUE RELATED TO INDEPENDENT CONTRACTOR POSITIONS

The face of Plaintiffs' Amended Complaint makes it apparent that the text messages at issue related to potential independent contractor relationships with Uber as "Uber drivers." *See* Amended Complaint, ¶¶ 36, 38, 53, 55, 70, 84, 99, 113. Plaintiffs repeatedly state in their Amended Complaint that the alleged text messages related to "recruiting…prospective Uber drivers." *See* Amended Complaint, ¶¶ 9, 10, 25, 85. They also acknowledge that they received the purported text messages from Uber after "sign[ing] up to become an Uber driver." *See id.*, ¶¶ 36, 38, 53-54, 70, 72, 99, 101, 113, 115. Moreover, the messages quoted in the Amended Complaint were related to "recruiting" drivers (Compl., ¶ 10) and not to marketing Uber's app or other goods or services. *See id.*, ¶¶ 102-103 (referring to uploading documents related to the driver sign-up process so that Plaintiff could "get on the road"), Exhibit B (attaching screenshots of messages referring to guaranteed hourly rates and vehicle insurance identification cards); Exhibit C (attaching screenshots of messages referring

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

to getting Plaintiff on the road, submitting his license, insurance, and registration, completing a vehicle inspection, continuing the sign-up process, and guaranteed hourly fares). In contrast, Plaintiffs do not allege anywhere in the Complaint that Uber contacted them in an effort to sell anything, including Uber's app. Nor do the messages quoted in or attached to the Complaint suggest that Plaintiffs should purchase Uber's app, that Uber is offering discounts on the app or anything else that would relate to marketing the app. And indeed, the cases relied upon by Plaintiffs provide that "whether a communication is covered by the TCPA requires a look at 'the precise information included'" in the communication. *See Med-Care*, 2014 WL 6999593 at *3. Here, those messages relate to Plaintiffs' interest in "becom[ing] driver[s] for Uber." *See* Amended Complaint, ¶ 53. Accordingly, Plaintiffs' argument that the messages were not actually related to Plaintiffs' attempts to become independent contractor drivers and were instead sent for the purpose of selling something to Plaintiffs is belied entirely by the allegations of Plaintiffs' own Amended Complaint.

        c.    **IT IS NOT PROPER TO TAKE JUDICIAL NOTICE OF LEGAL ARGUMENTS OR FACTS ASSERTED IN BRIEFS BEFORE OTHER COURTS.**

Plaintiffs attempt to abrogate their own allegations by asking the Court to take judicial notice of filings in *O'Connor et al. v. Uber Technologies, Inc.*, No. 13-03826-EMC (N.D. Cal.). But doing so would be improper because Plaintiffs have incorrectly interpreted the standard for judicial notice. "As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." *Hicks v. Evans*, No. C 08-1146 SI(pr), 2012 WL 398821, *3 (N.D. Cal. Feb. 7, 2012)(citing *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983)). Assertions in documents filed with a court are not judicially noticeable just because they are in the file. *Id.* Instead, documents from

other court files can be used for very limited judicial notice purposes. *See id.* "The court can take judicial notice that certain filings exist, that certain documents were filed, and the dates on which those filings were made if a party has requested it and submitted the court filings with filing stamps from the court. But that is a far cry from being able to judicially notice that the contents of those filings are true." *Id.* at *4. As such, the court cannot take judicial notice of facts alleged or legal arguments made in the *O'Connor* matter—and this is especially true given that the *O'Connor* lawsuit is completely unrelated to the one before this Court and does not involve TCPA claims. *See id.* (declining to take judicial notice of the plaintiff's or defendant's statements in another case); *Smith v. Kohlweiss, Inc.*, No. C 11–00239 SBA, 2012 WL 1156338, * 2 (N.D. Cal. March 30, 2012)(same). Accordingly, in determining whether Plaintiffs have stated a proper claim regarding the text messages at issue, the Court is to consider the allegations of Plaintiffs' Amended Complaint, which state that Uber sent messages to "recruit…prospective Uber drivers" and do not allege that the messages asked Plaintiffs to sell or purchase anything. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)("[a]s a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion'"). *See also* Complaint, ¶¶ 9, 10, 25, 85.

