LOCKE LORD LLP
Susan J. Welde, (SBN: 205401)
swelde@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telephone: (213) 485-1500
Facsimile: (213) 485-1200

LOCKE LORD LLP
Martin Jaszczuk, (*Pro Hac Vice*)
mjaszczuk@lockelord.com
Nick J. Di Giovanni, (*Pro Hac Vice*)
ndigiovanni@lockelord.com
111 S. Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-0700
Facsimile: (312) 443-0336

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRY REARDON, et al., <br><br> Plaintiff, <br><br> vs. <br><br> UBER TECHNOLOGIES, INC., <br><br> Defendant. | CASE NO. 14-cv-05678-JST <br><br> **UBER'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** <br><br> Courtroom: 9 - 19th Floor <br> Judge Jon S. Tigar |

### I. INTRODUCTION

This Court has requested supplemental briefing on the issue of whether the Class B Plaintiffs "provided" their cell phone numbers to Uber pursuant to the 1992 FCC Order. The answer is Yes. When an individual intentionally and voluntarily submits its cell phone number to a caller, that individual is deemed to have "provided" his number to the caller and has given prior express consent to be contacted at that number. It is irrelevant whether the individual maintains the purpose for which the number was provided. As set forth below, courts consider the individual's intent at the time the number was communicated to the caller. Courts have routinely found that the mere act of intentionally and voluntarily inputting a cell phone number into the caller's website to establish a point of contact constitutes "providing" one's cell phone number as that term applies to the TCPA. Plaintiffs' allegations confirm this conduct occurred. By making such admissions on the face of the First Amended Complaint, the Class B Plaintiffs have plead away their claims against Uber under the TCPA by establishing Uber's legally valid affirmative defense.

The Class B Plaintiffs concede on the face of the First Amended Complaint that they "provided" their cell phone numbers as ones at which they "wished to be reached." The plain language of the FCC's rulings, as well as court decisions, demonstrate that an individual "provides" his number as one at which he "wishes to be reached" by making his number available to the caller through inputting his number on a website that the individual *voluntarily* accesses. *See* http://www.merriam-webster.com/dictionary/provide. *See also Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1123 (11th Cir. 2014); *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1105-1106 (C.D. Cal. 2014). Whether an individual "voluntarily" enters his phone number as one at which he "wishes to be reached" is determined as of the time the person enters his phone number – not at a later time. *See, e.g., Saunders v. NCO Financial Systems, Inc.*, 910 F. Supp. 2d 464, 468-469 (E.D.N.Y. 2012).

UBER'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

The Class B Plaintiffs each acknowledge, in the First Amended Complaint, that they "provided [their] personal information at the beginning of the sign-up process" "to become an Uber driver" or "provided Uber with [their] cell phone number" after "beg[inning] an application to become an Uber driver through Uber's website." *See* FAC, ¶¶ 53-54, 70, 113.  *See also* FAC ¶¶ 99, 125.  It is therefore apparent on the face of the First Amended Complaint that the Class B Plaintiffs were interested in communicating with Uber regarding "becom[ing] an Uber driver" and *voluntarily* "provided" their numbers by inputting them into Uber's website.  This voluntary act constituted prior express consent to receive the text messages alleged.  The fact that four of the Class B Plaintiffs later decided not to complete the process does not change the result – courts have held that the question must be analyzed as of the time the individual supplied the number.  The Class B Plaintiffs therefore each "voluntarily" "provided" their cell phone numbers to Uber as ones at which they "wished to be reached" and thereby provided prior express consent to receive the text messages alleged.  As prior express consent is a complete defense to the Class B Plaintiffs' claims, Uber requests that those claims be dismissed.

## II.   ARGUMENT

### A.   PLAINTIFFS' ALLEGATIONS MAKE CLEAR THAT PLAINTIFFS "PROVIDED" THEIR CELL PHONE NUMBERS AS ONES AT WHICH THEY "WISHED TO BE REACHED."

The allegations of the First Amended Complaint, as compared with the plain meaning of the word "provide," along with FCC commentary and court cases regarding "prior express consent," demonstrate that the Class B Plaintiffs here provided their numbers as ones at which they wished to be reached.

