Hassan A. Zavareei (SBN 181547)
hzavareei@tzlegal.com
**TYCKO & ZAVAREEI LLP**
2000 L Street, N.W., Suite 808
Washington, DC 20036
Tel.: (202) 973-0900
Fax: (202) 973-0950

*Attorney for Plaintiffs Kerry Reardon,*
*James Lathrop, Julie McKinney,*
*Jonathan Grindell, Sandeep Pal,*
*Jennifer Reilly, and Justin Bartolet*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAINTIFFS KERRY REARDON, JAMES LATHROP, JULIE MCKINNEY, JONATHAN GRINDELL, SANDEEP PAL, JENNIFER REILLY, and JUSTIN BARTOLET on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.<br><br>Defendant. | Civil Action No. 14-cv-05678-JST<br><br>Honorable Judge Jon S. Tigar<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A.   "Prior Express Consent" Must Be Proved By Uber And Should
        Not Be Determined In A Motion To Dismiss ........................................................ 2

    B.   The Unfinished Plaintiffs Did Not "Provide" Uber With Their Telephone
        Numbers Or "Expressly Consent" To Receive Text Spam From Uber ............... 3

    C.   All Of The Cases Cited By Uber Are Factually Inapposite On The Key Issue
        Raised By The Court And Must Be Rejected ...................................................... 7

III. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Baird v. Sabre Inc.*,
 995 F. Supp. 2d 1100 (C.D. Cal. 2014) ............................................................................... 7

*Connelly v. Hilton Grand Vacations Co., LLC*,
 No. 12CV599 JLS KSC, 2012 WL 2129364 (S.D. Cal. June 11, 2012) ................................ 2, 3, 5

*Grant v. Capital Mgmt. Servs., L.P.*,
 449 F. App'x 598 (9th Cir. 2011) ........................................................................................ 2

*Gutierrez v. Barclays Grp.*,
 No. 10cv1012 DMS (BGS), 2011 WL 579238 (S.D. Cal. Feb. 9, 2011) ............................. 2

*Hill v. Homeward Residential, Inc.*,
 No. 2:13-CV-388, 2014 WL 4105580 (S.D. Ohio Aug. 19, 2014) ..................................... 9

*Hudson v. Sharp Healthcare*,
 No. 13-CV-1807-MMA NLS, 2014 WL 2892290 (S.D. Cal. June 25, 2014) ..................... 10

*In re Jiffy Lube Int'l, Inc.,Text Spam Litig.*,
 847 F. Supp. 2d 1253 (S.D. Cal. 2012) ............................................................................... 6

*Mais v. Gulf Coast Collection Bureau, Inc.*,
 768 F.3d 1110 (11th Cir. 2014) ........................................................................................... 7

*Meyer v. Portfolio Recovery Assocs., LLC*,
 707 F.3d 1036 (9th Cir. 2012) ............................................................................................. 3

*Ott v. Mortg. Investors Corp. of Ohio, Inc.*,
 ___ F. Supp. 3d ____, No. 3:14-cv-00645-ST, 2014 WL 6851954 (D. Or. Dec. 3, 2014) ............. 3

*Pinkard v. Wal-Mart Stores, Inc.*,
 No. 3:12-CV-02902-CLS, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012) ........................... 8

*Roberts v. PayPal, Inc.*,
 No. C 12-0622 PJH, 2013 WL 2384242 (N.D. Cal. May 30, 2013) ................................... 9

*Ryabyshchuck v. Citibank (S. Dakota) N.A.*,
 No. 11-CV-1236-IEG WVG, 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012) ...................... 8

*Satterfield v. Simon & Schuster, Inc.*,
 569 F.3d 946 (9th Cir. 2009). ........................................................................................... 4, 6

*Saunders v. NCO Fin. Sys., Inc.*,
 910 F. Supp. 2d 464 (E.D.N.Y. 2012) .............................................................................. 8, 9

