LOCKE LORD LLP
Susan J. Welde, (SBN:  205401)
swelde@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, California  90071
Telephone: (213) 485-1500
Facsimile: (213) 485-1200

LOCKE LORD LLP
Martin Jaszczuk, (*Pro Hac Vice*)
mjaszczuk@lockelord.com
Nick J. Di Giovanni, (*Pro Hac Vice*)
ndigiovanni@lockelord.com
111 S. Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-0700
Facsimile: (312) 443-0336

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRY REARDON, et al., | CASE NO. 14-cv-05678-JST |
| Plaintiff, | **UBER'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** |
| vs. | |
| UBER TECHNOLOGIES, INC., | [Filed Concurrently with Request for Judicial Notice] |
| Defendant. | Courtroom: 9 - 19th Floor |
| | Honorable Judge Jon S. Tigar |

*Locke Lord LLP*
*300 South Grand Avenue, Suite 2600*
*Los Angeles, CA  90071*

## I.    INTRODUCTION

Plaintiffs attempt to confuse the issues by asserting that Uber somehow "captured" the Class B Plaintiffs' phone numbers. Plaintiffs' newfound arguments, however, are belied by Plaintiffs' own Complaint. Plaintiffs' own class definitions require that the Class B Plaintiffs voluntarily provided Uber with their phone numbers. And as Plaintiffs appear to concede, the voluntary provision of one's phone number means that one has provided a phone number at which one "wishes to be reached" (consent) under the TCPA.

## II.    ARGUMENT

### A.    CONSENT CAN BE RESOLVED ON A MOTION TO DISMISS.

Plaintiffs erroneously claim, without any legal support, that consent cannot be resolved on a motion to dismiss. Plaintiffs' Supplemental Opposition, at p. 1. But the Ninth Circuit and district courts have held that the assertion of an affirmative defense is properly considered on a motion to dismiss where the "allegations in the complaint suffice to establish" the defense. *Sams v. Yahoo! Inc.*, 713 F.3d 1175 (9th Cir. 2013); *Goddard v. Google Inc.*, 640 F. Supp. 2d 1193, 1199 n. 5 (N.D. Cal. 2009). Accordingly, courts have dismissed complaints where plaintiffs admitted on the face of the complaint that they consented to be contacted by defendants – as is the case here. *See Emanuel v. Los Angeles Lakers, Inc.*, No. CV 12-9936-GW (SHx), 2013 WL 1719035, at *3-4 (C.D. Cal. April 18, 2013); *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H (WVG), 2012 WL 2401972, at *3 (S.D. Cal. June 18, 2012).

### B.    PLAINTIFFS' NEWFOUND ARGUMENT THAT UBER "CAPTURED" THEIR PHONE NUMBERS IS FLAWED.

Plaintiffs assert for the first time in their Opposition that Uber captured their phone numbers. But this argument is belied by the allegations in Plaintiffs' First Amended Complaint. There are no allegations that Uber "captured" the Class B Plaintiffs' phone numbers in the Complaint. To the contrary, Plaintiffs each allege that as part of the sign-up process to use the Uber platform, they "provided Uber with

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

[their] cellular phone numbers" by entering their phone numbers on Uber's website. FAC, ¶¶ 70, 113.  *See also* FAC, ¶¶ 36, 38-39, 54, 99.  More tellingly, Plaintiffs' own class definitions preclude any argument that Uber "captured" the Class B Plaintiffs' phone numbers.  The Class B definition requires that Plaintiffs received a text message from Uber on their cell phones after "providing Uber with the telephone number at which they received the text message from Uber through Uber's website." This is in clear contrast with the Class A Plaintiffs who received a text from Uber without "provid[ing] Uber with the cellular telephone number at which they received the text message from Uber."  FAC, ¶¶ 124-125.

Plaintiffs fail to address this fatal flaw in their newfound argument and instead repeat a faulty analogy of an individual completing a written application but discarding it before submission.  That is not the right analogy.  The proper analogy would be an individual partially completing an application (including the phone number), submitting the partially completed application, and the receiving entity then following up with the person *at the number that person made available* on the partially-completed application, including to inform him that portions of his application were incomplete.  That is the proper analogy and that is what happened here.[1]

This is not what the FCC and courts have described as "capturing" a number. Instead, an entity "captures" a number when it obtains the number by a caller ID or ANI device without notice to the caller.  *See* 7 FCC Rcd. 8752, 8769, ¶ 31.  *See also Hill v. Homeward Residential, Inc.*, No. 2:13–cv–388, 2014 WL 4105580, at * 3-4 (S.D. Ohio Aug. 19, 2014).  But here Plaintiffs admit that Uber would not have had Plaintiffs' phone numbers had Plaintiffs themselves not affirmatively entered those

---

[1] Plaintiffs' reliance on *Pogue*, a case entirely unrelated to the TCPA and dealing with the appeal of a criminal conviction only continues Plaintiffs' flawed analogy.  The defendant in *Pogue* left a form regarding consent to appeal at his home – he did not submit a partially completed form.  *See U.S. v. Pogue*, 19 F.3d 663 (D.C. Cir. 1994).

