UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KERRY REARDON, et al.,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC.,

Defendant.

Case No. 14-cv-05678-JST

**ORDER GRANTING MOTION TO DISMISS IN PART**

Re: ECF No. 25

Before the Court is Uber Technologies, Inc.'s ("Uber") Motion to Dismiss. ECF No. 25. For the reasons set forth below, the Court will grant the motion in part and deny it in part.

## I. BACKGROUND[1]

On December 31, 2014, Plaintiffs filed this class action, alleging that Uber's practice of sending text messages to recruit drivers violates the Telephone Consumer Protection Act ("TCPA"). First Am. Compl., ECF No. 10, ¶ 1. Specifically, Plaintiffs allege that they received texts from Uber without having expressly consented to receive them. Id., ¶¶ 33, 50, 67, 81, 96, 110, 121. Plaintiffs Jonathan Grindell, Jennifer Reilly, and Justin Bartolet further allege that they continued to receive texts after they asked Uber to stop sending them texts. Id., ¶¶ 73, 104, 105, 116.

Uber, a Delaware corporation with its principal place of business in San Francisco, "is a nationwide passenger transportation service that connects riders and drivers through a cellular telephone application." Id., ¶¶ 5, 23. Uber riders use the application to "request and pay for on-demand car services," while Uber drivers "receive requests from Uber users via the" application and "use their own cars to provide the car services . . . ." Id., ¶¶ 6, 7. According to Plaintiffs,

[1] For the purposes of this Motion, the Court takes the allegations in the complaint as true. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

United States District Court
Northern District of California

"Uber's recruiting tactics include sending prolific text messages to prospective Uber drivers." Id., ¶ 10. As evidence of the same, Plaintiffs cite an article that "discusses complaints filed with the Federal Trade Commission that describe the high volume of text messages people have received from Uber and their inability to make them stop." Id., ¶¶ 11, 12.

The complaint is filed on behalf of seven named plaintiffs. Id., ¶¶ 24, 36, 53, 70, 84, 99, 113. Two of the named plaintiffs, Julie McKinney and Sandeep Pal, have never been Uber members, drivers, or users, and have never applied to be Uber drivers or given Uber their cellular telephone numbers. Id., ¶¶ 24, 84. These plaintiffs have been dubbed the "Class A" Plaintiffs. Id., ¶ 124. The other five named plaintiffs – the "Class B" Plaintiffs, Kerry Reardon, James Lathrop, Jonathan Grindell, Jennifer Reilly, and Justin Bartolet – began the driver-application process through Uber's website, but only Reardon completed the application process. None of the Plaintiffs became drivers. Id., ¶¶ 36, 53, 54, 55, 70, 99, 113, 125. During the application process, the Class B Plaintiffs provided Uber with their cellular telephone numbers. Id. All of the named plaintiffs allege that they received text messages from Uber recruiting them as drivers. Id., ¶¶ 33, 50, 67, 81, 96, 110, 121.

On February 27, 2015, Uber filed its Motion to Dismiss the claims of all of the Class B Plaintiffs, contending primarily that each provided his or her cellular telephone number to Uber during the driver-application process and therefore provided prior express consent to receive the complained-of text messages. ECF No. 25 at 1. Uber contends that this prior express consent, an affirmative defense under the TCPA, appears on the face of the complaint, and therefore the complaint can be challenged at this stage of the proceedings. Id. at 1, 2-3. Plaintiffs filed their opposition, and Uber replied. ECF Nos. 28, 33.

The Court requested supplemental briefing asking whether members of Class B who did not complete the application process "provided" their cell phone numbers to Uber within the meaning of a Federal Communications Commission order issued in 1992. ECF No. 44. Uber and Plaintiffs submitted supplemental briefs. See ECF Nos. 45, 46, and 47.

## II. JURISDICTION

This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28

U.S.C. § 1332(d). Plaintiffs have alleged more than $5 million in controversy and the parties are minimally diverse. This Court also has federal question jurisdiction over the action, which was brought under the federal TCPA, 47 U.S.C. § 227 *et seq.*, pursuant to 28 U.S.C. § 1331.

## III. LEGAL STANDARD

A court may dismiss a complaint or claims asserted therein pursuant to Federal Rule of Civil Procedure 12(b)(6). The court should grant a motion to dismiss for failure to state a claim under Rule 12(b)(6) if the complaint does not proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In considering a motion to dismiss, the court accepts the material facts alleged in the complaint, together with all reasonable inferences to be drawn from those facts, as true. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). But "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court will dismiss a claim when it is not based on a cognizable legal theory or the plaintiff has not pleaded sufficient facts to support that theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1990).

