James G. Snell, Bar No. 173070
JSnell@perkinscoie.com
Joshua A. Reiten, Bar No. 238985
JReiten@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: (415) 344-7000
Facsimile: (415) 344-7050

Debra Bernard (admitted *pro hac vice*)
dbernard@perkinscoie.com
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Tel: (312) 324-8400
Fax: (312) 324-9559

Nicola C. Menaldo (admitted *pro hac vice*)
nmenaldo@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel: (206) 359-8000
Fax: (206) 359-9000
Attorneys for Defendant
Uber Technologies, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

JAMES LATHROP, JULIE MCKINNEY,
SANDEEP PAL, JENNIFER REILLY,
JUSTIN BARTOLET, and JONATHAN
GRINDELL individually and on behalf of
all others similarly situated,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC.,

Defendant.

Case No. 3:14-cv-05678-JST

**DEFENDANT'S NOTICE OF MOTION
AND MOTION TO STAY PROCEEDINGS
PENDING APPEAL OF THE FCC'S
OMNIBUS ORDER TO THE UNITED
STATES COURT OF APPEALS FOR THE
DISTRICT OF COLUMBIA AND THE
UNITED STATES SUPREME COURT'S
RULING IN SPOKEO V. ROBINS**

Date: December 24, 2015
Time: 2:00 p.m.
Courtroom: 9 - 19th Floor

Judge Jon S. Tigar

1

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2

PLEASE TAKE NOTICE that on Thursday, December 24, 2015, at 2:00 p.m. in

3

Courtroom 9 of the United States District Court for the Northern District of California, located at

4

450 Golden Gate Avenue, San Francisco, CA, 94102-3661, Uber Technologies Inc. ("Uber") will

5

move, and hereby does move, for an Order staying this action pending a decision from the United

6

States Court of Appeals for the District of Columbia concerning the petitions for review of the

7

Declaratory Ruling and Order issued by the Federal Communications Commission in *In re Rules*

8

*and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15-72 and a decision

9

from the United States Supreme Court in *Spokeo v. Robins*, 135 S. Ct. 1892 (2015).

10

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of

11

Points and Authorities, all pleadings and papers on file in this action, and such other and further

12

matters as the Court may consider.

13

14

15

DATED: November 13, 2015

**PERKINS COIE LLP**

16

17

By:  /s/ *James Snell*

18

James G. Snell
Attorneys for Defendant
Uber Technologies, Inc.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    BACKGROUND ............................................................................................... 2

    A.    Procedural History. ................................................................................ 2

    B.    The FCC's 2015 Omnibus Order. .......................................................... 4

    C.    The Omnibus Order Is Being Reviewed and May Be Vacated by
        the D.C. Circuit. ..................................................................................... 7

III.   A STAY IS WARRANTED HERE GIVEN THE HIGHLY
      UNCERTAIN STATE OF THE LAW ......................................................... 13

    A.    Legal Standard. ..................................................................................... 13

    B.    This Court Should Stay this Action Pending the D.C. Circuit's
        Review of the Omnibus Order. ............................................................. 13

        1.    This Court Has the Inherent Authority to Stay this Action
            Pending a D.C. Circuit Decision. ............................................... 14

        2.    A Stay Will Conserve the Court's and the Parties' Resources. ................. 15

        3.    A Stay Will Not Prejudice Plaintiffs. ........................................ 18

    C.    A Stay of Proceedings Is Also Warranted by the Pending
        Supreme Court Decision in *Spokeo, Inc. v. Robins*...................... 20

IV.    CONCLUSION .............................................................................................. 22

-i-

MOTION TO STAY PROCEEDINGS
128586432.12

1

# TABLE OF AUTHORITIES

2

3

CASES

4

*ACA Int'l v. Fed. Commc'ns Comm'n*,
No. 15-1211 (D.C. Cir. filed July 10, 2015) ................................................7, 8

5

6

*Action for Children's Television v. Fed. Commc'ns Comm'n*,
58 F.3d 654 (D.C. Cir. 1995) ................................................................8

7

*Am. Library Ass'n v. FCC*,
406 F.3d 689 (D.C. Cir. 2005) ...............................................................9

8

9

*Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envtl. Prot.*,
196 F.3d 302 (1st Cir. 1999) ................................................................14

10

*AT&T Corp. v. F.C.C.*,
323 F.3d 1081 (D.C. Cir. 2003) ..............................................................9

11

12

*Barron's Outfitters Inc. v. Big Hairy Dog Info. Sys. & Retail Pro Int'l LLC*,
Case No. 3:14-cv-4335-TLW, Dkt. No. 30 (D.S.C. June 19, 2015)...................14, 17

13

14

*Biggerstaff v. F.C.C.*,
511 F.3d 178 (D.C. Cir. 2007) ..............................................................10

15

16

*Boise v. ACE USA, Inc.*,
Case No. 15-Civ-21264-COOKE/TORRES, 2015 WL 4077433, at *1 (S.D.
Fla. July 6, 2015)..........................................................................21

17

18

*Cablevision Sys. Corp. v. FCC*,
649 F.3d 695 (D.C. Cir. 2011) ...............................................................9

19

20

*Cellco P'ship v. Dealers Warranty, LLC*,
No. 09-1814 (FLW), 2010 WL 3946713 (D.N.J. Oct. 5, 2010) ........................16

21

22

*Chruby v. Global Tel*Link Corp.*,
No. 1:14-cv-456, __ F. Supp. 3d __, 2015 WL 4740633 (E.D. Va. Jan. 14,
2015) ................................................................................14, 17, 19

23

24

*Chruby v. Global Tel*Link Corp*,
No. 14-cv-456, 2015 WL 4740790 (E.D. Va. March 10, 2015) ........................14

25

*Chyba v. First Financial Asset Mgmt.*,
2014 WL 1744136 (S.D. Cal. Apr. 30, 2014)..........................................6

26

27

*CMAX, Inc. v. Hall*,
300 F.2d 265, 268 (9th Cir. 1962)........................................................13

28

-i-

MOTION TO STAY PROCEEDINGS
128586432.12

*Cogent Medicine, Inc. v. Elsevier Inc.*,
    70 F. Supp. 3d 1058, 1062 (N.D. Cal. 2014) ........................................................................14

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ...........................................................................................................18

*Comcast Corp. v. FCC*,
    579 F.3d 1 (D.C. Cir. 2009) .....................................................................................................9

*Comcast Corp. v. FCC*,
    600 F.3d 642 (D.C. Cir. 2010) .................................................................................................9

*Daheny v. Time Warner Cable Enterprise*,
    No. 14-cv-133-FL, 2015 WL 5534284 (E.D.N.C. Sep. 18, 2015) ............................................6

*Denney v. Deutsche Bank AG*,
    443 F.3d 253, 264 (2d Cir. 2006) ...........................................................................................20

*Derby v. AOL, Inc.*,
    No. 5:15-CV-00452-RMW, 2015 WL 5316403 (N.D. Cal. Sept. 11, 2015) ............................5

*Dish Network, L.L.C. v. FCC*,
    552 F. App'x 1 (D.C. Cir. 2014) ............................................................................................10

*EchoStar Satellite L.L.C. v. FCC*,
    704 F.3d 992 (D.C. Cir. 2013) .................................................................................................9

*Gager v. Dell Fin. Servs., LLC*,
    727 F.3d 265 (3d Cir. 2013) ....................................................................................................7

*Gensel v. Performant Techs.*,
    Case No. 13-C-1196, 2015 U.S. Dist. LEXIS 142303, at *1 (E.D. Wisc. Oct.
    20, 2015) ...........................................................................................................................14, 17

*GT Nexus, Inc. v. Inttra, Inc.*,
    No. C 11-02145-SBA, 2014 WL 3373088 (N.D. Cal. July 9, 2014) .......................................19

*GTE South, Inc. v. Morrison*,
    199 F.3d 733 (4th Cir. 1999) .................................................................................................14

*Heinrichs v. Wells Fargo Bank, N.A.*,
    No. C 13-05434 WHA, 2014 WL 2142457 (N.D. Cal. Apr. 15, 2014) ...................................16

*Hill v. Transp. Serv. Co.*,
    1987 WL 7260 (N.D. Ill. Feb. 24, 1987) ................................................................................14

*Hosp. of Barstow, Inc. v. Sebelius*,
    No. CV 11-10638 CAS MANX, 2012 WL 893784 (C.D. Cal. Mar. 13, 2012) .....................19