However, even if this Court were to find that consideration of the *O'Connor* briefs submitted by Plaintiffs were appropriate, the result would not change. In selectively quoting language they believe to be helpful, Plaintiffs have attempted to sweep under the rug repeated references to Uber having a non-employee independent contractor relationship with drivers. *See* Exhibit 1 to Plaintiffs' Request for Judicial Notice, p. 2 (noting that the Division of Labor Standards Enforcement concluded that a driver was an independent contractor), 9 (noting that Uber's contract with its drivers provides that "[t]he parties intend to create an independent contractor…relationship", 11 (same), 18 (stating that drivers were independent contractors), 20-22 (noting that parties intended to enter into an independent contractor relationship), 27 (same). Uber

8
REPLY IN SUPPORT OF MOTION TO DISMISS

also references in those briefs a finding by the Labor Commissioner that "it lacked jurisdiction because the plaintiff 'performed services as an independent contractor of Defendant….'" *See id.* at p. 15.  Accordingly, even if these filings could be properly considered on a motion to dismiss, it would not change the fact that, contractually, drivers are non-employee independent contractors.  And messages regarding entering independent contractor relationships—including all of the messages alleged by Plaintiffs—are not "advertisements" or "telemarketing" under the TCPA.  *See Friedman,* 2013 WL 1629084 at *4-5.[3]

### 2. BECAUSE THE MESSAGES WERE NOT "ADVERTISING" OR "TELEMARKETING," PRIOR EXPRESS CONSENT IS THE PROPER STANDARD.

The regulations implementing the TCPA provide that if a message is not an "advertisement" or "telemarketing," a party may initiate a telephone call to a cell phone using an automatic telephone dialing system or an artificial or prerecorded voice with the "prior express consent" of the called party—the more stringent "prior express *written* consent" standard is not required.  *See* 47 C.F.R. § 64.1200(a)(1) and (2).  As discussed above, the messages purportedly sent by Uber were related to "becoming a driver for Uber" (*see* Amended Complaint, ¶¶ 36, 53, 54) and were therefore not "advertisements" or "telemarketing."  *Murphy*, 2013 WL 6865772 at *5-8; *Friedman,* 2013 WL 1629084 at *4; *Lutz*, 859 F. Supp. at 181-182.  Plaintiffs concede as much in their Amended Complaint, repeatedly stating that Uber did not

---

[3] It bears mentioning that Plaintiffs failed to attach the *O'Connor* court's ruling (which was issued two days *before* Plaintiffs filed their Opposition), in which the court found that drivers who use the Uber application are "presumptive employees" of Uber.  *See O'Connor v. Uber Technologies, Inc,.* No. C-13-3826 EMC, *1, *5, *11, *15 (March 11, 2015)(Dkt. 251)(also noting that "Uber's revenues do not depend on the distribution of its software, but on the generation of rides by its drivers").  While Uber respectfully disagrees with the *O'Connor* court's opinion, the court noted that whether drivers who use the app are independent contractors or whether they are employees is an issue to be decided by the jury.  *See id.*

9
REPLY IN SUPPORT OF MOTION TO DISMISS

have "prior express consent" to contact them.  *See* Amended Complaint, ¶¶ 33, 50, 67, 81, 96, 110, 121, 124, 125, and 136.  In fact, Plaintiffs do not once allege that Uber was required to have "prior express *written* consent" prior to contacting them.  Accordingly, Uber did not violate the TCPA if it had Plaintiffs' "prior express consent" to send the messages at issue (which it did).