#### 1.   PLAINTIFFS "PROVIDED" THEIR CELL PHONE NUMBERS TO UBER.

Black's Law Dictionary online defines "provide" as "[a]n act of furnishing or supplying a person with a product."  *See* http://thelawdictionary.org/provide/.

Similarly, Merriam-Webster's online dictionary defines "provide" as "to make (something) available: to supply (something that is wanted or needed)." *See* http://www.merriam-webster.com/dictionary/provide.  In accordance with the plain meaning of "provide," the Eleventh Circuit recently considered, in the debt collection context, whether a plaintiff "provided" his cell phone number within the meaning of the FCC's orders. *Mais*, 768 F.3d at 1123.  The Eleventh Circuit held that the plaintiff "made [his] number available" to the defendant, thereby providing prior express consent to the calls he received. *Id.*  Utilizing the same reasoning, the Class B Plaintiffs here "provided" their numbers to Uber if they "made their numbers available."

Plaintiffs Lathrop, Grindell, Reilly, and Bartolet (and Reardon)[1] concede on the face of their First Amended Complaint that they "made their numbers available" by entering their numbers on Uber's website. *See* FAC, ¶¶ 38, 70. *See also* ¶¶ 36, 39, 54, 99, 113.  Rather than alleging that they have no idea how Uber got their numbers (as do the two Plaintiffs whose claims are not subject to Uber's motion to dismiss), these Plaintiffs admit that they know that Uber got their numbers when they "provided [their] personal information at the beginning of the sign-up process" "to become an Uber driver" or when they "provided Uber with [their] cell phone number" after "beg[inning] an application to become an Uber driver through Uber's website." *See* FAC, ¶¶ 53-54, 70, 113. *See also* FAC, ¶ 99.  Indeed, the Class B class definition itself *requires* that class members must have received a text message from Uber *"after providing Uber with the telephone number at which they received the text message*

---

[1] The Court's Order focuses on whether the four named Plaintiffs who allege they "never submitted completed applications to Uber" "provided" their numbers to Uber (Dkt. 44, p. 2). Of course, Plaintiff Reardon, who admits she "signed up to become an Uber driver through Uber's website" and "was approved to become a driver," also "provided" her number to Uber. (FAC, ¶ 36). *See e.g., Pinkard v. Wal-Mart Stores, Inc.*, 2012 WL 5511039, *4-6 (N.D. Ala. Nov. 9, 2012).

*from Uber through Uber's website."* FAC, ¶ 125 (emphasis added). Thus, to be a member of Class B, the named Plaintiffs and other putative class members must have made their numbers available to Uber by entering those numbers on Uber's website. This is in marked contrast to Class A, which requires that class members who received a text message from Uber "had not provided Uber with the cellular telephone number at which they received the text message from Uber" (FAC, ¶ 124) – indicating that Uber obtained the cell phone numbers of members of Class A by other means. Consequently, the Class B named Plaintiffs all admittedly "provided" and "made their numbers available" to Uber.

### 2. PLAINTIFFS PROVIDED THEIR NUMBERS AS ONES AT WHICH THEY "WISHED TO BE REACHED."

The second and related question is whether the Class B Plaintiffs admit on the face of their First Amended Complaint that they provided their numbers as ones at which they "wished to be reached." As best Defendant can tell, the FCC has never defined the phrase "wished to be reached" in the TCPA context, and neither has any court. In considering the consent question, however, courts and the FCC have focused on whether individuals "voluntarily" divulged their telephone numbers to the alleged caller. *See Pinkard v. Wal-Mart Stores, Inc.*, 2012 WL 5511039, *4-6 (N.D. Ala. Nov. 9, 2012)(citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 7 FCC Rcd 8752, 8769, ¶ 31 (Oct. 16, 1992) (the "1992 FCC Order"); *Ryabyshchuck v. Citibank (South Dakota), N.A.*, 2012 WL 5379143, *3 (S.D. Cal. Oct. 30, 2012). Courts faced with plaintiffs' arguments that they did not "voluntarily" provide their numbers have accordingly focused on whether plaintiffs were "forced" to engage in the transaction through which they entered their phone number. *See Baird*, 995 F. Supp. 2d at 1105-1106 ("[n]evertheless, Baird's act of providing her cellphone number was a voluntary act; she was not forced to book a flight on Hawaiian Airlines"). *See also Saunders*, 910 F.