*Smith v. Microsoft Corp.*,
   297 F.R.D. 464 (S.D. Cal. 2014) .................................................................................................. 3

*Steinhoff v. Star Tribune Media Co., LLC*,
   No. 13-CV-1750 SRN/JSM, 2014 WL 1207804 (D. Minn. Mar. 24, 2014) .................................. 9

*Thrasher v. SMRE Fin. Servs., Inc.*,
   No. 14-CV-1540 BEN (NLS), 2015 WL 1138469 (S.D. Cal. Mar. 13, 2015) ................................ 3

*United States v. Pogue*,
   19 F.3d 663 (D.C. Cir. 1994) ......................................................................................................... 5

*Van Patten v. Vertical Fitness Grp., LLC*,
   22 F. Supp. 3d 1069 (S.D. Cal. 2014) ............................................................................................ 9

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ............................................................................................. 4

Black's Law Dictionary (8th ed. 2004) .......................................................................................... 4, 6

Pursuant to the Court's Order of June 2, 2015 (Dkt. 44), this brief addresses questions raised by the Court with respect to four of the plaintiffs who began the online process of becoming Uber drivers but never finished submitting their applications: James Lathrop, Jonathan Grindell, Jennifer Reilly, and Justin Bartolet ("Unfinished Plaintiffs").

## I. INTRODUCTION

Express consent is an affirmative defense that Uber Technologies, Inc. ("Uber") has the burden of proving. The Ninth Circuit and numerous district courts in this circuit have held that the question of consent cannot be resolved on a motion to dismiss. Rather, the defendant has the burden of proving consent and must do so with evidence—either at summary judgment or trial. The reasons behind that rule are evident here, where the process by which Uber obtained the Unfinished Plaintiffs' cell phone numbers is unclear. By the allegations of the Complaint, these plaintiffs never submitted a final application. And these allegations show that the text messages in question were entreaties to the Unfinished Plaintiffs to complete the process and submit an application. The precise details of how that process worked will only come into focus through discovery. For now, however, the Motion to Dismiss ("Mot.") must fail because the question of consent cannot be decided based on the allegations of the First Amended Complaint.

In any event, Uber has failed to provide the Court with any basis for concluding that the Unfinished Plaintiffs provided their numbers to Uber as numbers at which they wished to be reached. The actual allegations of the Complaint establish the opposite. The Unfinished Plaintiffs began the process, but never completed it. Just because Uber managed to capture their phone numbers in an early stage of the application process does not mean that the numbers were provided within the meaning of the 1992 FCC Order. What happened can be analogized to a written process on paper. Suppose the application was paper. And suppose that the Unfinished Plaintiffs filled in some of their personal and private information on the application in writing. Now, suppose that they decided not to sign the paper application and instead decided to put it in a file. Or maybe they threw it in the trash. In either event, putting their telephone number down on an application that they never submitted could not be considered consent to be contacted at the number they input on

PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Civil Action No. 14-cv-05678-JST

the unfinished application. Uber's use of computer technology, which captured private information along the way, does not change this. Until the Unfinished Plaintiffs completed the application process, input all of the necessary information, and electronically submitted the application, they had not "clearly and unmistakably" told Uber that they wish to be reached at their cell phone numbers.

Although Uber cites to numerous cases in purported support of its argument, not a single case identified by Uber can be read to infer express consent from this incomplete application process. On the other hand, authority from the Southern District of California holds that merely inputting a phone number as part of an application is not express consent unless there is also proof that the applicant signed and completed that application. *Connelly v. Hilton Grand Vacations Co., LLC*, No. 12CV599 JLS KSC, 2012 WL 2129364, at *4 (S.D. Cal. June 11, 2012) ("even assuming that [p]laintiffs' acceptance of the terms as set forth in the HHonors Program application would suffice as 'prior express consent' under the TCPA . . . Hilton has presented no evidence that Connelly or Sikes actually signed and submitted an enrollment application.").