2

1  numbers on Uber's website.  *See* FAC, ¶¶ 36, 38-39, 54, 70, 99, 113.  *See also*

2  Opposition, p. 10 ("[h]ere there is no dispute that the Unfinished Plaintiffs input their

3  phone numbers into Uber's website").  Plaintiffs' last-ditch attempt to shield their

4  Class B allegations from dismissal must be rejected.

5  **C.**   **THE CASES PLAINTIFFS CITE DO NOT SUPPORT THEIR POSITION.**

6      Plaintiffs take great liberties in citing cases in support of their position.  To

7  begin with, the *Connelly* case upon which Plaintiffs heavily rely was later rejected by

8  the same court.  *See Van Patten v. Vertical Fitness Group, LLC*, 22 F. Supp. 3d 1069,

9  1076 (S.D. Cal. 2014) (rejecting *Connelly* as well as *Jiffy Lube*, another case Plaintiffs

10  cite, as being unable to "stand up to the far more robust analyses in the cases that

11  followed" and citing numerous other cases to the contrary).  Moreover, the *Connelly*

12  plaintiffs' complaint specifically alleged that "Plaintiffs *never provided their cell*

13  *phone numbers* to Hilton Grand Vacations…"  *Connelly v. Hilton Grand Vacations*

14  *Co., LLC*, No. 12CV599, *See* Request for Judicial Notice ("RJN"), Ex. 1, (*Connelly*

15  Complaint, ¶ 15) (emphasis added).  This, of course, is in marked contrast with the

16  allegations of the Class B Plaintiffs here, all of whom concede on the face of their

17  Complaint, in their class definition, and in their briefs, that they "input their phone

18  numbers into Uber's website."  Supplemental Opposition, p. 10.  *See also* FAC, ¶¶ 36,

19  38-39, 54, 70, 99, 113. Additionally, Plaintiffs' reliance on *Connelly* for the

20  proposition that providing contact information for the purpose of booking a hotel

21  reservation is not consent to be contacted regarding promotional calls related to

22  timeshares also fails.[2]  Here, Plaintiffs concede in their Complaint and briefs that they

23  input their phone numbers on Uber's website while filling out an application to

[2] In *Connelly*, the calls complained of related to the selling of timeshares by Hilton Grand Vacations – whereas the Plaintiffs had only provided phone numbers to Hilton to book hotel rooms or enroll in the hotel rewards program.  *See* RJN, Ex. 1 (*Connelly* Complaint at ¶ 20); *see also Connelly v. Hilton Grand Vacations Co., LLC*, 2010 WL 2129364, at *4 (S.D. Cal. June 11, 2012).

*Locke Lord LLP*
*300 South Grand Avenue, Suite 2600*
*Los Angeles, CA 90071*

3

"become an Uber driver" and that all of the text messages complained of were directly related to "becom[ing] an Uber driver." *See* Supplemental Opposition, pp. 1 and 10. *See also* FAC ¶¶ 53-54, 61-62, 70, 99, 102-103, 113, 125.[3]  In short, unlike in *Connelly*, Plaintiffs here received text messages related to the exact purpose for which they admittedly input their numbers.

Plaintiffs' citation to *Satterfield* is also misplaced.  "The issue of whether the mere act of providing a cellphone number constitutes 'express consent' did not arise in *Satterfield*."  *Baird v. Sabre, Inc.*, 995 F. Supp. 2d 1100, 1103 (C.D. Cal. 2014).  Instead, the issue was whether consent provided to one business constituted consent to receive messages from a different business.  *See id.* (*citing Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949, 955 (9th Cir. 2009)).  That is not the issue here, and the cases Plaintiffs cite do not save their Complaint.

### D. PLAINTIFFS DO NOT CONTEST THAT PLAINTIFFS' VOLUNTARY PROVISION OF THEIR PHONE NUMBERS CONSTITUTES CONSENT UNDER THE TCPA.

Plaintiffs wholly dodge Uber's assertion that Plaintiffs "provided" their numbers as ones at which they "wished to be reached" by voluntarily locating Uber's website and inputting their numbers.  As noted in Uber's Supplemental Brief, none of the courts discussing the consent issue focused on whether plaintiffs did or did not complete the transactions by way of which they provided their numbers.  Instead, courts have focused on whether individuals "voluntarily" divulged their numbers *as of the time the numbers were turned over.  See, e.g., Van Patten*, 22 F. Supp. 3d at 1077-1078; *Steinhoff v. Star Media Co.*, LLC, No. 13–cv–1750, 2014 WL 1207804 , *2-4 (D. Minn. Mar. 24, 2014); *Saunders v. NCO Financial Systems, Inc.*, 910 F. Supp. 2d 464, 468-469 (E.D.N.Y. 2012).  Although the plaintiffs in these cases were no longer interested in the purpose for which they initially supplied their numbers, the courts

---

[3] Moreover, *Connelly* did not address the FCC Order quoted by this Court in its Order Requesting Supplemental Briefing.

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

4

nevertheless found that they had consented to calls by voluntarily providing their numbers at the time the numbers were furnished.[4]  The same is true here.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed.  Moreover, the dismissal should be with prejudice given that Plaintiffs cannot truthfully disavow their central allegation.  After all, the question here is whether Plaintiffs voluntarily turned over their phone numbers to Uber.  They expressly concede they did – the concept is built right into their class definition and, in fact, serves to distinguish between members of Class A and members of Class B.  Plaintiffs could not, by way of an amended complaint, repudiate an admission they already made in a pleading governed by Rule 11 certifications.

Dated:  July 7, 2015

Respectfully submitted,

LOCKE LORD LLP


By: /s/ Susan J. Welde
    Susan J. Welde
    Martin Jaszczuk
    Nick J. Di Giovanni
    *Attorneys for Defendant UBER*
    *TECHNOLOGIES, INC.*

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

---

[4] In *Saunders,* the court even found that the plaintiff provided consent when he input his number but otherwise provided incomplete information with the apparent purpose of avoiding payment.  *See Saunders*, 910 F. Supp. 2d at 465, 467.