A court may consider and dismiss a complaint based on an affirmative defense where the defense is apparent from the face of the complaint. Sams v. Yahoo! Inc., 713 F.3d 1175, 1179 (9th Cir. 2013) (citations omitted). If a court dismisses the complaint or a claim alleged therein, it must grant leave to amend unless amendment would be futile. Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).

## IV. DISCUSSION

Uber makes three arguments in support of its motion. First, Uber asserts that because the texts at issue were not advertisements or telemarketing, Plaintiffs need only have provided "prior express consent," rather than "prior express *written* consent," for Uber to have lawfully sent the texts. ECF No. 25 at 3-7. Uber also contends that the Class B Plaintiffs' provision of their cellular telephone numbers to Uber during the driver-application process constitutes "prior express

consent" under the TCPA and therefore the complaint should be dismissed as to the Class B Plaintiffs. Id. at 7-9. Finally, Uber contends that, to the extent that Plaintiffs Grindell, Reilly, and Bartolet allege that they received text messages, and then revoked consent to receive further messages, the complaint should be dismissed as to any text messages those plaintiffs received prior to affirmatively revoking consent. Id. at 2 n.2; ECF No. 33 at 12-13. The Court addresses each argument in turn.

**A. Uber's Texts Do Not Constitute "Advertising" or "Telemarketing"**

In relevant part, the regulations implementing the TCPA provide:

> (a) No person or entity may:
>
> (1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or [] made with the *prior express consent* of the called party) using an automatic telephone dialing system or prerecorded voice . . .
>
> (iii) To any telephone number assigned to . . . a cellular telephone service . . . .
>
> (2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the *prior express written consent* of the called party . . . .

47 C.F.R. § 64.1200(a)(1), (2) (emphasis added). Under these regulations, text messages constitute "telephone calls." See Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009); see also In re Rules and Regulations Implementing the TCPA of 1991, Declaratory Ruling and Order, CG Docket No. 02-278, WC Docket No. 07-135, FCC 15-72, ¶¶ 49, 52 (released Jul. 10, 2015), https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (the "2015 FCC Order"). As shown above, if a text message "includes or introduces an advertisement" or "constitutes telemarketing," it may only be sent with the recipient's prior express *written* consent, whereas other texts require only prior express consent to be legal.

The regulation also defines "advertising" and "telemarketing." See 47 C.F.R. §§ 64.1200(f)(1), (12). An "advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services." Id. subsec. (f)(1). "Telemarketing" is "the

initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." Id. subsec. (f)(12).

Here, Uber argues that the text messages it allegedly sent cannot be said to "constitute telemarketing" or to "include or introduce an advertisement" because the texts do not promote its provision of property, goods, or services. Uber contends that its text messages were directed toward job recruitment, a category of text other courts have deemed not to fall into either the "telemarketing" or "advertisement" categories. Several prior cases have held that recruiting calls are not advertising or telemarketing texts for the purposes of the TCPA. See Lutz Appellate Servs., Inc. v. Curry, 859 F. Supp. 180, 181-82 (E.D. Pa. 1994); Friedman v. Torchmark Corp., No. 12-CV02837-IEG (BGS), 2013 WL 1629084, at *4 (S.D. Cal. Apr. 16, 2013); Murphy v. DCI Biologicals Orlando, LLC, No. 6:12-cv-1459-Orl-36KRS, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013). In Curry, the court concluded that faxes that a former employee and his business partner sent to a former employer seeking to hire the former employer's current employees were not "advertisements"[2] under the TCPA. Id. at 181-82. In particular, the Court rejected the notion that the employment opportunities in the faxes were advertisements of goods, services, or property, as is required by the TCPA definition. Id. ("A company's advertisement of available job opportunities within its rank is not the advertisement of the commercial availability of property."). On that basis, the court granted the defendants' motion to dismiss the complaint. Id. at 182.