-ii-

128586432.12

*Landis v. N. Am. Co.*,
299 U.S. 248, 254-55 (1936)................................................................................................13

*LELO, Inc. v. Standard Innovation (US) Corp.*,
No. 13-CV-01393-JD, 2014 WL 2879851 (N.D. Cal. June 24, 2014) ....................................20

*Leyse v. Bank of Am. Nat'l Ass'n*,
--- F.3d ---, 2015 WL 5946456 (3d Cir. Oct. 14, 2015)............................................................16

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005)................................................................................................13

*Lopez v. Miami-Dade County*,
No. 15-cviv-22943-COOKE/TORRES (S.D. Fla. Nov. 6, 2015)..........................................21

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012)..................................................................................................20

*Mercado v. Allstate Ins. Co.*,
340 F.3d 824, 825-26 (9th Cir. 2003) ....................................................................................14

*Motion Picture Ass'n of Am. v. FCC*,
309 F.3d 796 (D.C. Cir. 2002) ..................................................................................................9

*Olney v. Progressive Cas. Ins. Co.*,
993 F. Supp. 2d 1220 (S.D. Cal. 2014) ..................................................................................16

*Osorio v. State Farm Bank, F.S.B.*,
746 F.3d 1242 (11th Cir.2014)................................................................................................16

*Page v. Regions Bank*,
917 F. Supp. 2d 1214 (N.D. Ala. 2012) ..................................................................................16

*Parker v. Time Warner Entm't. Co.*,
331 F.3d 13 (2d Cir. 2003)......................................................................................................22

*Petroleum Commc'ns, Inc. v. Fed. Commc'ns Comm'n*,
22 F.3d 1164 (D.C. Cir. 1994) ..................................................................................................8

*Prof'l Ass'n for Customer Engagement Inc. v. Fed. Commc'ns Comm'n*,
No. 15-2489 (7th Cir. filed July 14, 2015)................................................................................7

*Provo v. Rady Children's Hosp.-San Diego*,
No. 15CV0081 JM BGS, 2015 WL 6144029 (S.D. Cal. July 29, 2015) ..........................18, 21

*Qwest Int'l, Inc. v. F.C.C.*,
398 F.3d 1222 (10th Cir. 2005)...............................................................................................17

*Research in Motion Ltd. v. Visto Corp.*,
545 F. Supp. 2d 1011(N.D. Cal. 2008) ..................................................................................18

iii

MOTION TO STAY PROCEEDINGS

*Rivers v. Walt Disney Co.*,
  980 F. Supp. 1358 (C.D. Cal. 1997) ...................................................................13

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ..........................................................................16

*Shaw v. Experian Info. Sols.*,
  Case. No. 13cv01295-JLS-BLM, Dkt. No. 148 (S.D. Cal. Oct. 28, 2015) .............................21

*Sirius XM Radio Inc. v. Fed. Commc'ns Comm'n*,
  No. 15-1218 (D.C. Cir. filed July 14, 2015) ...........................................................7

*Software Rights Archive, LLC v. Facebook, Inc.*,
  No. C-12-3970 RMW, 2013 WL 5225522 (N.D. Cal. Sept. 17, 2013) ...................................18

*Soppet v. Enhanced Recovery Co., LLC*,
  679 F.3d 637 (7th Cir. 2012) ..........................................................................16

*Sorensen ex rel. Sorensen Research & Dev. Trust v. Black & Decker Corp.*,
  No. 06CV1572BTMCAB, 2007 WL 2696590 (S.D. Cal. Sept. 10, 2007) .................................18

*Spokeo, Inc. v. Robins*,
  135 S. Ct. 1892 (argued November 2, 2015) ................................................... passim

*Stark v. Wickard*,
  321 U.S. 288 (1944) ...................................................................................13

*Thomas v. Dun & Bradstreet Credibility Corp.*,
  Case No. CV1503194BROGJSX, 2015 WL 4698398 (C.D. Cal. Aug. 5, 2015) ...........................5

*U.S. Telecom Ass'n v. FCC*,
  227 F.3d 450 (D.C. Cir. 2000) .........................................................................9

*United States v. Kiewit Pac. Co.*,
  41 F. Supp. 3d 796 (N.D. Cal. 2014) ..................................................................13

*United States v. U.S. Dist. Court for N. Mariana Islands*,
  694 F.3d 1051 (9th Cir. 2012) .........................................................................13

*Verizon v. FCC*,
  740 F.3d 623 (D.C. Cir. 2014) .........................................................................8

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ...................................................................................11

**STATUTES**

5 U.S.C. § 706(2)(A) ....................................................................................8

28 U.S.C. § 2112(a)(3) ..................................................................................7

-iv-

28 U.S.C. § 2342(1) ......................................................................................................8

47 U.S.C. § 227(a)(1)(A) ..............................................................................................4

47 U.S.C. § 227(b)(1) ..................................................................................................16

47 U.S.C. § 227(b)(1)(A)(iii) ....................................................................4, 5, 16, 20

47 U.S.C. § 402(a) ........................................................................................................8

Telephone Consumer Protection Act, 47 U.S.C. § 227 ........................................ passim

**OTHER AUTHORITIES**

Douglas H. Ginsburg, *Remarks upon Receiving the Lifetime Service Award of the Georgetown Federalist Society Chapter*, 10 Geo. J.L. & Pub. Pol'y 1, 4 (2012).........10, 11, 12

Federal Court Management Statistics, June 2015, available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-0 ..............................................................................................18

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling and Order, FCC 15-72, Released July 10, 2015*, MCP No. 134 (July 24, 2015) .......................................................................................... passim

*SoundBite Declaratory Ruling*, 277 FCC Rcd. 15397 ..................................................7

MOTION TO STAY PROCEEDINGS

PERKINS COIE LLP
ATTORNEYS AT LAW
PALO ALTO

128586432.12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The legal foundation on which this case relies – the FCC's interpretation of the Telephone Consumer Protection Act and Article III standing where there is no actual injury – is undergoing a seismic shift.  The outcome of pending appeals at both the Supreme Court and the D.C. Circuit is expected to have significant and wide-reaching impact on cases across the country, including this one.  The significant uncertainty in the laws applicable to this case warrant the entry of an abbreviated stay in this case.

There are two separate and independent bases for a stay here.  First, the scope and applicability of the TCPA itself is being reexamined by the D.C. Circuit.  This Court and the Plaintiffs in this case rely on the FCC's recent Declaratory Ruling and Order in *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, F.C.C. 15-72 (hereinafter "Omnibus Order"), which is now the focus of the D.C. Circuit petition.[1]  This Order has been the subject of significant controversy; in the words of one dissenting FCC Commissioner, this Order resulted in a "stunning" expansion and re-write of the TCPA itself, a re-legislation of the Act that is likely to have a devastating effect on innovation and business.  As just one example that runs to the heart of this case, the FCC's Order redefines autodialers to include any equipment that has the "potential ability" to dial numbers randomly or sequentially, even if the equipment does not have the current ability to do so.  If the D.C. Circuit vacates this conclusion (as it very well may given the lack of support in the statute or legislative history), this case may not be able to proceed on this basis.  And this is just one of the many bases for the D.C. Circuit petition that affects this case.  There are others: the FCC issued a new, virtually limitless standard for the revocation of consent; interpreted the term "called party" to impose unprecedented liability for inadvertent calls to wrong numbers and reassigned numbers; and reaffirmed its stance, supported nowhere in the statute, that the term "call" includes text messages.  *See* Omnibus Order ¶¶ 1 n.3, 19, 55-70, 72-75.

---

[1] The Omnibus Order is attached hereto as Exhibit A.

A second basis for a stay here is *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892, argued before the Supreme Court on November 2, 2015, which is also likely to have a dispositive impact on this matter.  In that case, the Supreme Court will decide whether plaintiffs (and putative class members) who have suffered no actual injury—as most of the Plaintiffs and putative class members in this case have not—nevertheless have Article III standing to remain in federal court.  If the Supreme Court sides with Spokeo, many, if not all, of the Plaintiffs and putative class members in this case will lack the key predicate to proceeding in federal court and their case will be dismissed because Plaintiffs have not, and likely cannot, allege actual injury simply by receiving text messages.