### B. PLAINTIFFS PROVIDED PRIOR EXPRESS CONSENT TO UBER BY PROVIDING THEIR CELL PHONE NUMBERS TO UBER.

As Plaintiffs candidly admit in their Opposition, they are asking the Court to reject "numerous" other decisions finding that the provision of a telephone number amounts to prior express consent.  *See* Opposition, p. 17.  Undeniably, the overwhelming majority of courts, including many within the Ninth Circuit, have held that providing a telephone number constitutes consent to be contacted at that number. *See Van Patten v. Vertical Fitness Group, LLC*, 22 F. Supp. 3d 1069, 1073-1078 (S.D. Cal. 2014); *Lamont v. Furniture North, LLC*, No. 14-cv-036-LM, 2014 WL 1453750, *1-3 (D. N.H. April 15, 2014); *Baird v. Sabre Inc.*, 995 F.Supp.2d 1100, 1106-1107 (C.D. Cal. 2014); *Steinhoff v. Star Media Co., LLC*, No. 13–cv–1750, 2014 WL 1207804 , *2-4 (D. Minn. Mar. 24, 2014); *Murphy*, 2013 WL 6865772 at *5-8; *Martin v. Comcast Corp.*, No. 12 C 6421, 2013 WL 6229934, *3 (N.D. Ill. Nov. 26, 2013); *Roberts v. PayPal, Inc.*, No. C 12-0622 PJH, 2013 WL 2384242, at *1-4 (N.D. Cal. May 30, 2013); *Emanuel v. Los Angeles Lakers, Inc.*, No. CV 12-9936-GW(SHx), 2013 WL 1719035, at *3-4 (C.D. Cal. April 18, 2013); *Pinkard v. Wal-Mart Stores, Inc.,* No. 3:12-cv-02902-CLS, 2012 WL 5511039, at *2-6 (N.D. Ala. Nov. 9, 2012); *Ryabyshchuck v. Citibank (South Dakota) N.A.*, No. 11-CV-1236-IEG (WVG), 2012 WL 5379143, at *2 (S.D. Cal. Oct. 30, 2012); *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H (WVG), 2012 WL 2401972, at *3 (S.D. Cal. June 18, 2012); *Greene v. DirecTV, Inc.*, No. 10 C 117, 2010 WL 4628734, *3 (N.D. Ill. Nov. 8, 2010). *See also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 (noting that "persons who knowingly release their

phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."). Indeed, the court in *Van Patten* rejected the exact arguments made by Plaintiffs here and held that "[t]he mere act of Van Patten writing down his phone number on an application card was all the consent [defendant] needed." *See* 22 F. Supp. 3d at 1073-1078. In *Van Patten*, the court discussed *Pinkard, Emanuel, Roberts, Murphy, Baird, Steinhoff*, and other cases finding that providing one's phone number constitutes consent to be contacted at that number and noted that "[c]ollectively, all of these cases amount to a flurry of punches that has [plaintiff] on the ropes, and his attempt to right himself is unpersuasive." *Id.* at 1075. Plaintiff Van Patten's "attempt to right himself" was similar to that made by Plaintiffs here—even down to the cases cited by Plaintiffs and the attempt to lessen the effect of the FCC order cited above. *See id.* at 1075-1077. Indeed, the plaintiff in *Van Patten*—like Plaintiffs here—unsuccessfully challenged the FCC Order stating that providing a phone number constitutes consent, but the court noted that "at least seven cases [ ] examine and follow [the FCC Orders]—some from within the Ninth Circuit and some from outside of it."[4] *Id.* at 1076. The *Van Patten* court then rejected the plaintiff's citations to *Lusskin v. Seminole Comedy, Inc.*, No. 12-62173-Civ., 2013 WL 3147339 (S.D. Fla. June 19, 2013)(also cited by Plaintiffs on p. 16 of their Opposition) and *Jiffy Lube Int'l, Inc. v. Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012)(cited by Plaintiffs at p. 15 of the Opposition), noting that the *Lusskin* court improperly questioned the validity of the FCC's Orders and that *Jiffy Lube* predated all of the cases going the other way and could not "stand up to the far more robust analysis in the cases that followed."[5] *See id.* at 1076.

---

[4] Plaintiffs concede as much in stating that the FCC Order does not "mean[] what Uber—*and indeed, many courts*—interpret it to mean…." Opposition, p. 14 (emphasis added).

[5] The same is true of *Thrasher-Lyon v. CCS Commercial, LLC*, No. 11 C 04473, 2012 WL 3835089 (N.D. Ill. Sept. 4, 2012), although that case was not discussed by the court in *Van Patten*.