Supp. 2d at 465-467 (where plaintiff did not properly furnish all of the information required to sign up at a website but provided his cell phone number, he still "voluntarily" provided his number and thereby provided "prior express consent"). In short, when individuals provide their phone number as part of a transaction they are not required to engage in, courts have found that such individuals have "voluntarily" provided their numbers – even in instances where they did not complete all the required information. *See Saunders*, 910 F. Supp. 2d at 465-467.

The question of whether an individual furnished a number "voluntarily" is viewed as of the time the individual supplied the number – and is not based on whether she changed her mind later. *See Saunders*, 910 F. Supp. 2d at 468-469 (focusing on voluntary provision of cell phone number at the time the number was provided and not on whether the person later changed his mind). *See also Van Patten v. Vertical Fitness Group, LLC*, 22 F. Supp. 3d 1069, 1077-1078 (S.D. Cal. 2014) (where plaintiff initially wrote down number on application card for gym, the important question for consent was that plaintiff wrote down his number and not the fact that he later cancelled his gym membership); *Steinhoff v. Star Media Co., LLC*, 2014 WL 1207804, *2-4 (D. Minn. Mar. 24, 2014) (where plaintiff provided phone number when subscribing to newspaper, consent was still valid even though plaintiff let subscription expire).

As in *Baird*, Plaintiffs' acts of providing their cell phone numbers here were voluntary. The entire process was voluntary. Plaintiffs were not required to sign up "to become an Uber driver." *See* FAC, ¶¶ 53-54, 70, 113. *See also* FAC ¶¶ 99, 125. Indeed, doing so took effort that persons not interested in "becom[ing] an Uber driver" would not have taken. *Id.* The fact that four of the Plaintiffs subsequently decided not to complete the process does not change the fact that their initial act of providing their numbers to Uber was entirely voluntary. And Plaintiffs concede that they provided their numbers because of an interest in "becom[ing] an Uber driver." *See* FAC, ¶¶ 53-

54, 70, 113. *See also* FAC ¶ 99.  For example, Plaintiff Lathrop concedes on the face of the First Amended Complaint that he "began the sign-up process to learn about the requirements to become an Uber driver" and "provided his personal information at the beginning of the sign-up process, but he decided not to complete the process to become a driver after learning that his car did not meet Uber's requirements."  *See* FAC, ¶¶ 53-54.  In so alleging, Lathrop acknowledges that he was seeking information from Uber to see if he met driver requirements and only decided not to complete the process when he found out his car did not qualify.  The other three Class B Plaintiffs who did not complete the process similarly allege that they initially were interested in "becom[ing] an Uber driver."  *See* FAC, ¶¶ 70, 99, 113.  Plaintiffs then received text messages at the numbers they provided related to independent contractor positions with Uber.  *See also Roberts v. PayPal, Inc.*, 2013 WL 2384242 at *4 (finding plaintiff consented to receive texts, noting that plaintiff in that case conceded that he provided his cell phone number in order to receive information regarding PayPal's mobile services and then received a text message regarding PayPal's mobile services).

   Accordingly, because the Plaintiffs' allegations concede the voluntary nature of their acts, the First Amended Complaint reveals on its face that Plaintiffs provided their cell phone numbers to Uber as ones at which they "wished to be reached."  As a result, Plaintiffs Lathrop, Grindell, Reilly, and Bartolet (and Reardon, who concedes she entered her phone number and completed the sign up process) all provided prior express consent to receive text messages from Uber.  The fact that certain Plaintiffs may have later changed their minds about "becom[ing] an Uber Driver" does not alter their voluntary act, nor their consent.  See *See Saunders*, 910 F. Supp. 2d at 468-469; *Van Patten v. Vertical Fitness Group, LLC*, 22 F. Supp. 3d at 1077-1078; *Steinhoff v. Star Media Co., LLC*, 2014 WL 1207804 at *2-4.