## II. ARGUMENT

### A. "Prior Express Consent" Must Be Proved By Uber And Should Not Be Determined In A Motion To Dismiss

The question of consent is not an element of the Unfinished Plaintiffs' TCPA claim. Instead, it is an affirmative defense that must be raised and proved by Uber. In *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 n.1 (9th Cir. 2011), the Ninth Circuit held that "'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof." *See also Gutierrez v. Barclays Grp.*, No. 10cv1012 DMS (BGS), 2011 WL 579238, at *2 (S.D. Cal. Feb. 9, 2011) (holding that based on the FCC's 1992 Order, the caller has burden to prove consent as they have the best access to the factual information relevant to that inquiry); *Connelly,* 2012 WL 2129364, at *3 ("Whether Plaintiffs gave the required prior express consent is an affirmative defense to be raised and proved

by a TCPA defendant, however, and is not an element of Plaintiffs' TCPA claim.").[1]

For this reason alone, Uber's arguments with respect to consent must be rejected. Indeed, the factual circumstances surrounding the online process of submitting an application to be an Uber driver will be highly relevant to the Court's inquiry. The Court should have the opportunity to observe Uber's interface and see the manner in which the telephone numbers were input into that interface. Based on the facts before the Court now, there is no indication that the Unfinished Plaintiffs did anything to affirmatively submit their applications. Instead, the allegations indicate that the Unfinished Plaintiffs simply stopped in the middle of the process. Those allegations are insufficient to establish consent.

### B. The Unfinished Plaintiffs Did Not "Provide" Uber With Their Telephone Numbers Or "Expressly Consent" To Receive Text Spam From Uber

Uber claims that the Unfinished Plaintiffs "expressly consented" to receive numerous automated text messages from Uber. Mot. at 1. The sole support for Uber's contention is that they input their cell phone numbers into an online application that they never completed or submitted. *See* Dkt. No. 10 (First Amended Complaint) at ¶¶ 54-55 (James Lathrop); ¶ 70 (Jonathan Grindell); ¶ 90 (Jennifer Reilly); ¶ 113 (Justin Bartolet). In response to the Court's inquiry for authority supporting Uber's contention that this inchoate submission of an application amounts to express consent, Uber comes up empty. Instead of identifying cases that support the contention that

---

[1] Although one district court has relied on the Ninth Circuit's subsequent opinion in *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012), to decide that it is the plaintiff's burden to demonstrate absence of consent, *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 471-72 (S.D. Cal. 2014), subsequent district courts have (1) found that *Smith* incorrectly extended *Meyer* and (2) reaffirmed that it is defendant's burden to prove the affirmative defense of express consent. *See, e.g.*, *Thrasher v. SMRE Fin. Servs., Inc.*, No. 14-CV-1540 BEN (NLS), 2015 WL 1138469, at *5-6 (S.D. Cal. Mar. 13, 2015) ("But this statement in *Meyer*—that prior express consent is an element of the claim—was made in the context of a motion for preliminary injunction that was examining the plaintiff's likelihood of success on the merits. . . . That statement did not discuss whose burden it was to show prior express consent. Rather, earlier in the opinion *Meyer* itself suggests that the burden of actually showing consent lies with the Defendant."); *Ott v. Mortg. Investors Corp. of Ohio, Inc.*, ___ F. Supp. 3d ____, No. 3:14-cv-00645-ST, 2014 WL 6851954, at *14 (D. Or. Dec. 3, 2014) ("*Meyer* did not decide whether a plaintiff must affirmatively plead a lack of consent in order to survive a motion to strike at the pleading stage. In light of the specific ruling in *Grant* and the FCC's statements, *Smith* is not persuasive.").

3
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Civil Action No. 14-cv-05678-JST

inputting a phone number into an application that is never submitted amounts to express consent, Uber ignores the Court's admonition and falls back repeatedly on the use of the terms "provide" and "provided" in the Complaint. Dkt. 45 at 3, 4, 5, 7, 9. The use of this terminology is not dispositive. Dkt. 44 at 2. The proper inquiry is whether the consent was clearly and unmistakably stated. *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 955 (9th Cir. 2009).