As in Curry, the court in Friedman granted defendant's motion to dismiss on the ground that a telephone message the defendant left for the plaintiff was not an advertisement, nor was it telemarketing. 2013 WL 1629084, at *4. The message encouraged plaintiff to attend a "recruiting webinar" where the plaintiff would learn about defendant's products and services so that plaintiff could sell those products and services. Id. at *1. The court found, relying on Curry, that the

[2] Under the relevant portion of the TCPA, an "unsolicited advertisement" was defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." Curry, 859 F. Supp. at 181 (citing 47 U.S.C. § 227(a)(4)). This definition is materially similar to the definition of "advertisement" at issue here, which refers to "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1).

phone message "was not aimed at encouraging Plaintiff to engage in future commercial transactions with Defendant to purchase its goods. Rather, Defendant's message informed Plaintiff about a recruiting webinar that could have resulted in an opportunity to sell Defendant's goods, which is akin to an offer of employment." Id. at *4 (citing Chesbro v. Best Buy Stores, L.P., 705 F.3d 913, 919 (9th Cir. 2012)).

Similarly, in Murphy, the court granted defendants' motion to dismiss in part. 2013 WL 6865772. The defendants in Murphy had sent plaintiff text messages encouraging him to donate blood in exchange for a fee so that the defendants could use the donated blood to provide blood products. Id. at *1-*3. The court addressed whether the text messages were "telephone solicitations" under the TCPA, defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." Id. at *10 (citing 47 C.F.R. § 64.1200(f)(14)). The court concluded, relying on Friedman, that the text messages were not intended to encourage plaintiff to purchase, rent, or invest in any products or services. Id. Instead, at least one message asked the plaintiff to sell his blood to one of the defendants. Id. Accordingly, the messages did not meet the definition of "telephone solicitation," which largely mirrors the definition of "advertisement" here. Id.

Plaintiffs respond to this authority in two ways. First, they argue that Uber's position that its texts are "employment related" is inconsistent with its position in another case in this district, O'Connor et al. v. Uber Technologies, Inc. et al., Case No. 3:13-cv-03826-EMC. ECF No. 28 at 3-5, 6-11. Plaintiffs argue that Uber asserted in O'Connor that it was a technology company in the business of providing software goods and/or services to drivers, and not an employer of drivers. Id. Plaintiffs argue that Uber may not now shift positions to argue that its messages were really solicitations of employment (or an independent contractor relationship), unrelated to the provision of goods and services and therefore not advertisements or telemarketing campaigns for the purposes of the TCPA. Id.

The Court need not address Uber's arguments to the O'Connor court, however, because Judge Chen issued an order on the motion for summary judgment that supports Uber's position

here. See Case No. 3:13-cv-03826-EMC, ECF No. 251.[3] One of the issues litigated in O'Connor was whether Uber was its drivers' "presumptive employer." See id. at 9-15. This issue partly hinged on the character of Uber's business—that is, whether it is a technology company in the business of providing software or a transportation company in the business of providing rides. Id. at 9-11. Judge Chen concluded that Uber is not a technology company that primarily sells software; rather, Uber sells transportation services. Id. ("Uber does not simply sell software; it sells rides"; "Uber is no more a 'technology company' than Yellow Cab is a 'technology company' because it uses CB radios to dispatch taxi cabs"; "Uber's revenues do not depend on the distribution of its software, but on the generation of rides by its drivers"). The Court agrees with Judge Chen's reasoning, which reinforces the Court's finding that the texts sent to prospective drivers in this case do not promote goods or services and are not advertisements or telemarketing efforts.

Plaintiffs next cite a number of cases in response to Uber's arguments that the texts are not "advertising or telemarketing," ECF No. 28 at 7-13, but these cases are not analogous to the present one. First, Plaintiffs cite Consumer Protection Corp. v. Neo-Tech News, No. CV 08-1983-PHX-JAT, 2009 WL 2132694, at *3 (D. Ariz. July 16, 2009), for the proposition that they are not required to "demonstrate in detail" how the texts at issue constitute an advertisement. Neo-Tech involved a fax promoting the sale of shares in a company called Joytoto. Id. at *1. The court in that case barely needed to reach the question of whether the fax was an "advertisement" for a commercially available good or service, and its scant discussion addressed none of the issues presented by this motion. See id. at *3. Second, Plaintiffs cite Chesbro, where there was no question that the telephone calls promoted Best Buy's products and services, though explicit mention of those products and services was not made in every phone call. 705 F.3d at 916-17, 918.