In light of this dramatically uncertain landscape, Uber respectfully requests that this Court grant a stay of these proceedings (as other federal courts have) pending the D.C. Circuit's review of the FCC's Omnibus Order and pending the Supreme Court's ruling in *Spokeo*.  The duration of this requested stay is modest—it is anticipated that rulings on the Omnibus Order and *Spokeo* will be issued this spring or summer given that briefing on the Omnibus Order will be complete in February and oral argument in *Spokeo* has already occurred.  A stay will not prejudice or otherwise disadvantage Plaintiffs or any absent putative class members and will instead simplify and clarify the issues in question; streamline issues related to class certification, summary judgment, and other proceedings; and dramatically reduce the burden on the parties and on the Court.

## II.     BACKGROUND

### A.    Procedural History.

Plaintiffs allege that Uber violated the TCPA by text messaging individuals regarding signing up to drive on the Uber platform.  Uber moved to dismiss several claims in Plaintiffs' First Amended Complaint on the basis that five of the seven named plaintiffs provided prior express consent to receive text messages.  Memorandum of Points and Authorities In Support of Motion to Dismiss, Dkt. No. 25.  The Court granted the motion in part, agreeing that "[p]rior express consent is a complete defense to Plaintiffs' TCPA claim," and that "any plaintiff who provided her phone number as part of the Uber application process consented to receive Uber's

1   texts about becoming an Uber driver." Order, Dkt. No. 49, at 9 & 11.  However, the Court

2   deemed Plaintiffs' allegations sufficient, at the motion to dismiss stage, with respect to

3   individuals who (a) initiated a relationship with Uber as a potential driver but who had not yet

4   received final approval to access the platform, and (b) individuals who allege that they had

5   revoked consent to receive text messages from Uber.  *Id.* at 16.

6        Approximately three months ago, Plaintiffs filed their Second Amended Complaint

7   ("SAC") and Uber answered shortly thereafter.  Dkt. Nos. 54 & 56.  Plaintiffs' SAC alleges that

8   Uber text messaged Plaintiffs and the putative class members using an ATDS without their

9   consent and brings claims on behalf of two purported classes.  SAC, Dkt. No. 54 ¶¶ 23-99.

10       Plaintiffs McKinney and Pal purport to represent "Class A" — an alleged class of

11  individuals who "received a non-emergency text message on their cellular telephone from Uber,

12  without their prior express consent, via an ATDS, and prior to receiving the text message had not

13  provided Uber with the cellular telephone number at which they received the text message from

14  Uber." *Id.* ¶ 100.  Uber's discovery responses, however, make clear that Plaintiff McKinney's

15  phone number was submitted by an individual who signed-up to drive on the Platform using the

16  name "Randy McKinney" and Sandeep Pal's phone number was submitted to Uber by individuals

17  with Uber partner accounts who certified that they had obtained Plaintiff Pal's prior express

18  consent to be contacted by Uber at the number provided.

19       Plaintiffs Lathrop, Reilly, Bartolet, and Grindell purport to represent "Class B" — an

20  alleged class of individuals who "received a non-emergency text message on their cellular

21  telephone from Uber, without their prior express consent, via an ATDS, after providing Uber with

22  the telephone number at which they received the text message from Uber through Uber's

23  website." *Id.* ¶ 101.  Plaintiffs Grindell and Bartolet, however, admit to personally providing

24  their phone numbers to Uber as part of the sign-up process to become a driver and Plaintiff

25  Lathrop likewise admits that he provided his "personal information" while signing up to become

26  a driver.  *Id.* ¶¶ 50, 90.

27       In addition to the aforementioned allegations, four of the six plaintiffs also allege that they

28  responded to some text messages in an effort to opt out of future messages.  These plaintiffs are

1  likely to argue that if they were found to have provided consent in the first instance, they

2  subsequently revoked such consent.  *Id.*

3       None of the plaintiffs allege injury with any specificity.  All but one plaintiff state only

4  that texts were sent "to a cellular telephone number for which [Plaintiff] is charged for incoming

5  calls and text messages pursuant to 47 U.S.C. § 227(b)(1)(A)(iii)" but do not specify whether the

6  text messages at issue caused Plaintiffs to pay more than what they would have paid had the text

7  messages never been sent.  *Id.* ¶¶ 28, 44, 71, 84 94.  Plaintiff Grindell alleges that his cell phone

8  plan provides for 1,000 text messages per month and that texts from Uber caused him to "alter his

9  cell phone usage patterns." *Id.* ¶ 57.  Despite failing to allege concrete injury, Plaintiffs seek

10  statutory damages of $500.00 or $1,500.00 for each text message.  *Id.*, Prayer for Relief.

11       Discovery is still in the early stages. While Defendant has produce discovery to Plaintiffs,

12  no depositions have taken place, no discovery motions have been filed, and no dispositive

13  motions have been filed since Uber's motion to dismiss.  The parties recently moved jointly for

14  an extension of deadlines and the deadlines on calendar include Plaintiffs' expert designation due

15  on February 19, 2016, Defendant's expert designations due on March 18, 2016, and Plaintiffs'

16  motion for class certification due on May 20, 2016.  Dkt. No. 66.

17  **B.**    **The FCC's 2015 Omnibus Order.**

18       In July 2015, the FCC issued its Omnibus Order, which purported to dramatically expand

19  the scope of the TCPA, itself a terse, sparsely worded law.  The Omnibus Order addressed "21

20  separate requests for clarification or other action regarding the TCPA or the Commission's rules

21  or orders." *See* Omnibus Order ¶ 2.  The Omnibus Order seeks to interpret the terms "ATDS,"

22  "called party," and "call" as they are used in the TCPA and also purports to significantly expand

23  the means by which an individual who previously consented to receive text messages can revoke

24  that consent.  All of these issues are directly implicated by Plaintiffs' SAC or are otherwise likely

25  to be central to this litigation.

26       Under the Omnibus Order, the FCC seeks to expand the TCPA beyond equipment that is

27  used in an automatic dialer fashion to any equipment that has the "*potential ability*" to dial

28  numbers randomly or sequentially.  *See id.* ¶ 19 (emphasis added).  The Omnibus Order appears

1    to conflict with the statutory definition, however, which states that to qualify as an ATDS,

2    equipment must have "the capacity (A) to store or produce telephone numbers to be called, using

3    a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. §

4    227(a)(1)(A).  The FCC in the Omnibus Order has thus dramatically sought to broaden the

5    statutory definition from "capacity" to dial random or sequential numbers to "potential ability" to

6    do so.[2]  *See* Omnibus Order ¶ 19.  This is just one example of how the FCC has purported to

7    rewrite the face of the TCPA—but rewriting federal statutes is outside the scope of the FCC's

8    authority.  And commentators, including two of the five FCC commissioners, have criticized the

9    FCC's new ruling as fueling bizarre interpretations of the statute, including potentially supporting

10   arguments that any modern dialing technology—even a smart phone—is an ATDS for purposes

11   of the TCPA.  *See id.* ¶ 21.

12       In addition to trying to expand the definition of "ATDS," the FCC opined for the first time

13   on who can be considered a "called party," which remains an open question in the Ninth Circuit.

14   *See Thomas v. Dun & Bradstreet Credibility Corp.*, Case No. CV1503194BROGJSX, 2015 WL

15   4698398, at *4 (C.D. Cal. Aug. 5, 2015) ("The Ninth Circuit has not addressed the issues of

16   whether the TCPA limits standing to called parties, or, if so, who falls within this definition.")

17   Under the TCPA, a caller must have the consent of the "called party" before placing a call to a

18   wireless number using an ATDS.  47 U.S.C. § 227(b)(1)(A)(iii).  In the Omnibus Order, the FCC

19   determined that "called party" is not simply the party the caller was trying to reach, which would

20   be reasonable interpretation under the TCPA, but rather, the subscriber or regular user of the

21   telephone—regardless of whether the caller was aware that the intended recipient was not one and

22   the same as the subscriber or non-subscriber customary user.  Omnibus Order ¶¶ 73, 78.

23       More troublingly, the FCC also asserted that if an intended recipient's phone number was

24   reassigned to a different person, the caller could be liable for subsequent calls even if the caller

25   _____

26   [2] Notwithstanding these remarks, the FCC did not modify the limitation set forth in previous orders, that an ATDS must also be able to dial numbers without human intervention. *See* Omnibus Order ¶ 17; *see also Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015) (citing Omnibus Order and dismissing TCPA claim because messages at issue were sent only due to human intervention).