11
REPLY IN SUPPORT OF MOTION TO DISMISS

Finally, the *Van Patten* court rejected the plaintiff's argument that *Satterfield v. Simon & Schuster,* 569 F.3d 946, 955 (9th Cir. 2009) held that providing a phone number did not constitute prior express consent – the same argument made by Plaintiffs that should also be rejected here. *Van Patten*, 22 F. Supp. 3d at 1076-1077.  The *Van Patten* court correctly noted that *Satterfield* involved the different context of a plaintiff providing a phone number to one company and then being contacted by a completely unrelated company on a completely different subject. *See id.*  Noting that "*Satterfield* has less traction where, as in this case, the party being sued is essentially the very party to whom the phone number was given," the court found that the plaintiff provided prior express consent by providing his phone number to defendants on an application. *See id.* at 1076-1078.

The TCPA was enacted to prevent nuisance calls – not to prevent companies from reaching out to persons who first contacted them and who provided the companies with a cell phone number as the number where they wished to be reached. "To hold otherwise would contradict the overwhelming weight of social practice: that is, distributing one's telephone number is an invitation to be called, especially when the number is given at another's request." *Pinkard*, 2012 WL 5511039 at *5. *See also Roberts*, 2013 WL 2384242 at *4 (finding *Pinkard* persuasive and adopting it because it correctly applied the Ninth Circuit's decision in *Satterfield* in reaching its conclusion).  As such, it would be contrary to public policy and "the overwhelming weight of social practice" to hold that Plaintiffs, after "applying to be an Uber driver" (*see* Amended Complaint, ¶ 38) and providing their phone numbers as part of the sign-up process, could then hold Uber liable for contacting them at those phone numbers.  For these reasons, the claims of Plaintiffs Reardon, Lathrop, Reilly, Bartolet, and Grindell should be dismissed.

Finally, Uber does not concede that Plaintiffs Reilly, Bartolet, and Grindell properly revoked their consent, but Uber understands that revocation is potentially a factual issue in this instance more appropriately addressed on summary judgment.

Nevertheless, if this Court were to find that revocation of consent was properly supported and pled, and to the extent consent could be withdrawn in the manner that Plaintiffs Reilly, Bartolet, and Grindell may seek to allege, those Plaintiffs do not have claims for messages sent before their consent was revoked.  Moreover, there are no allegations in the Amended Complaint whatsoever indicating that Plaintiffs Reardon and Lathrop revoked or attempted to revoke their consent.  Consequently, their claims should be dismissed in their entirety with prejudice.

## III.  CONCLUSION

Plaintiffs have not and cannot properly allege that Uber's messages to any of them were "telemarketing" or "advertisements."  As such, Plaintiffs' Amended Complaint should be dismissed because Plaintiffs have admitted on the face of their complaint and in their Opposition that they provided their phone numbers to Uber, which an overwhelming number of courts have determined satisfies the "prior express consent" standard.  *See* Amended Complaint, ¶ 38.  *See also* ¶¶ 36, 38, 53-54, 70, 72, 99, 101-103 113, 115.  The content of the messages quoted in and attached to the Amended Complaint further establishes that any attempted amendment to allege otherwise would be futile.  *See* Amended Complaint, Exhibits B and C.  Therefore, the claims of Plaintiffs Kerry Reardon, James Lathrop, Jennifer Reilly, Justin Bartolet, and Jonathan Grindell should be dismissed without leave to amend.

///
///
///
///
///
///
///
///
///

| | |
|---|---|
| Dated:  March 20, 2015 | Respectfully submitted, |
| | LOCKE LORD LLP |
| | |
| | By:  /s/ Susan J. Welde |
| |     Susan J. Welde |
| | Attorneys for Defendant UBER TECHNOLOGIES, INC. |
| | |
| | Martin Jaszczuk, *pro hac vice* |
| | *mjaszczuk@lockelord.com* |
| | Nick J. Di Giovanni, *pro hac vice* |
| | *ndigiovanni@lockelord.com* |
| | 111 S. Wacker Drive |
| | Chicago, Illinois 60606 |
| | Telephone: (312) 443-0700 |
| | Facsimile: (312) 443-0336 |

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071