UBER'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

B.  **PLAINTIFFS DO NOT ALLEGE THAT UBER OBTAINED THEIR NUMBERS THROUGH MEANS OTHER THAN PLAINTIFFS' OWN ENTRY OF THOSE NUMBERS ON UBER'S WEBSITE.**

In defining "prior express consent" in its 1992 Order, the FCC contrasts its statement that "persons who knowingly[2] release their phone numbers have in effect given their invitation or permission to be called at the number which they have given" with a situation where a caller's number is "'captured' by a caller ID or an ANI device without notice to the…subscriber, [where] the caller cannot be considered to have [been] given invitation or permission to receive autodialer or prerecorded message calls."  7 FCC Rcd 8752, 8769, ¶ 31.  *See also Baird*, 995 F. Supp. 2d at 1105-1106 (quoting paragraphs 7 and 31 of the 1992 FCC Order and noting that the FCC intended to provide a "definition" of "prior express consent" in paragraph 31 of the 1992 Order).  This language in the FCC's own definition of "prior express consent" indicates that whether an individual provided "prior express consent" turns on whether the person consciously provided his or her number or whether the person's number was captured without his or her knowledge.  *See Hill v. Homeward Residential, Inc.*, 2014 WL 4105580, *3-5 (S.D. Ohio Aug. 19, 2014) (focusing consent analysis on whether plaintiff "conveyed" his cell phone number or whether the defendant "captured" it); *Hudson v. Sharp Healthcare*, 2014 WL 2892290, *4-6 (S.D. Cal. June 25, 2014) (although on summary judgment, rejecting plaintiff's argument that defendant obtained her number from another source and finding that plaintiff herself provided the number).

The allegations of the First Amended Complaint make it apparent that the Class B Plaintiffs (in contrast with the allegations of the Class A Plaintiffs) fall within the

---

[2] Black's Law Dictionary online defines "knowingly" as "[w]ith knowledge; consciously; intelligently."  See http://thelawdictionary.org/knowingly/.  See also Merriam-Webster's online dictionary at http://www.merriam-webster.com/dictionary/knowingly.

8

UBER'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

first portion of the FCC definition – the Class B Plaintiffs knowingly released their phone numbers to Uber by inputting those numbers themselves on Uber's website. *See* FAC, ¶¶ 38, 70. *See also* ¶¶ 36, 39, 54, 99, 113. The First Amended Complaint contains no allegations whatsoever suggesting that Uber somehow "captured" the Class B Plaintiffs' phone numbers without their awareness. There are no allegations of a caller ID device or any similar technology that may have surreptitiously captured Plaintiffs' phone numbers. To the contrary, as discussed above, the Class B Plaintiffs concede that they themselves voluntarily entered their phone numbers on Uber's website – a concession that is even built into their class definition. The Class B Plaintiffs therefore concede they consented to receive the calls at issue. Accordingly, the facts alleged in the First Amended Complaint demonstrate that Uber has a complete defense to these Plaintiffs' claims, and their claims should be dismissed.

### III. CONCLUSION

In sum, the Class B Plaintiffs have "pled [themselves] out of court in this instance" by conceding that they voluntarily provided their telephone numbers to Uber as ones at which they wished to be reached. *See Pinkard*, 2012 WL 5511039 at *6. "To hold otherwise would contradict the overwhelming weight of social practice: that is, distributing one's telephone number is an invitation to be called, especially when the number is given at another's request." *See id.* at *5. The Class B Plaintiffs' claims should therefore be dismissed. And, because the Class B Plaintiffs concede that they provided their phone numbers to Uber, there is no means by which the Class B Plaintiffs could re-plead their allegations to properly state a claim absent a wholesale contradiction of their initial allegations. Accordingly, their claims should be dismissed with prejudice.

///
///
///

Dated:  June 16, 2015

Respectfully submitted,

LOCKE LORD LLP


By: /s/ Susan J. Welde
    Susan J. Welde
    *swelde@lockelord.com*
    300 South Grand Avenue, Suite 2600
    Los Angeles, California  90071
    Telephone: (213) 485-1500
    Facsimile: (213) 485-1200

    Martin Jaszczuk
    *mjaszczuk@lockelord.com*
    Nick J. Di Giovanni
    *ndigiovanni@lockelord.com*
    111 S. Wacker Drive
    Chicago, Illinois 60606
    Telephone: (312) 443-0700
    Facsimile: (312) 443-0336

*Attorneys for Defendant UBER TECHNOLOGIES, INC.*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on June 16, 2015, I caused the foregoing document to be filed electronically through the Court's CM/ECF System and served on all counsel of record.

/s/ Susan J. Welde
Susan J. Welde
*Attorneys for Defendant UBER TECHNOLOGIES, INC.*