According to Uber, because the Unfinished Plaintiffs input their telephone numbers into Uber's website, they "provided" those numbers to Uber and, thus, "expressly consented" to be texted by Uber. Express consent, however, is not given so freely. According to Black's Law Dictionary, "consent" is defined as "[a] voluntary yielding to what another proposes or desires; agreement, approval, or permission regarding some act or purpose, esp. given voluntarily by a competent person." CONSENT, Black's Law Dictionary (10th ed. 2014). Relying on Black's Law Dictionary, the Ninth Circuit has further explained that "[e]xpress consent is '[c]onsent that is clearly and unmistakably stated.'" *Satterfield*, 569 F.3d at 955 (quoting Black's Law Dictionary (8th ed. 2004)). Because the Unfinished Plaintiffs never submitted completed applications to Uber, they did not "clearly and unmistakably state" their "agreement, approval, or permission" for Uber to do anything vis-à-vis their applications, let alone bombard them with text messages.

The best way to analyze this issue is to compare the computer process to a paper process. If the Uber application was on paper, and the Unfinished Plaintiffs discarded the written application or simply decided not to submit it, there would be no question that they did not expressly consent to anything related to the application. Their conduct here should be evaluated no differently. Because the information was submitted online, information input was apparently captured even though the application was never completed or submitted. This is not express consent. This aborted application cannot amount to clearly and unmistakably stating one's consent to be contacted at the number initially input. Under common law concepts of consent, even a signed and executed "consent" cannot amount to anything unless it is submitted.[2]

---

[2] *See, e.g. United States v. Pogue*, 19 F.3d 663, 666 (D.C. Cir. 1994) ("The undated, unverified and unsubmitted consent form that was found at Pogue's home after his death furnishes no adequate basis for this court to determine that the defendant had knowingly and voluntarily waived and abandoned his right to appeal. Indeed, the record indicates that Pogue held onto the consent form for

4

Although there are no cases that are precisely on all fours, *Connelly* is highly instructive. In *Connelly*, the plaintiffs filed a class action complaint under the TCPA, alleging that Hilton Grand Vacations Co., LLC ("Hilton") "negligently and/or willfully plac[ed] calls to [p]laintiffs on their cellular telephones without their prior express consent and not for emergency purposes." 2012 WL 2129364, at *1. Hilton moved to dismiss on the grounds that, *inter alia*, plaintiffs lacked standing "because each 'consented to receive the subject calls by giving the Hilton family his/her cellular telephone numbers.'" *Id.* at *3. The district court—treating Hilton's motion as a motion for summary judgment—denied the motion, finding "that there [wa]s a genuine issue of material fact whether [p]laintiffs gave prior express consent." *Id*. The district court rejected Hilton's argument that no such genuine issue existed because "all three Plaintiffs affirmatively registered their cellular telephone numbers with the Hilton family, either in applying for the HHonors Program or while booking reservations to stay at a Hilton family property." *Id*.

As to the plaintiffs' applications for the HHonors Program, the district court found that there was "no evidence" that the plaintiffs "indeed gave their prior express consent for the calls" because "even assuming that [p]laintiffs' acceptance of the terms as set forth in the HHonors Program application would suffice as 'prior express consent' under the TCPA . . . ***Hilton has presented no evidence that Connelly or Sikes actually signed and submitted an enrollment application***." *Id*. at *4 (emphasis added). And, as to the other plaintiffs' booking of registrations, the district court found that Hilton "failed to explain how the mere registration of a cellular telephone number at the time of booking a hotel reservation constitutes prior express consent for the telephone calls at issue here." *Id*. According to the district court, "Hilton points to no evidence that in booking a hotel reservation [plaintiff] agreed to Hilton's terms and conditions, including the possibility that contact information might be used to make special offers or promotions by telephone." *Id*. Thus, the district could not "conclude that one who provides a contact telephone number in booking a hotel reservation is 'clearly and unmistakably' consenting to receive promotional calls." *Id*. (citing

---

a number of weeks, never once discussing it with his attorney and never indicating that he intended to return it to counsel to be filed with the court.")