[3] Plaintiffs ask the Court to take judicial notice of arguments in the summary judgment filings in O'Connor. ECF No. 29. Uber objects to the taking of judicial notice, stating that it is not proper to cite party arguments in other cases. ECF No. 33 at 7-9 (citing cases). The Court need not take notice of the parties' arguments on summary judgment in O'Connor because Judge Chen issued an order on the motion for summary judgment, which this Court can rely on as persuasive authority.

Plaintiffs' comparisons to Pimental v. Google, Inc., No. C-11-02585-YGR, 2012 WL 691784 (N.D. Cal. Mar. 2, 2012), Paldo Sign & Display Co. v. Wagener Equities, Inc., 67 F. Supp. 3d 874, 2014 WL 4376216 (N.D. Ill. Sept. 4, 2014), Brodsky v. HumanaDental Insurance Co., No. 10 C 3233, 2014 WL 2780089 (N.D. Ill. June 12, 2014), St. Louis Heart Center, Inc. v. Caremark, L.L.C., No. 4:12CV2151 TCM, 2012 WL 9988795 (E.D. Mo. Apr. 19, 2013), and Magic, Inc. v. 127 High Street, Inc., No. 14 C 4344, 2014 WL 6806941 (N.D. Ill. Dec. 2, 2014), are similarly inapt. In Pimental, the court concluded that, in the context of a constitutional challenge to the TCPA, the plaintiffs had adequately alleged that text messages sent via a Google application promoted Google's "service and mobile application" and for that reason were commercial speech within the meaning of the First Amendment. 2012 WL691784, at *2-3. In Paldo Sign, Brodsky, and AL & PO Corp., there was no dispute that the messages at issue promoted certain "products" or "services" for the purposes of the TCPA. See Paldo Sign, 2014 WL 4376216, at *5; Brodsky, 2014 WL 2780089, at *2, AL & PO Corp., 2014 WL 6999593, at *1. The same is true of the "Pharmacy Advisor" service promoted in the faxes in St. Louis Heart Center, and the "Get Paid for Faxes" service promoted in the faxes in Magic, Inc. See St. Louis Heart Ctr., 2012 WL 9988795, at *1, *3; Magic, Inc., 2014 WL 6806941, at *2.

Each of the messages at issue in the aforementioned cases were "advertising" because they were sent to an intermediary for the purpose of promoting a product, good, or service through that intermediary. For that reason, each of those cases is distinguishable from the present case. The texts that the Class B Plaintiffs received were sent to recruit drivers, not to promote the commercial availability of Uber's transportation services, even if Uber's ability to successfully recruit drivers is related to its commercial interest in providing more rides to its customers.

The Court finds that the texts at issue here were more akin to recruiting texts than advertising or telemarketing texts. The latter require the promotion of goods or services, but Uber is primarily a transportation business that provides ride services, not a technology business. Uber receives income in direct correlation to the number of rides its drivers provide, not as a proximate result of the number of drivers who download its application. Viewing Uber's relationship with its drivers in this light, the texts from Uber seeking to recruit drivers were not attempts to promote

United States District Court
Northern District of California

a "good" (its application) to those drivers, but instead was an attempt to recruit drivers so that those potential drivers could provide services to riders.

Accordingly, the Court finds that, given the allegations in the complaint, the texts at issue do not contain advertisements and do not constitute telemarketing. To prevail on its affirmative defense and therefore its motion, Uber needs only to show that the Class B Plaintiffs provided "prior express consent" to receive the texts at issue.

**B. Prior Express Consent**

**1. The general rule established by the FCC**

The Court now turns to Uber's claim that the Plaintiffs' giving of their phone numbers to Uber constituted "prior express consent" to receive texts from Uber. Plaintiffs do not dispute that they provided their phone numbers to Uber; the question is whether their doing so constituted "prior express consent." Prior express consent is a complete defense to Plaintiffs' TCPA claim. Van Patten v. Vertical Fitness Grp., LLC, 22 F. Supp. 3d 1069, 1073 (S.D. Cal. 2014).

Any analysis of this issue begins with the Federal Communications Commission's 1992 order interpreting the TCPA. In that order, the FCC found that

> [p]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate [TCPA rules] by calling a number which was provided as one to which the called party wishes to be reached.