28

1   has no notice of the reassignment.  *Id.* ¶¶ 83-84.  The practical effect of this impractical order is

2   that, according to the FCC, even if a caller calls a number that it had consent to call, it may be

3   liable for $500 or $1500 in statutory damages because the consenting party reassigned their

4   number without notifying the caller.  In this era of ever-changing mobile phone numbers, the

5   FCC's Order makes it nearly impossible for a caller to be certain it actually has consent.

6      The FCC also expanded TCPA liability for calls to "wrong numbers"—numbers that are

7   misdialed or entered incorrectly into a dialing system, or that for any other reasons result in the

8   caller making a call to a number where the called party is different from the party the caller

9   intended to reach or the party who gave consent to be called."  *Id.* ¶¶ 89, 93 n.315, 94 n.320.

10     These rulings are inconsistent with well-reasoned case law acknowledging that a caller

11  who relies in good faith on information provided to it is excused from TCPA liability.  *Cf.*

12  *Daheny v. Time Warner Cable Enterprise*, No. 14-cv-133-FL, 2015 WL 5534284, at *3

13  (E.D.N.C. Sep. 18, 2015) (finding no clear error in magistrate's determination that defendant's

14  good faith reliance on the consent of its customer was a complete defense to TCPA claim

15  although plaintiff received calls intended for that customer); *Chyba v. First Financial Asset*

16  *Mgmt.*, 2014 WL 1744136, at *12 (S.D. Cal. Apr. 30, 2014) ("Even if Plaintiff is correct in

17  stating that she never gave Defendant or Enterprise consent to call, and there was no actual prior

18  consent from Plaintiff, Defendant is not liable for acting in good faith upon the information

19  provided to it.").

20     The Omnibus Order also reiterated the FCC's unsupported position that text messages are

21  equivalent to "calls" for purposes of TCPA liability, *id.* ¶ 1 n.3, despite the fact that the term "text

22  message" does not appear in the TCPA and that the FCC has provided no clear rationale for

23  conflating the two.  *See* 2003 TCPA Order ¶ 165 (stating, without further explanation, that calls

24  include text messages because the statute prohibits *calls* to telephone numbers assigned to cellular

25  telephone services for which the party is charged for the *call*) (emphasis added).

26     Finally, the FCC created a rule—untethered from the plain language of the TCPA—that a

27  called party who gave prior express consent to receive calls may revoke that consent using "any

28  reasonable manner that clearly expresses his or her desire not to receive further calls," and "is not

1   limited to using only a revocation method that the caller has established as one that it will

2   accept." Omnibus Order ¶ 70. While prior FCC orders and some court opinions have recognized

3   a called party's right to revoke consent (other court opinions hold there is no such right), none

4   have contemplated or foreshadowed such a nebulous and impractical standard. *See id.* ¶¶ 55-56;

5   *see, e.g.*, *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268-71 (3d Cir. 2013) (holding that the

6   TCPA allows the called party to revoke prior express consent without specifying particular

7   methods for doing so); *SoundBite Declaratory Ruling*, 277 FCC Rcd. 15397 (deciding that prior

8   express consent to receive text messages extends to a one-time opt-out confirmation text message,

9   but that the opt-out otherwise revokes prior express consent to receive such messages). The

10   FCC's new amorphous standard was not presaged in any administrative or judicial rulings

11   predating the Omnibus Order and its vagueness has invited litigation over its meaning and—as

12   with many other aspects of the FCC's ruling—raises significant due process concerns.

13   **C.**    **The Omnibus Order Is Being Reviewed and May Be Vacated by the D.C. Circuit.**

14         After the Omnibus Order was issued, a flurry of petitions sought review of the order,

15   including two petitions in the D.C. Circuit Court of Appeals and another in the Seventh Circuit

16   Court of Appeals. *See ACA Int'l v. Fed. Commc'ns Comm'n*, No. 15-1211 (D.C. Cir. filed July

17   10, 2015); *Sirius XM Radio Inc. v. Fed. Commc'ns Comm'n*, No. 15-1218 (D.C. Cir. filed July

18   14, 2015); *Prof'l Ass'n for Customer Engagement Inc. v. Fed. Commc'ns Comm'n*, No. 15-2489

19   (7th Cir. filed July 14, 2015). The Judicial Panel on Multidistrict Litigation consolidated all three

20   of these petitions in the D.C. Circuit.[3] *See In re: Fed. Commc'ns Comm'n, In re Rules and*

21   *Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling and Order,*

22   *FCC 15-72, Released July 10, 2015*, MCP No. 134 (July 24, 2015). Six petitions followed (and

23   were consolidated with the D.C. Circuit action) and an additional nine parties intervened.

24   Petitioners and intervenors include nonprofit and industry organizations (such as the U.S.

25   Chamber of Commerce, the National Association of Federal Credit Unions, and the Council of

26

27        [3] When petitions for review are filed in multiple courts of appeals, the Judicial Panel on Multidistrict Litigation selects one court of appeals to hear the consolidated challenges. 28 U.S.C. § 2112(a)(3).

28

1   American Survey Research Organizations), as well as individual companies (such as the satellite

2   radio company Sirius XM Radio, Inc., the technology company salesforce.com inc., and the

3   drugstore company Rite Aid Headquarters Corp.).  Final briefing will be complete early next

4   year, by February 24, 2016.  *See* Order at 2, *ACA Int'l*, No. 15-1211 (D.C. Cir. Oct. 13, 2015),

5   EFF No. 1577930.

6          Each of the petitions and issue statements contend that the Omnibus Order—including its

7   rulings on "called party," "ATDS," and revocation of consent— is arbitrary and capricious, an

8   abuse of discretion, in excess of the FCC's statutory authority, and otherwise contrary to the

9   Constitution and other laws.  *See, e.g.*, Statements of Issues filed by Council of American Survey

10  Research Organizations and Marketing Research Association (Exhibit B); Chamber of Commerce

11  of the United States (Exhibit C); salesforce.com inc. and ExactTarget, Inc. (Exhibit D); MRS

12  BPO, LLC, Cavalry Portfolio Services LLC, Diversified Consultants, Inc., and Mercantile

13  Adjustment Bureau, LLC (Exhibit E); Professional Association for Customer Engagement, Inc.

14  (Exhibit F); Sirius XM Radio Inc. (Exhibit G); *see also* 5 U.S.C. § 706(2)(A).  The petitions and

15  issue statements seek the D.C. Circuit's rulings on several issues central to the claims in this

16  action, including whether a text message constitutes a "call" under the TCPA and whether a

17  called party who provided prior express consent to be called may revoke that consent using any

18  reasonable method of the party's choice.  *See, e.g.*, Statement of Issues filed by salesforce.com

19  inc. and Exact Target, Inc. (Exhibit D); Professional Association for Customer Engagement, Inc.

20  (Exhibit F); Sirius XM Radio Inc. (Exhibit G); Statement of Issues filed by the Consumer

21  Bankers Association (Exhibit H).

22          The possibility that the Omnibus Order will be vacated is far from speculative.  As an

23  initial matter, the D.C. Circuit has the authority to decide the validity of FCC orders (as does any

24  Court of Appeals) and has exercised that authority to vacate FCC orders.  *See* 28 U.S.C.

25  § 2342(1); 47 U.S.C. § 402(a); *see, e.g.*, *Action for Children's Television v. Fed. Commc'ns

26  Comm'n*, 58 F.3d 654 (D.C. Cir. 1995); *Petroleum Commc'ns, Inc. v. Fed. Commc'ns Comm'n*,

27  22 F.3d 1164 (D.C. Cir. 1994).  Further, the D.C. Circuit has been particularly active in vacating

28  orders, like the Omnibus Order, in which the FCC overreaches its statutory authority.  *See, e.g.*,

1    *Verizon v. FCC*, 740 F.3d 623, 628 (D.C. Cir. 2014) (vacating FCC order because it "impose[d]

2    requirements that contravene express statutory mandates" even though the FCC had established

3    its general authority to regulate how broadband providers treat Internet traffic); *EchoStar Satellite*

4    *L.L.C. v. FCC*, 704 F.3d 992, 994-95 (D.C. Cir. 2013) (granting petition for review because the

5    FCC lacked statutory authority to impose rules "limit[ing] the means of encoding that cable and

6    satellite service providers may employ to prevent unauthorized access to their broadcasts");

7    *Comcast Corp. v. FCC*, 600 F.3d 642 (D.C. Cir. 2010) (vacating FCC order because the agency

8    had not tied the authority it asserted over Internet service providers to any statutorily mandated

9    responsibilities); *Am. Library Ass'n v. FCC*, 406 F.3d 689, 691-92 (D.C. Cir. 2005) (vacating

10   FCC order that required digital television reception equipment to have the capability to prevent

11   unauthorized redistributions of digital content because "Congress never conferred authority on the

12   FCC to regulate consumers' use of television receiver apparatus *after* the completion of broadcast

13   transmissions"); *AT&T Corp. v. F.C.C.*, 323 F.3d 1081, 1082 (D.C. Cir. 2003) (vacating portions

14   of forfeiture orders because the FCC lacked statutory authority to require telecommunications

15   carriers to guarantee that the actual line subscriber had authorized a service change); *Motion*

16   *Picture Ass'n of Am. v. FCC*, 309 F.3d 796, 798 (D.C. Cir. 2002) (vacating FCC regulations

17   requiring aural descriptions of a television program's key visual elements because the FCC lacked

18   statutory authority to promulgate them).