*Satterfield*, 569 F.3d at 955 (quoting Black's Law Dictionary 323 (8th ed. 2004))).[3]

The same analysis applies here. There is no evidence that the Unfinished Plaintiffs actually submitted and signed an application with Uber. In fact, the Unfinished Plaintiffs' allegations are just the opposite. Plaintiff Lathrop alleged that he "provided his personal information at the beginning of the sign-up process" but "decided not to complete the process to become a driver after learning that his car did not meet Uber's requirements" and "never finished the process to become an Uber driver." Dkt. 10 at ¶¶ 54-55. Similarly, Plaintiff Grindell alleged that he "began an application" but "did not complete the process to become an Uber driver." *Id.* at ¶ 70. Plaintiff Reilly alleged she "started the application to become an Uber driver through Uber's website but ultimately decided not to complete the application because she was no longer interested." *Id*. at ¶ 99. And Plaintiff Bartolet alleged that he "began an application to become an Uber driver through Uber's website" but that he "did not complete the process to become an Uber driver." *Id.* at ¶ 113.

The texts that the Unfinished Plaintiffs received from Uber confirm that they did not actually complete and submit their applications to Uber. For instance, Uber texted Plaintiff Reilly multiple times to urge her to finish her application. *See, e.g.*, Dkt. 10 at ¶ 102 ("Hi, it's Mark from Uber! Make sure you upload your documents on your partners.uber.com account so you can get on the road ASAP!"). Similarly, Uber sent numerous texts to Plaintiff Lathrop pestering him to complete his application. *See* Dkt. 10 at Exhibit C ("UBER: Let's get you on the road! Please submit your license, insurance, and registration to https://partners.uber.com/. If you have trouble uploading these, you can email them to driverdocs@uber.com."). Because the Unfinished Plaintiffs did not complete and submit their applications to Uber, they did not give their express consent to receive text messages.

---

[3] *See also In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1259 n.7 (S.D. Cal. 2012) ("The court notes that even if it were to take judicial notice of the invoices, it is not persuaded that a customer's provision of a telephone number on the invoice in question would constitute prior express consent. Heartland's citations to FCC documents are not particularly convincing, and it is doubtful that Plaintiffs' alleged consent was 'clearly and unmistakably stated.'") (citing *Satterfield*, 569 F.3d at 955).

### C. All Of The Cases Cited By Uber Are Factually Inapposite On The Key Issue Raised By The Court And Must Be Rejected

Uber argues that "when an individual intentionally and voluntarily submits its [sic] cell phone number to a caller, that individual is deemed to have 'provided' his number to the caller and has given prior express consent to be contacted at that number. It is irrelevant whether the individual maintains the purpose for which the number was provided." Dkt. 45 at 2. Uber cites two cases that it claims support its conclusion: *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1123 (11th Cir. 2014) and *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1105-1106 (C.D. Cal. 2014). Dkt. No. 45 at 1. Neither *Baird* nor *Mais* answers the key question that the Court posed in its June 2, 2015 Order.

In *Baird*, the district court held that, under the 1992 FCC Order, the plaintiff "'knowingly release[d]' her cell phone number to Hawaiian Airlines when she ***booked her tickets***, and ***by doing so*** gave permission to be called at that number by an automated dialing machine." 995 F. Supp. 2d at 1106 (emphasis added). The plaintiff "knowingly release[d]" her cell phone number because she completed her reservation with Hawaiian Airlines and the district court's plain language connects the plaintiff's "permission" or, in other words, consent, with her *completed* ticket purchase. *Id*. Thus, *Baird* adds nothing to answer the Court's question of whether an *incomplete* application can be the basis of express consent under the 1992 FCC Order.