In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 7 FCC Rcd 8752, 8769, ¶ 31 (Oct. 16, 1992) (the "1992 FCC Order"). This court is bound by the FCC's interpretations of the TCPA, unless those interpretations are invalidated by a court of appeals. See 28 U.S.C. § 2342 *et seq.* (the "Hobbs Act"); Pac. Bell v. Pac-West Telecomm, Inc., 325 F.3d 1114, 1125 (9th Cir. 2003); and Olney v. Job.com, Inc., No. 1:12-CV-01724-LJO, 2014 WL 1747674, at *4 (E.D. Cal. May 1, 2014).

In accordance with the 1992 FCC Order, the vast majority of cases to address the issue have held that a telephone customer who provides her number to another party consents to receive calls or texts from that party. See, e.g., Van Patten, 22 F. Supp. 3d at 1073-77; Baird v. Sabre Inc.,

995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014); Emanuel v. L.A. Lakers, Inc., No. CV 12-9936-GW(SHx), 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013); Roberts v. PayPal, Inc., No. C 12-0622 PJH, 2013 WL 2384242 (N.D. Cal. May 30, 2013); Olney v. Job.com, Inc., No. 1:12-CV-01724-LJO, 2014 WL 1747674, at *5 (E.D. Cal. May 1, 2014); Pinkard v. Wal–Mart, No. 3:12-cv-02902-CLS, 2012 WL 5511039 at *2 (N.D. Ala. Nov. 9, 2012); Murphy v. DCI Biologicals Orlando, LLC, No. 6:12-cv-1459-Orl-36KRS, 2013 WL 6865772 (M.D. Fla. Dec. 31, 2013); Steinhoff v. Star Media Co., LLC, No. 13-cv-1750 (SRN/JSM), 2014 WL 1207804 (D. Minn. Mar. 24, 2014); Andersen v. Harris & Harris, No. 13-CV-867-JPS, 2014 WL 1600575 (E.D. Wis. Apr. 21, 2014).

Plaintiffs offer various responses to this substantial body of authority. First, Plaintiffs argue that merely providing one's phone number does not "clearly and unmistakably" state one's consent citing Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009). In that case, the Ninth Circuit explained that express consent is "consent that is clearly and unmistakably stated." Id. at 955 (internal alteration omitted) (citing Black's Law Dictionary 323 (8th ed. 2004)). In Satterfield, however, the plaintiff *did* provide written consent to receive text messages from a company called Nextones; the question presented was whether she had thereby also agreed to receive messages from an unrelated entity to whom she had never given her number. See id. at 949. The Satterfield court did not have occasion to consider, much less reject, the FCC's determination that a consumer provides express consent to receive text messages from an entity to which she provides her phone number. See also Baird, 995 F. Supp. 2d at 1103 (noting that Satterfield did not address this question).

Next, Plaintiffs cite the few cases that have held that providing one's number does not supply consent under the TCPA. See ECF No. 28 at 13, 15-16 (citing Thrasher-Lyon v. CCS Comm., LLC, No. 11 C 04473, 2012 WL 3835089, at *5 (N.D. Ill. Sept. 4, 2014); In re Jiffy Lube Int'l, Inc. Text Spam Litig., 847 F. Supp. 2d 1253 (S.D. Cal. 2012); Lusskin v. Seminole Comedy, Inc., No. 12-62173-Civ., 2013 WL 3147339 (S.D. Fla. June 19, 2013); and Kolinek v. Walgreen Co., No. 13 C 4806, 2014 WL 3056813 (N.D. Ill. July 7, 2014)). This Court is not persuaded by those opinions.

Thrasher-Lyons based its analysis on a 2008 order from the FCC, which specified that "'prior express consent' is provided when a debtor gives contact information to a creditor in the course of the transaction giving rise to the debt." Thrasher-Lyon, 2012 WL 3835089, at *3 (citing In Re Rules & Regs. Implementing the TCPA of 1991, 23 FCCR 559, 2008 WL 65485, at *3 (Jan. 4, 2008)). The Thrasher-Lyons court then inferred that, because the FCC had specifically found that the giving of phone information constituted express consent in the creditor/debtor context, the giving of such information by itself in other contexts could *not* constitute express consent.[4] Id. at *4. This Court is not persuaded by the Thrasher-Lyons' court's reasoning; had the FCC intended to so limit its prior order, it could have done so; but it did not.