19          The D.C. Circuit also has not shied away from concluding that FCC rules are arbitrary and

20   capricious, particularly where, as here, the Commission fails to articulate a satisfactory

21   explanation.  *See, e.g.*, *Cablevision Sys. Corp. v. FCC*, 649 F.3d 695, 720-723 (D.C. Cir. 2011)

22   (vacating a portion of an FCC order because the arguments supporting the agency's conclusion

23   were incomplete, mistaken, and altogether unsatisfactory, rendering its decision arbitrary and

24   capricious); *Comcast Corp. v. FCC*, 579 F.3d 1, 3 (D.C. Cir. 2009) (holding that FCC rule

25   prohibiting a single cable operator to serve more than 30% of all cable subscribers was arbitrary

26   and capricious because it failed to account for voluminous evidence of other competition in the

27   marketplace); *U.S. Telecom Ass'n v. FCC*, 227 F.3d 450, 460-63 (D.C. Cir. 2000) (holding that a

28   portion of an FCC order was arbitrary and capricious because the FCC failed to adequately

explain why certain law enforcement surveillance capabilities qualified as "call-identifying information" that the Communications Assistance for Law Enforcement Act of 1994 required telecommunications carriers to make available).[4] Indeed, since 1985, the D.C. Circuit has vacated approximately 23% of the federal agency orders it has reviewed. *See* Douglas H. Ginsburg, *Remarks upon Receiving the Lifetime Service Award of the Georgetown Federalist Society Chapter*, 10 Geo. J.L. & Pub. Pol'y 1, 4 (2012).

Additionally, the strong remarks of the dissenting FCC Commissioners underscore that the D.C. Circuit has a sufficient basis to vacate much, if not all, of the Omnibus Order. The Omnibus Order was approved by a narrow three-to-two margin, with the dissenters sounding significant alarm at the Omnibus Order's deviation from the TCPA's plain language and intended purpose, as well as its likely devastating effect on innovation, businesses, and individuals. *See, e.g.,* Ex. A, Omnibus Order, Dissenting Statement of Commissioner Ajit Pai ("Pai Dissent") at 113; Ex. A, Omnibus Order, Statement of Commissioner Michael O'Rielly, Dissenting in Part and Approving in Part ("O'Rielly Dissent") at 127.

Commissioners Pai and O'Rielly took particular issue with the FCC's expanded interpretation of ATDS, which Commissioner Pai observed is directly contrary to the language of the statute. *See* Pai Dissent at 114 ("Had Congress wanted to define automatic telephone dialing system more broadly it could have done so by adding tenses and moods, defining it as 'equipment which has, has had, or could have the capacity.' But it didn't."). Commissioner O'Rielly also criticized the new definition of ATDS as contrary to the statutory language and noted that multiple courts have rejected the interpretation espoused in the Omnibus Order. O'Rielly Dissent at 128-129.

---

[4] The D.C. Circuit has not yet considered the merits of a petition for review challenging an FCC order interpreting the TCPA. *See Dish Network, L.L.C. v. FCC*, 552 F. App'x 1 (D.C. Cir. 2014) (dismissing petition because the order was not "final"); *Biggerstaff v. F.C.C.*, 511 F.3d 178 (D.C. Cir. 2007) (dismissing two challenges to the FCC's Junk Fax Prevention Act rule because one petitioner lacked standing and the other petition was an untimely challenge to a longstanding rule that had not been reopened for consideration in the challenged order).

"To put it kindly," Commissioner Pai wrote, "the *Order*'s interpretation is a bit of a mess."  Pai Dissent at 114.  The majority, after all, noted on the one hand that it would not "at this time address the contours of the 'autodialer' definition," while acknowledging the virtually limitless scope of its interpretation—which makes it "theoretically possible to modify a rotary-dial phone to such an extreme that it would satisfy the definition of 'autodialer.'"  *Id.* ¶¶ 17–18.

Commissioner Pai also disagreed with the FCC's chosen definition of "called party," explaining why "[i]nterpreting the term 'called party' to mean the expected recipient—that is, the party expected to answer the call—is by far the best reading of the statute."  Pai Dissent at 118.  To illustrate, he hypothesized:

> Your uncle writes down his telephone number for you and asks you to give him a call (what the TCPA terms 'prior express consent'). If you dial that number, whom would you say you are calling? Your uncle, of course. No one would say that the answer depends on who actually answers the phone. If your uncle's friend picks up, you'd say you were calling your uncle. So too if the phone is picked up by the passenger in your uncle's vehicle or your uncle's houseguest. Nor would your answer change if your uncle wrote down the wrong number, or he lost his phone and someone else answered it. Who is the called party in each and every one of these situations? It's obviously the person you expected to call (your uncle), not the person who actually answers the phone.  And no one would say that the answer depends on who actually pays for the service.

*Id.* at 118.

Commissioner Pai also explained that "[t]he expected-recipient approach respects Congress's intent that the TCPA 'balanc[e] the privacy rights of the individual and the commercial speech rights of the telemarketer.'"  *Id.* at 119 (citation omitted).  On the other hand, the Omnibus Order's "strict liability interpretation" chills communications "by threatening a company with crippling liability even if it reasonably expects to reach a consenting consumer when making a call."  *Id.*  Commissioner Pai also concluded that this reading is far from being "narrowly tailored to serve the government's legitimate, content-neutral interests," *id.* at 120 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989)) (internal quotation marks omitted), and emphasized:

> The TCPA's private right of action and $500 statutory penalty could incentivize plaintiffs to go after the illegal telemarketers, the over-the-phone scam artists, and the foreign fraudsters. But trial

> lawyers have found legitimate, domestic businesses a much more profitable target. … [A] trial lawyer can collect about $2.4 million per suit by targeting American companies.  So it's no surprise the TCPA has become the poster child for lawsuit abuse, with the number of TCPA cases filed each year skyrocketing from 14 in 2008 to 1,908 in the first nine months of 2014.

*Id.* at 112-13 (citations omitted).

Commissioner O'Rielly also challenged the Order's premise that the TCPA applies to text messages.  O'Rielly Dissent, Ex. A at 127.  He pointed out that the "TCPA was enacted in 1991 – before the first text message was ever sent.  The Commission should have gone back to Congress for clear guidance on the issue rather than shoehorn a broken regime on a completely different technology."  *Id.*

Commissioner O'Rielly was also "stunned" by the Omnibus Order's analysis on revocation of consent to receive calls, observing that "this right appears nowhere in the statute" and that "[i]f Congress did not address an issue, then the FCC should not presume to act in its stead."  *Id.* at 135.  Expressing concern that "the order allows consumers to choose any reasonable means to revoke consent," he reasoned:

> [O]ther pro-consumer statutes contain provisions that require any revocation of consent to be made in writing or through other methods designated by the business.  Instead, the order uses those provisions as evidence that, when Congress intends to specify the means of opt-ing out, it does so.  This is maddening.  As discussed above, the TCPA doesn't contain a revocation provision, so of course it did not specify how to exercise a non-existent right.  Rather, the point that some commenters have made is that if the FCC decides to read revocation into the TCPA at all, then it should at least read in a written revocation requirement or allow businesses to designate a reasonable method for revocation, consistent with other statutes that expressly address this issue.

*Id.* at 136.  Commissioner O'Rielly also highlighted commenters' concerns "about the prospect of consumers using non-standard responses to opt-out of texts (such as 'decline' or 'no thanks') that won't be recognized by their systems, which are programmed to recognize certain words that are standard in the industry (such as 'STOP')."  *Id.*

### III.   A STAY IS WARRANTED HERE GIVEN THE HIGHLY UNCERTAIN STATE OF THE LAW

A stay of this litigation pending a decision on the Omnibus Order by the D.C. Circuit and a decision by the Supreme Court in *Spokeo*, is warranted and appropriate.