In *Mais*, the district court analyzed a separate question—namely, whether, under the 1992 FCC Order, a plaintiff "provided" his telephone number to the creditor that called him if the plaintiff submitted his number to a separate entity. 768 F.3d at 1122. Or, as the district court framed it, "whether, under the FCC's interpretation of prior express consent, a called party 'provides' his cell phone number to a creditor when (during the transaction creating the debt) he authorizes an intermediary to disclose his number to the creditor for debt collection." *Id*. at 1123. Importantly, the *Mais* plaintiff's wife "***submitted the admissions forms and the cell phone number*** to a representative of the Hospital, an entity separate from Florida United and Gulf Coast[.] *Id*. at 1122 (emphasis added). Put another way, Mais *completed* his transaction with the hospital, the creditor's intermediary.

7

Uber cites other cases for its argument that the Unfinished Plaintiffs "provided their numbers as ones at which they wished to be reached" rather than had their numbers "captured" by the caller. Dkt. No. 45 at 5-9. Yet, as with *Baird* and *Mais*, above, Uber ignores the central difference between the instant facts and the facts of those cases: here, the Unfinished Plaintiffs never completed their transactions with Uber. For instance, Uber cites *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-CV-02902-CLS, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012) but, in that case, the plaintiff "dropped off a prescription with the Russellville Wal–Mart pharmacy" and, during that completed transaction, provided her cell phone number along with other personal information request by the pharmacy. *Id.* at *2. Pinkard completed her role in her transaction with the pharmacy and was only waiting on the pharmacy to do its job and fill her prescription. Here, unlike in *Pinkard*, the Unfinished Plaintiffs were not waiting on Uber to take action and fulfill its part of the transaction. Because the Unfinished Plaintiffs never submitted their completed applications, the ball was not yet in Uber's court. Had Pinkard changed her mind and left Wal-Mart without asking the pharmacy to fill her prescription, she would not have expressly consented to receive the texts from Wal-Mart.[4]

Uber misconstrues *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464 (E.D.N.Y. 2012), claiming that it holds that "where plaintiff did not properly furnish all of the information required to sign up at a website but provided his cell phone number, he still 'voluntarily' provided his number and thereby provided 'prior express consent.'" Dkt. 45 at 8. In *Saunders*, however, it was undisputed that the plaintiff provided *all* of the information required to open an account with Public Access to Court Electronic Records ("PACER") and he actually did so. 910 F. Supp. 2d at 465. In completing the process, the plaintiff input his mother's address and his cell phone number. *Id*. Thereafter, he used PACER and incurred charges of $36.35. *Id*. He did not pay his bill, and his

---

[4] Uber also cites *Ryabyshchuck v. Citibank (S. Dakota) N.A.*, No. 11-CV-1236-IEG WVG, 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012). It is not clear why. In *Ryabyschuck*, the plaintiff submitted an online application for a credit card. *Id.* at *1. The court held that the first text he received was not actionable because a pop-up explained that he was consenting to receive text messages. *Id.* The plaintiff opted out and then received a confirmation text, which the court also held was not actionable. *Id.* at *3-4. There is no indication that the plaintiff did not finish the application process or that this was even considered by the Court. The only relevance of this decision is that it confirms that consent must be decided on summary judgment—not in a motion to dismiss. *Id.* at *4.

account was turned over for collection. *Id.* at 466. Saunders did not ever "change his mind" about whether to open an account with PACER. Dkt. No. 45 at 6. He simply argued, unsuccessfully, that he revoked the "prior express consent" he admitted providing when he opened his PACER account. *Saunders*, 910 F. Supp. 2d at 467-68. The legal question at issue in *Saunders* was not, as Uber suggests, whether the plaintiff provided "prior express consent." Instead, *Saunders*' core TCPA holding was whether the plaintiff revoked that consent, an issue not raised in Uber's Motion to Dismiss.