The Jiffy Lube court only stated in dictum that the provision of a telephone number did not constitute prior express consent. See 847 F. Supp. 2d at 1258 n.3. The court in Carlson failed to mention, much less discuss, the 1992 FCC Order at all. 2013 WL 2319143, at *3. The Kolinek court acknowledged that the 1992 FCC Order equated the giving of a phone number with consent to be contacted at that number, but held that plaintiffs there had adequately alleged that the texts they received exceeded the scope of the consent they had provided the defendant. See 2014 WL 3056813, at *2. And Lusskin misreads the 1992 FCC Order as not equating the giving of a phone number with express consent under the TCPA. 2013 WL 3147339, at *3.

The FCC's most recent order, released on July 10, 2015, elucidated that there is not a specific method by which a caller must obtain prior express consent, only that the consent must be express and not implied or presumed. See 2015 FCC Order, ¶¶ 49, 52. Express consent can be demonstrated when the called party gives her wireless number to the person initiating the phone call "without instructions to the contrary." Id., ¶ 52.

For the foregoing reasons, the Court agrees with Uber that any plaintiff who provided her phone number as part of the Uber application process consented to receive Uber's texts about becoming an Uber driver.[5]

---

[4] Plaintiffs make the same argument in their opposition to the Motion.

[5] Just because the Court will follow the 1992 FCC Order and the weight of case authority does not mean the Court agrees with them. The 1992 FCC Order says that "[p]ersons who knowingly

**2. Uber has not demonstrated that most named Plaintiffs "provided" their phone numbers to Uber**

Determining that a plaintiff who provided her number to another party consents to receive texts from that party does not end the Court's inquiry, however, because many of the named Plaintiffs may not have "provided" their numbers to Uber. The 1992 FCC Order describes providing a number as the knowing *release* of that phone number. 7 FCC Rcd at 8769, ¶ 31 (emphasis added). To "provide" means "to make (something) available" or "to supply (something that is wanted or needed)." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1001 (11th ed. 2012); see also 2 NEW SHORTER OXFORD ENGLISH DICTIONARY 2393 (1993) (defining "provide" as "supply or furnish for use; make available; yield, afford"). The word "provide" suggests a quality of relinquishment that is missing with regard to many of the Class B plaintiffs.

The complaint says that James Lathrop "provided his personal information at the beginning of the sign-up process, but he decided not to complete the process to become a driver after learning that his car did not meet Uber's requirements," ECF No. 10 at ¶ 54, and "Lathrop never finished the process to become an Uber driver." Id. at ¶ 55. Similarly, Jonathan Grindell "provided Uber with his cellular phone number," but "did not complete the process to become an Uber driver." Id. at ¶ 70. Plaintiff Jennifer Reilly "started the application to become an Uber driver through Uber's website but ultimately decided not to complete the application because she was no longer interested." Id. at ¶ 90. Plaintiff Justin Bartolet "provided Uber with his cellular phone number," but "did not complete the process to become an Uber driver." Id. at ¶ 113.

From these allegations, it is not clear that the aforementioned plaintiffs "provided" their

---

release their phone numbers have *in effect* given their invitation or permission to be called at the number which they have given," but "in effect" is a far cry from "expressly." As a matter of common sense and reasonable English usage, simply providing another party with one's phone number might constitute implied consent to receive calls or texts from that party, but not express consent. See Thrasher-Lyons, 2012 WL 3835089 at *2-5 (holding that to read "express consent" as "implied consent" would be "bizarre"). The FCC's interpretation, which district courts are bound to follow, also flies in the face of Congress' findings that automated calls and prerecorded messages are a "nuisance," an "invasion of privacy," and "when an emergency or medical assistance telephone line is seized, a risk to public safety." See Pub. L. 102–243, § 2, ¶¶ 5–6, 9–10, 13–14, 105 Stat 2394 (1991). Nonetheless, until the FCC reverses its own prior order, or a court of appeals invalidates it, this Court is required to follow it. Leckler v. Cashcall, Inc., No. C 07-04002 SI, 2008 WL 5000528, at *2-*3 (N.D. Cal. Nov. 21, 2008).

numbers to Uber within the meaning of the 1992 FCC Order, even though some allegations of the complaint use the word "provide." If the plaintiffs never completed the application process, it is not clear that they intended to "make available" their personal information, including their phone number, to Uber. And it is even less clear that they "supplied" their phone numbers, "furnished" them for use, or knowingly "released" their numbers.