### A.   Legal Standard.

This Court's power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *United States v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 815 (N.D. Cal. 2014) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)); *see also United States v. U.S. Dist. Court for N. Mariana Islands*, 694 F.3d 1051, 1058 (9th Cir. 2012). If there is a "fair possibility" that a stay will cause damage to someone else, the party seeking the stay has the burden to demonstrate a stay is warranted. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (quoting *Landis*, 299 U.S. at 255). "Whether or not to grant a stay is within the court's discretion and it is appropriate when it serves the interests of judicial economy and efficiency." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). In determining whether to grant a stay, courts must weigh "the competing interests which will be affected by the granting or refusal to grant a stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). These interests include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* Staying this case will allow the parties and the Court to avoid the unnecessary costs and expenses to litigate a case that may be dismissed for lack of standing or which may need to be reversed based on the vacatur of the Omnibus Order, and will not prejudice Plaintiffs.

### B.   This Court Should Stay this Action Pending the D.C. Circuit's Review of the Omnibus Order.

A stay of this litigation pending a decision by the D.C. Circuit regarding the Omnibus Order is justified and supported both by the facts and circumstances of this case and the issues before the D.C. Circuit.

Perkins Coie LLP
Attorneys At Law
Palo Alto

MOTION TO STAY PROCEEDINGS
128586432.12

1    **1.      This Court Has the Inherent Authority to Stay this Action Pending a D.C.
             Circuit Decision.**

2

3        Courts regularly stay proceedings where, as here, the issues central to the litigation are

4   before another court.  *See, e.g.*, *Stark v. Wickard*, 321 U.S. 288, 310 (1944) ("If numerous parallel

5   cases are filed, the courts have ample authority to stay useless litigation until the determination of

6   a test case."); *Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 825-26 (9th Cir. 2003) (stayed pending

7   a ruling by the California Supreme Court); *Cogent Medicine, Inc. v. Elsevier Inc.*, 70 F. Supp. 3d

8   1058, 1062 (N.D. Cal. 2014) (stayed pending U.S. Supreme Court decision).  This includes

9   staying proceedings while a Court of Appeals reviews whether an agency ruling must be vacated

10   in whole or in part.  *See, e.g.*, Order, *Gensel v. Performant Techs.*, Case No. 13-C-1196, 2015

11   U.S. Dist. LEXIS 142303, at *1 (E.D. Wisc. Oct. 20, 2015) (putative TCPA class action stayed

12   pending appeals of the Omnibus Order) (Exhibit I); *see also Ass'n of Int'l Auto. Mfrs., Inc. v.

13   Comm'r, Mass. Dep't of Envtl. Prot.*, 196 F.3d 302, 304 (1st Cir. 1999) (stayed pending D.C.

14   Circuit review of agency ruling); Order, *Barron's Outfitters Inc. v. Big Hairy Dog Info. Sys. &

15   Retail Pro Int'l LLC*, Case No. 3:14-cv-4335-TLW, Dkt. No. 30 (D.S.C. June 19, 2015) (Exhibit

16   J) (putative TCPA class action stayed pending resolution of a petition for waiver filed with the

17   FCC and a pending D.C. Circuit appeal regarding the FCC's authority to regulate solicited faxes);

18   *Chruby v. Global Tel*Link Corp.*, No. 1:14-cv-456, __ F. Supp. 3d __, 2015 WL 4740633, at *2-

19   3 (E.D. Va. Jan. 14, 2015) (stayed pending D.C. Circuit review of a related FCC order)[5]; *Hill v.

20   Transp. Serv. Co.*, 1987 WL 7260, at *2 (N.D. Ill. Feb. 24, 1987) (stayed pending Seventh

21   Circuit's decision in two similar cases); *see also GTE South, Inc. v. Morrison*, 199 F.3d 733, 743-

22   44 (4th Cir. 1999) (recognizing authority to stay pending exclusive review of agency action in

23

24   _____

25        [5] In *Chruby,* the Court ultimately lifted the stay because the D.C. Circuit held the appeal in
     abeyance awaiting final rules from the FCC.  The District Court found that the D.C. Circuit's
26   granting of a motion to hold the cases in abeyance was "a significant change in facts" rendering
     reconsideration of its original granting of the motion to stay appropriate.  *Chruby v. Global
27   Tel*Link Corp,* No. 14-cv-456, 2015 WL 4740790, at *2 (E.D. Va. March 10, 2015).  This ruling has
     no impact on the Court's reasoning in granting the motion to stay here because the appeal is currently
28   pending.

1    another circuit if "fundamental unfairness" such as paying out unrecoverable damages would

2    otherwise result).

3         **2.       A Stay Will Conserve the Court's and the Parties' Resources.**

4         Absent a stay, this Court will be called upon to interpret the Omnibus Order and apply it

5    to the facts of this case—no easy task given its numerous internal contradictions and

6    inconsistencies with the statutory text.  Any determination that this Court makes based on the

7    Omnibus Order may at a minimum be called into question, and will likely be superseded, if the

8    D.C. Circuit finds the Order unlawful.  As a result, any efforts expended by the parties and by this

9    Court—including decisions at summary judgment and class certification—will have been wasted.

10   For these reasons alone, the case should be stayed until the D.C. Circuit completes its review of

11   the Omnibus Order.

12        Plaintiffs' TCPA claims against Uber depend on the viability of the FCC's interpretations

13   of "ATDS," "called party," "call," and its view on revocation of consent, as adopted in the

14   Omnibus Order.  First, Plaintiffs' complaint alleges that Uber used an ATDS.  SAC, Dkt. No. 54

15   ¶¶ 30, 46, 59, 73, 86, 96.  Second, Plaintiff McKinney alleges that she is the "called party," even

16   though the intended recipient of the call was Randy McKinney, who may have been the

17   customary user of her telephone number.  Omnibus Order, ¶¶ 73, 78.  Third, Plaintiffs have not

18   indicated that they will not pursue claims on behalf of putative class members who were called

19   because their numbers were mistakenly or fraudulently submitted to Uber by third parties.

20   Fourth, Plaintiffs Grindell, Pal, Reilly, and Bartolet's allegations about responding to Uber's text

21   messages raise the issue of whether and how consent may be revoked.  *See* Omnibus Order, ¶¶

22   55-70. Fifth, Plaintiffs allege that the definition of "call" extends to text messages, as set forth in

23   the Omnibus Order.  SAC, Dkt. No. 54 ¶ 4.  The D.C. Circuit's consideration of the Omnibus

24   Order directly implicates the viability of each of these allegations.  For example, this Court has

25   already taken the position that it is bound by FCC interpretations absent an appeals court ruling to

26   the contrary, and relied on the 2015 Omnibus Order in determining that text messages are "calls"

27   and in evaluating whether Plaintiffs had provided "prior express consent" for Uber to contact

28   them.  Order, Dkt. No. 49, at 4, 9, 11, 16.

1    If the D.C. Circuit vacates the Omnibus Order—and as explained above, there are

2  compelling reasons to believe it will—each of Plaintiffs' claims will be impacted.  Most

3  obviously, if a text message is not a "call," then none of the messages fall within the scope of the

4  TCPA and Plaintiffs' claims will fail as a matter of law.  *See* 47 U.S.C. § 227(b)(1) (prohibiting

5  certain methods for making calls).[6]  If the "called party" cannot include individuals whose

6  numbers were mistakenly (or purposefully) submitted by a third party, then some of the

7  Plaintiffs—and some portion of alleged putative class members—lack statutory standing to bring

8  a TCPA claim.  *See id.* § 227(b)(1)(A)(iii) (excepting from liability calls made with prior express

9  consent of the "called party").[7]  If an ATDS is a system with the *present* capacity to automatically

10  make telephone calls to numbers stored or produced using a random or sequential number

11  generator, instead of a system with merely a *potential* capacity to do so, the applicable standard

12  would be quite different, and this would be another reason Plaintiffs' would be unable to

13  demonstrate that an ATDS was used (eliminating any potential TCPA liability).  *See id.*

14  § 227(a)(1), (b)(1)(A)(iii).  And if the "caller" may designate a reasonable method for revoking

15  consent, rather than being required to guess at what falls within the FCC's "any reasonable

16  manner" rule, a different standard will apply to Plaintiffs' arguments regarding revocation of

17

18    [6] Before the FCC issued its Omnibus Order, the Ninth Circuit deferred to the FCC's
interpretation that "a text message is a 'call' within the meaning of the TCPA."  *Satterfield v.
Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009).  If the D.C. Circuit rejects that

19  interpretation and vacates that portion of the FCC's Omnibus Order, however, the Ninth Circuit's
earlier ruling would need to be reassessed.