Three additional cases cited by Uber are similarly distinguishable on the fundamental issue under this Court's consideration. Specifically, in each case, the plaintiff *completed* the application process at issue. *See Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069, 1071 (S.D. Cal. 2014) (plaintiff joined Gold's Gym, signed an application, and became a member); *Steinhoff v. Star Tribune Media Co., LLC*, No. 13-CV-1750 SRN/JSM, 2014 WL 1207804, at *1 (D. Minn. Mar. 24, 2014) (plaintiff "signed up and paid for a one-year newspaper subscription offered by [d]efendant"); *Roberts v. PayPal, Inc.*, No. C 12-0622 PJH, 2013 WL 2384242, at *1 (N.D. Cal. May 30, 2013) (plaintiff was a PayPal customer and used its services and admitted that he "provided his cell phone number in order to receive information regarding PayPal's mobile services").

Uber cites two additional cases to argue that the Unfinished Plaintiffs provided express consent because they "knowingly released their phone numbers to Uber by inputting those numbers themselves on Uber's website" and, as such, the numbers were not "captured" by Uber. Dkt. 45 at 9. Neither case is favorable to Uber.

In *Hill v. Homeward Residential, Inc.*, No. 2:13-CV-388, 2014 WL 4105580 (S.D. Ohio Aug. 19, 2014), the court denied the defendant's motion for summary judgment, finding that the defendant "failed to demonstrate that [p]laintiff knowingly released his cell phone number to [d]efendant" because there was "no dispositive proof as to how [d]efendant obtained the cell phone number at that time." *Id.* at *6. The court made this finding despite evidence that the plaintiff had contacted the defendant and told him that his telephone number had changed and that plaintiff "recalled eventually giving express permission to call his cell number" to defendant. *Id.* at *4.

Here, there is no allegation that the Unfinished Plaintiffs gave Uber express permission to call their cells, and yet Uber argues that the Unfinished Plaintiffs knowingly released their numbers. According to the Complaint, the Unfinished Plaintiffs merely input their cell phone number into an application without ever submitting it. Given the evidence before the court in *Hill*, if the defendant in *Hill* failed to demonstrate that the plaintiff knowingly released his cell phone number—leaving open the possibility that the number was captured—it cannot follow that Uber has sufficiently demonstrated, based on the Unfinished Plaintiffs' pleading alone, that the Unfinished Plaintiffs knowingly released their numbers to Uber. Instead, at the very least, there is an open question as to whether Uber "captured" the Unfinished Plaintiffs' phone numbers and, if Uber "captured" the numbers, the Unfinished Plaintiffs did not "provide" them for purposes of the TCPA.

*Hudson v. Sharp Healthcare,* No. 13-CV-1807-MMA NLS, 2014 WL 2892290 (S.D. Cal. June 25, 2014) is also not germane to the analysis in this matter. *Hudson* only stands for the proposition that where the plaintiff, and not some outside source, provides a phone number, it amounts to "consent" for TCPA purposes. Here, there is no dispute that the Unfinished Plaintiffs input their phone numbers into Uber's website. However, because the Unfinished Plaintiffs never submitted their applications, they never "provided" their phone numbers for purposes of the TCPA. *Hudson* is silent on the latter issue.

### III.     CONCLUSION

Plaintiffs request that the Court deny Uber's Motion to Dismiss (Dkt. 25) in its entirety.

Dated: June 30, 2015

Respectfully submitted,

  /s/ Hassan A. Zavareei
Hassan A. Zavareei (SBN 181547)
hzavareei@tzlegal.com
**TYCKO & ZAVAREEI LLP**
2000 L Street, N.W., Suite 808
Washington, DC 20036
Tel.: (202) 973-0900
Fax: (202) 973-0950

*Attorney for Plaintiffs*

# CERTIFICATE OF SERVICE

The undersigned certifies that, on June 30, 2015, I caused the foregoing document to be served on all counsel of record by the Court's CM/ECF electronic filing system.

/s/ Hassan A. Zavareei
Hassan A. Zavareei
*Attorney for Plaintiffs*