Uber argues that courts and the FCC have focused on whether individuals made their numbers "available" or "voluntarily" divulged their telephone numbers to the calling party in considering whether parties gave consent. See ECF No. 45 at 4-5. For example, Uber cites to Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110 (11th Cir. 2014), to support its argument that Plaintiffs only need to make their numbers available at the beginning of the application process. See id. at 4. However, in Mais, the plaintiff submitted medical admission forms to the hospital with his contact information and gave permission to the hospital to share the information in connection with billing and payment. 768 F.3d at 1122-23. The court held that by making his number available to the hospital and by granting the hospital permission to disclose it, the plaintiff provided express consent to be contacted by the debt collector. Id. at 1123. Unlike Mais, however, Class B Plaintiffs did not complete and submit applications with their contact information. The Court does not agree with Uber that Plaintiffs necessarily made their numbers "available" to Uber when they only started but never completed their driver applications.

Next, Uber contends that Class B Plaintiffs voluntarily divulged their information to Uber. See ECF No. 45 at 5. However, the cases cited by Uber involve plaintiffs who *completed* and *submitted* their registrations and transactions with the calling parties. See Van Patten, 22 F. Supp. 3d at 1071 (plaintiff wrote his phone number in the submitted gym application card); Steinoff v. Star Media Co., LLC, No. 13–cv–1750 (SRN/JSM), 2014 WL 1207804, at *1 (D. Minn. Mar. 24, 2014) (plaintiff provided her telephone number in a newspaper subscription order); Baird, 995 F. Supp. 2d at 1101 (plaintiff entered her phone number in order to book her flight online); Pinkard, 2012 WL 5511039, at *4-6 (plaintiff gave defendant her contact information at defendant's request after dropping off her prescription); and Ryabyshchuck v. Citibank (South Dakota) N.A., No. 11-CV-1236-IEG (WVG), 2012 WL 5379143, at *1 (S.D. Cal. Oct. 30, 2012) (plaintiff

United States District Court
Northern District of California

applied for a credit card online and received a pop-up notification notifying him that by entering the phone number, plaintiff agreed to receive calls and messages to service the account). While Uber argues that Plaintiffs voluntarily divulged their numbers, the cases cited by Uber do not support its argument that Plaintiffs provided Uber with their contact information at the point in time when Plaintiffs started their incomplete driver applications.

Uber also points out that in Saunders v. NCO Financial Systems, Inc., 910 F. Supp. 2d 464 (E.D.N.Y. 2012), the court found that the plaintiff voluntarily provided his phone number even though he did not register with complete information. See id. at 467. In Saunders, the plaintiff listed his phone number in order to open an account with PACER, a service that permits users to obtain case and docket information online. Id. at 465. The plaintiff also incorrectly listed his name and address while registering and proceeded to use the service and incurred charges that went unpaid. Id. A debt collector subsequently used the number on file to contact the plaintiff. Id. at 466. However, the plaintiff registered with the service using his phone number and then proceeded to use the service, and the legal issue was whether he later revoked his consent. Id. at 467-68. Unlike the plaintiff in Saunders, Plaintiffs Lathrop, Grindell, Reilly, and Bartolet began the sign-up process to become an Uber driver but did not complete that process. ECF No. 10, ¶¶ 53-55, 70, 99, 113. Based on the allegations in the complaint, the Court declines to construe Plaintiffs' incomplete driver applications as Plaintiffs' necessarily providing their consent to Uber.

Plaintiffs cite to Connelly v. Hilton Grand Vacations Company, LLC, No. 12CV599 JLS KSC, 2012 WL 2129364 (S.D. Cal. June 11, 2012), to support their argument that Plaintiffs who did not complete and submit their driver applications did not provide their numbers to Uber.[6] See ECF No. 46 at 4-5. In Connelly, the defendant argued that the court should dismiss the TCPA action because the plaintiffs lacked standing—plaintiffs had consented to receive the subject calls.

[6] Uber asks the Court to take judicial notice of the complaint filed in Connelly to argue that Connelly does not support Plaintiffs' position. ECF No. 48. The Court may take judicial notice of documents filed in other court proceedings and other matters of public record. However, as previously noted by Uber in its objection to Plaintiffs' request for judicial notice, see ECF No. 33 at 7-9, the purposes for using documents from other court files "are quite limited." Hicks v. Evans, No. C 08-1146 SI PR, 2012 WL 398821, at *3 (N.D. Cal. Feb. 7, 2012). Furthermore, the Court need not take judicial notice here as it analyzes the reasoning in the Connelly order itself.