20    [7] The Ninth Circuit has yet to settle on a definition of "called party."  *Heinrichs v. Wells
Fargo Bank, N.A.*, No. C 13-05434 WHA, 2014 WL 2142457, at *1 (N.D. Cal. Apr. 15, 2014)

21  ("Our court of appeals has not directly addressed what the specific definition of 'called party' is
under Section 227(b)(1)(A).").  There has been significant disagreement among other courts

22  regarding the meaning of "called party" as well.  *See, e.g.*, *Soppet v. Enhanced Recovery Co.,
LLC*, 679 F.3d 637, 643 (7th Cir. 2012) ("called party" is the subscriber rather than the intended

23  recipient, but not addressing the regular user); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242,
1251-52 (11th Cir.2014) (same); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1225-

24  26 (S.D. Cal. 2014) ("called party" includes the regular user of the phone); *Page v. Regions Bank*,
917 F. Supp. 2d 1214, 1218 (N.D. Ala. 2012) (same); *Cellco P'ship v. Dealers Warranty, LLC*,

25  No. 09-1814 (FLW), 2010 WL 3946713, at *9 (D.N.J. Oct. 5, 2010) (holding that a carrier was
not a called party because "it is the intended recipient of the call that has standing to bring an

26  action for a violation of [the TCPA]").  Most recently, the Third Circuit held that statutory
standing under the TCPA is not limited to the "called party," but declined to define the meaning

27  of "called party" for purposes of obtaining consent.  *Leyse v. Bank of Am. Nat'l Ass'n*, --- F.3d ---,
2015 WL 5946456, at *6-7 (3d Cir. Oct. 14, 2015).

28

1    consent.  Plaintiffs' claims thus depend heavily upon the interpretations of the TCPA currently

2    being reviewed by the D.C. Circuit.

3        In these circumstances, courts regularly find that a stay is warranted.  In *Gensel v.*

4    *Performant Techs.*, the court considered the very issue before this Court: whether a putative

5    TCPA class action should be stayed pending the appeals of the FCC's Omnibus Order.  2015 U.S.

6    Dist. LEXIS 142303 at *1 (Exhibit I).  There, the court stayed the case pending the outcome of

7    the appeal, finding that it was "in the interest of judicial economy" because "the FCC majority's

8    interpretation of the term 'capacity' [central to plaintiff's claim] contradicts the plain language of

9    the statute" and would not "be entitled to deference on appeal."  *Id.* at *5 ("If Congress has

10   spoken, our inquiry ceases; the agency, as well as the court, must give effect to Congress's

11   unambiguously expressed intent.") (citing *Qwest Int'l, Inc. v. F.C.C.*, 398 F.3d 1222, 1230 (10th

12   Cir. 2005)).

13       Similarly, in *Barron's Outfitters*, the plaintiff brought a putative class action alleging that

14   defendants violated the TCPA by sending faxes without a sufficient opt-out provision.  *See* Order,

15   Case No. 3:14-cv-4335-TLW, Dkt. No. 30 (Exhibit J).  Because an appeal challenging the FCC's

16   authority over solicited faxes was pending before the D.C. Circuit and because defendants had

17   filed a petition for waiver with the FCC, the court held that a stay was warranted "while the FCC

18   and D.C. Circuit Court consider these related issues."  *Id.* at 2.  The court further explained that it

19   had "considered the risk of inconsistent rulings that may result if the FCC and D.C. Circuit Court

20   are not permitted to issue [their] ruling[s] before this Court acts," and that there would be

21   "potential prejudice to the litigants if they are required to proceed without resolution of these

22   issues."  *Id.*

23       In *Chruby*, the FCC had issued an order interpreting certain legal requirements regarding

24   rates for inmate calling services.  2015 WL 4740633, at *2.  A petition for review of that order

25   was pending before the D.C. Circuit, which had also partially stayed the implementation of the

26   order.  *See id.*  The court found a stay was appropriate "because key issues in this case may be

27   greatly impacted by the pending appeal in the D.C. Circuit," in that "it [was] unclear whether

28   significant changes [would] be made to the Order or whether it [would] be invalidated."  *Id.* at *3.

MOTION TO STAY PROCEEDINGS
128586432.12

1    Allowing for active litigation of Plaintiffs' claims during the modest time remaining for

2    the Omnibus Order to be reviewed will unnecessarily consume the Court's and the parties'

3    resources while potentially subjecting Uber to inconsistent rulings.  To address the issues on the

4    merits or at any class certification stage, the Court would need to consider the impact of the

5    FCC's interpretations, which could soon be vacated as arbitrary, capricious, and/or contrary to

6    law.  *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (noting that class certification

7    analysis frequently overlaps with the merits of the plaintiff's underlying claim); *see also Remarks*

8    *of Michael O'Rielly, Fed. Commc'ns Comm'n Before the Prof'l Ass'n for Customer Engagement*

9    *2015 TCPA Washington Summit*, 2015 WL 5723795, at *1 (noting that the "state of the law" with

10   respect to the TCPA depends on "the outcome of the ongoing litigation").

11        **3.    A Stay Will Not Prejudice Plaintiffs.**

12        A stay will not prejudice Plaintiffs.  By the time this motion for stay is fully briefed, the

13   remaining time to disposition by the D.C. Circuit is likely to be significantly less than a year.[8]

14   This modest delay is more than reasonable, given the implications that the appeal may have on

15   this case.  *See Provo v. Rady Children's Hosp.-San Diego*, No. 15CV0081 JM BGS, 2015 WL

16   6144029, at *2 (S.D. Cal. July 29, 2015) ("[N]either party will be significantly prejudiced by a

17   less than one year delay."); *see also Software Rights Archive, LLC v. Facebook, Inc.*, No. C-12-

18   3970 RMW, 2013 WL 5225522, at *5 (N.D. Cal. Sept. 17, 2013) ("Delay alone, without specific

19   examples of prejudice resulting therefrom, is insufficient to establish *undue* prejudice.");

20   *Research in Motion Ltd. v. Visto Corp.*, 545 F. Supp. 2d 1011, 1012 (N.D. Cal. 2008) ("Mere

21   delay, without more . . . , does not demonstrate undue prejudice." (omission in original) (quoting

22   *Nanometrics, Inc. v. Nova Measuring Instrs., Ltd.*, No. C 06-2252 SBA, 2007 WL 627920, at *3

23   (N.D. Cal. Feb. 26, 2007)) (internal quotation marks omitted)); *Sorensen ex rel. Sorensen*

24   *Research & Dev. Trust v. Black & Decker Corp.*, No. 06CV1572BTMCAB, 2007 WL 2696590,

25   _____

26   [8] The first petition for review was filed on July 10, 2015.  Briefing in the D.C. Circuit will
     be concluded by February 24, 2016. The Federal Court Management Statistics for June 2015
     indicate that the median amount of time from filing until disposition for an appeal in the D.C.

27   Circuit is fourteen months.  Federal Court Management Statistics, June 2015, available at
     http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-0.

28

Perkins Coie LLP
Attorneys At Law
Palo Alto

-18-

MOTION TO STAY PROCEEDINGS
128586432.12

1    at *4 (S.D. Cal. Sept. 10, 2007) ("The general prejudice of having to wait for resolution is not a

2    persuasive reason to deny the motion for stay.").

3           Further, as discussed above, Plaintiffs seek primarily statutory damages and allege no

4    ongoing injury, therefore there is little urgency to Plaintiffs' alleged entitlement to $500 or $1,500

5    in statutory damages for each text message. *See Hosp. of Barstow, Inc. v. Sebelius,* No. CV 11-

6    10638 CAS MANX, 2012 WL 893784, at *3 (C.D. Cal. Mar. 13, 2012) (granting a stay pending

7    "the outcome of the appeals before the Ninth Circuit" involving "substantially similar" issues,

8    because "the only prejudice to plaintiffs due to a stay is a short delay in the potential recovery of

9    damages").