2012 WL 2129364, at *3. Defendants argued that "each [plaintiff] 'consented to receive the subject calls by giving the Hilton family his/her cellular telephone numbers" either by submitting an application to be part of the rewards program or by making a hotel reservation. Id. The court declined to dismiss the case on this ground, however, because plaintiffs did not have to plead the absence of consent. Id. The court also declined to convert defendant's motion into a motion for summary judgment where the defendant had attached a copy of the rewards program application but did not attach copies of the plaintiffs' enrollment applications. Id. at *3-4. The Connelly court found that there was a genuine issue of material fact as to whether plaintiffs provided prior express consent, and even if enrolling in the rewards program sufficed as consent, defendants failed to present evidence that the two plaintiffs signed and submitted the applications at all. Id. at *4. This Court, however, is in a different procedural posture from Connelly. At the motion to dismiss stage, the Court's inquiry is limited to whether Plaintiffs have alleged they provided their phone numbers to Uber when they began but did not complete driver applications. The Court cannot conclude, from the face of the complaint, that these Plaintiffs gave consent.

A close analogy would be a job applicant who goes in person to a local business. She might sit at a table, and fill out a paper application, providing such details as her address and mobile phone number, date of birth, and other personal information. While on the premises of the business, however, she has a change of heart, and decides not to apply for the job after all. She does not complete her application or turn it in, and instead, throws it away when she gets home. Has she "provided" her mobile phone number to the business, just because an employee of the business looked over her shoulder while she was writing? More specifically, has she, to use the language of the 1992 FCC Order, "provided [her mobile phone number] as one to which the called party wishes to be reached"? The Court would find it difficult to hold that she has done so as a matter of law.[7]

The Court need not answer these questions now, because the question now before the Court is the sufficiency of the complaint. Whether these plaintiffs actually "provided" their

[7] And the answer might differ if the applicant actually submitted the incomplete application, and the business then contacted her concerning that application.

United States District Court
Northern District of California

numbers to Uber within the meaning of the 1992 FCC Order can be decided on another day. At the motion to dismiss stage, it is sufficient to observe that the Court cannot conclude merely from the face of the complaint that these four plaintiffs consented to receive Uber's texts. See Sams, 713 F.3d at 1179 (allegations of the complaint by themselves must establish the defense). As to all Class B plaintiffs other than Reardon, the motion must therefore be denied.

**C. Revocation of Consent**

Plaintiffs Grindell, Reilly, and Bartolet argue that, even if they did provide prior express permission to receive text messages from Uber, they effectively revoked that consent by asking Uber to stop sending them text messages, but Uber sent them messages after they revoked their consent. ECF No. 28 at 17-20; see ECF No. 10, ¶¶ 73, 104, 105. Several appellate and district courts have held that consent under the TCPA can be revoked, and that text messages sent after consent is revoked violate the TCPA. See, e.g., Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1255-56 (11th Cir. 2014); Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 270-72 (3d Cir. 2013); Brenner v. Am. Educ. Servs., 575 Fed. App'x 703 (8th Cir. 2014) (per curiam); Munro v. King Broad. Co., No. C13-1308JLR, 2013 WL 6185233, at *3 (W.D. Wash. Nov. 26, 2013); Gutierrez v. Barclays Grp., Case No. 10CV1012 DMS BGS, 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011). The 2015 FCC Order also makes clear that consumers may revoke consent through any reasonable means, either orally or in writing. See 2015 FCC Order, ¶¶ 55, 64. Plaintiffs Grindell, Reilly, and Bartolet's allegations that they revoked their consent are sufficient to permit their claims to survive Uber's motion to dismiss. The Court will deny Uber's motion to dismiss as to these plaintiffs on this additional ground.

**CONCLUSION**

For the foregoing reasons, the Court hereby grants Uber's Motion to Dismiss without prejudice as it pertains to Plaintiffs Kerry Reardon. The Court denies the Motion as to Plaintiffs James Lathrop, Jonathan Grindell, Jennifer Reilly, and Justin Bartolet.

/ / /

/ / /

/ / /

Plaintiffs may file an amended complaint within twenty-one days of the date of this Order. Any amended complaint that Plaintiffs file must cure the deficiencies identified in this Order.

**IT IS SO ORDERED.**

Dated: July 19, 2015

JON S. TIGAR
United States District Judge

United States District Court
Northern District of California