10           Nor will Plaintiffs suffer additional hardship pending a stay.  Defendant has blocked the

11    phone numbers at issue from receiving additional text messages to ensure they do not receive

12    future text messages from Defendant.  Presumably if Plaintiffs anticipated any imminent harm,

13    they would have moved for preliminary injunctive relief.  *See, e.g., GT Nexus, Inc. v. Inttra, Inc.*,

14    No. C 11-02145-SBA, 2014 WL 3373088, at *4 n.7 (N.D. Cal. July 9, 2014) ("Many courts have

15    found ... that attempts by a patentee to argue undue prejudice are undermined if the patentee has

16    elected not to pursue preliminary injunctive relief." (quoting *Zillow, Inc. v. Trulia, Inc.*, No. C12-

17    1549JLR, 2013 WL 5530573, at *6 (W.D. Wash. Oct. 7, 2013)) (internal quotation marks

18    omitted)).

19           Finally, a stay will not unduly delay this case as this case is still in the very early stages of

20    discovery.  Uber has provided written discovery and documents to Plaintiffs, but no other

21    discovery has occurred.  Since the motion to dismiss, neither party has filed discovery motions

22    and neither party has filed a dispositive motion.  In short, this case has yet to gain momentum,

23    and a stay at this juncture is appropriate to conserve the Court's and the parties' resources and

24    avoid duplication or doubling-back should the legal standards change once the case does gain

25    steam.  *See Chruby*, 2015 WL 4740633, at *2-3 (granting motion to stay pending appeal of FCC

26    Report and Order where parties had not previously sought extensions and case had recently been

27    filed).  If Uber were forced to engage in additional costly discovery and/or pay a money judgment

28    under an interpretation of the law that is later invalidated by the D.C. Circuit, it would suffer

Perkins Coie LLP
Attorneys At Law
Palo Alto

irreparable harm, as there is no assurance or realistic mechanism for Uber to recover money paid to Plaintiffs, purported class members, and Class Counsel.  Accordingly, on balance, a stay is appropriate here.  *See LELO, Inc. v. Standard Innovation (US) Corp.*, No. 13-CV-01393-JD, 2014 WL 2879851, at *4 (N.D. Cal. June 24, 2014) (granting a motion to stay because any prejudice to plaintiff was "not enough to overcome the prior two factors [early stage of discovery and simplification of the issues]").

**C.     A Stay of Proceedings Is Also Warranted by the Pending Supreme Court Decision in *Spokeo, Inc. v. Robins*.**

*Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015), which was argued before the Supreme Court on November 2, 2015, also supports a stay in this case.  In *Spokeo*, the Supreme Court is considering whether a bare violation of a statutory right—without any actual injury, as is the case for many of the plaintiffs here—is sufficient for Article III standing.  Although *Spokeo* is not a TCPA case, its ruling on standing is likely to directly impact TCPA cases across the country, including this one.  As a number of amici curiae—including Facebook, Google, Netflix, LinkedIn, Twitter, and Yahoo!—have argued, innovative companies that have a "huge volume of daily interactions with millions of different people" are "particularly vulnerable to putative class actions [including TCPA cases] that allege bare statutory violations and claim statutory damages for enormous putative classes" even though no putative class member has actually suffered an injury—and even though consumers expect and invite such interactions.  Brief for Amici Curiae EBay Inc., Facebook, Inc., Google Inc., IAC/Interactive Corp., LinkedIn Corp., Netflix, Inc., Twitter, Inc., Yahoo! Inc., The Consumer Electronics Association, Digital Content Next, and the Internet Association in Support of Petitioner at 14 (Exhibit K).  Should the Supreme Court rule in favor of the petitioner, the Plaintiffs here will likely be required to adequately allege and prove actual injury to remain in federal court, something they are unlikely to be able to allege, and will also need to establish actual injury to absent class members in order to certify a class.  *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012) ("No class may be certified that contains members lacking Article III standing.") (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)) (internal quotation marks and alterations omitted)).

Perkins Coie LLP
Attorneys At Law
Palo Alto

MOTION TO STAY PROCEEDINGS
128586432.12

All but one of the Plaintiffs state only that texts were sent "to a cellular telephone number for which [Plaintiff] is charged for incoming calls and text messages pursuant to 47 U.S.C. § 227(b)(1)(A)(iii)."  *Id.* ¶¶ 28, 44, 71, 84 & 94.  Plaintiff Grindell alleges he could only receive a 1,000 texts per month through his wireless phone plan and that he "alter[ed] his cell phone usage patterns" as a result of text messages from Uber but he does not identify what alleged injury resulted.  SAC, Dkt. No. 54, ¶ 57.  Plaintiffs do *not* allege any fees associated with receiving texts (as opposed to calls) through their cell phone plan.  Nor do Plaintiffs allege actual injury of *any* kind.  Further, even if one of the Plaintiffs could demonstrate actual injury, it is likely that there are individuals who have suffered no injury among the class Plaintiffs purport to represent.

Courts across the country have recognized the threshold issues presented by *Spokeo* and have granted stays based on that pending decision, including in the TCPA context.  *See Boise v. ACE USA, Inc.*, Case No. 15-Civ-21264-COOKE/TORRES, 2015 WL 4077433, at *1 (S.D. Fla. July 6, 2015) (staying TCPA case pending the resolution of two Supreme Court cases, of which *Spokeo* was one, because the cases would "deal with threshold issues of jurisdiction and whether this case may proceed at all," such that "[u]ltimately, both parties could be harmed by the burden of potentially superfluous litigation"); *see also Lopez v. Miami-Dade County*, No. 15-cviv-22943-COOKE/TORRES (S.D. Fla. Nov. 6, 2015) (staying Fair and Accurate Credit Transactions Act case alleging defendant printed more than four digits on credit card receipts because plaintiffs "fail[ed] to allege any concrete injury-in-fact" and "[a] decision in *Spokeo* may conclusively determine whether this Court has subject matter jurisdiction over Plaintiff's claims") (Exhibit L); *Shaw v. Experian Info. Sols.*, Case. No. 13cv01295-JLS-BLM, Dkt. No. 148 (S.D. Cal. Oct. 28, 2015) (staying proceedings pending Supreme Court decision in *Spokeo* in case alleging bare statutory violations under the Fair Credit Reporting Act) (Exhibit M); *Provo v. Rady Children's Hospital S.D.*, No. 15cv0081 JM (BGS), 2015 WL 6144029, at *2 (S.D. Cal. July 29, 2015) (same).

The need for a stay is particularly keen here where the statutory damages sought (up to $1500 per text message, regardless of any actual injury) compounded on a class-wide basis is significant.  Courts have recognized that combining a statutory damages provision like that at

MOTION TO STAY PROCEEDINGS
128586432.12

1   issue both here and in *Spokeo* with a class action complaint "may expand the potential statutory

2   damages so far beyond the actual damages suffered that the statutory damages come to resemble

3   punitive damages—yet ones that are awarded as a matter of strict liability, rather than for the

4   egregious conduct typically necessary to support a punitive damages award." *Parker v. Time*

5   *Warner Entm't. Co.*, 331 F.3d 13, 22 (2d Cir. 2003) (acknowledging "legitimate concern that the

6   potential for a devastatingly large damages award, out of all reasonable proportion to the actual

7   harm suffered by members of the plaintiff class, may raise due process issues").  Indeed, where

8   there is no actual harm, the availability of statutory damages for TCPA violations may lead to

9   unconstitutionally excessive fines and penalties in a class action, contrary to principles of due

10  process.  A decision in *Spokeo* that plaintiff must demonstrate injury-in-fact to establish Article

11  III standing will mitigate excessive fines concerns and could obviate the need for the parties to

12  brief the issue and the Court to rule on it.  Finally, as discussed above, staying this case will allow

13  the parties and the Court to avoid the unnecessary costs and expenses to litigate a case that may

14  be dismissed for lack of standing, and will not prejudice Plaintiffs.

15                              **IV.    CONCLUSION**

16          For the foregoing reasons, Uber asks this Court to stay the current proceedings pending

17  the D.C. Circuit's review of the Omnibus Order and the Supreme Court decision in *Spokeo*.

18  While any such stay is in place, Uber is willing to provide the Court with regular updates on the

19  progress of the appeal.

20

21

22

23

24

25

26

27

28

-22-

MOTION TO STAY PROCEEDINGS
128586432.12

1

2      DATED:  November 13, 2015               Respectfully submitted,

3                                             **PERKINS COIE** LLP

4
                                             By:/ James G. Snell, Bar No. 173070
5                                                 James G. Snell, Bar No. 173070
                                                  JSnell@perkinscoie.com
6                                             505 Howard Street, Suite 1000
                                             San Francisco, California 94105
7                                             Telephone:  (415) 344-7000
                                             Facsimile:  (415) 344-7050
8
                                             Attorneys for Defendant
9                                             Uber Technologies, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28