Hassan A. Zavareei (SBN 181547)
hzavareei@tzlegal.com
**TYCKO & ZAVAREEI LLP**
2000 L Street, N.W., Suite 808
Washington, DC 20036
Tel.: (202) 973-0900
Fax: (202) 973-0950

*Attorney for Plaintiffs*
*James Lathrop, Julie McKinney,*
*Jonathan Grindell, Sandeep Pal,*
*Jennifer Reilly, and Justin Bartolet*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAINTIFFS JAMES LATHROP, JULIE MCKINNEY, JONATHAN GRINDELL, SANDEEP PAL, JENNIFER REILLY, and JUSTIN BARTOLET on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC.<br><br>Defendant. | Civil Action No. 14-cv-05678-JST<br><br>PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STAY<br><br>Hearing Date: January 7, 2016<br>Time: 2:00 pm<br>Courtroom: 9 -19th Floor<br><br>Judge Jon S. Tigar |

# TABLE OF CONTENTS

I.     **INTRODUCTION**......................................................................................... 1

II.    **BACKGROUND** ........................................................................................... 4

III.   **LEGAL STANDARD** ................................................................................... 6

IV.   **ARGUMENT** ................................................................................................. 7

        A.    Uber Has Not Shown That Any D.C. Circuit Court Decision Would Even
Impact This Case................................................................................. 7

                i.     *The FCC's clarification that "text messages" are "calls"
under the TCPA is well-founded in prior FCC rulings and
court decisions across the country.*........................................... 7

                ii.    *The FCC's explanation that "capacity" includes "potential
ability" is deeply rooted in prior FCC rulings.* ....................... 8

                iii.   *The FCC's conclusion that "called party" does not mean
"intended recipient" is not a sea change but, rather, is
consistent with the decisions of three federal circuit courts
of appeal.*............................................................................... 9

                iv.   *The D.C. Circuit must defer to the FCC's rulings, including
its 2015 FCC Order, so long as the FCC articulated a
rational connection between the facts found and the choice
made.* ................................................................................... 11

                v.    *Numerous courts have declined to stay litigation pending
review of FCC orders.*........................................................... 11

        B.    There Is No Basis For Staying This Case Pending *Spokeo.* ......................... 13

                i.     *Plaintiffs have alleged actual injury, making* Spokeo
*inapposite.* ............................................................................ 13

                ii.    *There is no reasoned basis to believe that any Supreme
Court opinion in* Spokeo *will be as broad as Uber would
need to impact Plaintiffs' claims here, let alone dispose of
them.* ................................................................................... 14

                iii.   *The Supreme Court's mere grant of certiorari in* Spokeo
*does not say anything about how the Supreme Court will
rule or how it may impact this case, and does not support a
stay.* ..................................................................................... 15

C.     Uber Will Not Be Prejudiced By Continuing Litigation, But Plaintiffs And The Putative Classes Will Be Significantly Harmed. ........................... 16

i.     *Uber has failed to carry its burden of showing a clear case of hardship or inequity.* ......................................................... 16

ii.    *Plaintiffs and the putative classes will be severely prejudiced by the requested stay.* ......................................... 18

V.     **CONCLUSION** ....................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Abassi v. BAE Sys. Info.*
   No. 10cv1745 BEN (AJB), 2011 WL 4443340 (S.D. Cal. Nov. 1, 2010) .................................. 16

*ACA Int'l v. FCC*
   No. 15-1211 (D.C. Cir. July 13, 2015) ........................................................................... 6

*ADX Commc'ns of Pensacola v. FCC*
   794 F.3d 74 (D.C. Cir. 2015) ............................................................................... 1, 11

*Alston v. Countrywide Fin. Corp.*
   585 F.3d 753 (3d Cir. 2009) ..................................................................................... 3

*Arnott v. United States Citizenship and Immigration Servs.*
   290 F.R.D. 579 (C.D. Cal. 2012) ............................................................................. 16

*ASUSTek Computer Inc. v. Ricoh Co., Ltd.*
   No. C 07-01942 MHP, 2007 WL 4190689 (N.D. Cal. Nov. 21, 2007) .................................. 18

*Ayers v. Verizon Commc'ns, Inc.*
   No. 14-cv-626, 2014 WL 2574543 (M.D. Fla. June 9, 2014) .................................... 11

*Barron's Outfitters Inc. v. Big Hairy Dog Info. Sys.*
   No. 14-cv-4335, Dkt. 30 (D.S.C. June 19, 2015) ....................................................... 17

*Bates v. United Parcel Serv., Inc.*
   511 F.3d 974 (9th Cir. 2007) ............................................................................. 15, 16

*Baxter v. Rodale*
   No. 12–00585, 2012 WL 1267880 (C.D. Cal. Apr. 12, 2012) ................................... 16

*Beaudry v. TeleCheck Servs., Inc.*
   579 F.3d 702 (6th Cir. 2009) ..................................................................................... 3

*Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp.*
   No. C-09-00882 RMW, 2009 WL 5108578 (N.D. Cal. Dec. 18, 2009) .................................. 16

*California Trout, Inc. v. U.S. Bureau of Reclamation*
   ___ F. Supp. 3d ____, No. 14-7744 FMO (PLAx), 2015 WL 4477831 (C.D. Cal.
   June 22, 2015) ....................................................................................................... 16

*Chruby v. Global Tel Link Corp.*
   No. 14-cv-456, 2015 WL 4740633 (E.D. Va. Jan. 14, 2015) ................................... 17

-iv-

*CMAX, Inc. v. Hall*
   300 F.2d 265 (9th Cir. 1962) ................................................................................. 7

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*
   498 F.3d 1059 (9th Cir. 2007) ............................................................................... 6

*Dish Network, LLC v. FCC*
   552 F. App'x 1 (D.C. Cir. Jan. 22, 2015) ........................................................... 13

*Dister v. Apple-Bay East, Inc.*
   No. C 07-01377 SBA, 2007 WL 4045429 (N.D. Cal. Nov. 15, 2007)................... 12

*Dreher v. Experian Info. Solutions, Inc.*
   No. 3:11-cv-624, ECF No. 344 (E.D. Va. Apr. 30, 2015) .................................. 3, 15

*Espejo v. Santander Consumer USA, Inc.*
   No. 11-cv-89876, 2014 WL 4347185 (N.D. Ill. Aug. 28, 2014) ........................... 11

*Frydman v. Portfolio Recovery Assocs., LLC*
   No. 11-cv-524, 2011 WL 2560221 (N.D. Ill. June 28, 2011)................................. 7

*Guido v. L'Oreal, USA, Inc.*
   284 F.R.D. 468 (C.D. Cal. 2012) ......................................................................... 16

*Gutierrez v. Barclays Grp.*
   No. 10CV1012 DMS BGS, 2011 WL 579238 (S.D. Cal. Feb. 9, 2011) ................ 10

*Hammer v. Sam's E., Inc.*
   754 F.3d 492 (8th Cir. 2014) .................................................................................. 3

*Harnish v. Frankly Co.*
   No. 14-cv-02321, 2015 WL 1064442 (N.D. Cal. March 11, 2015)........................ 11

*Hofer v. Synchrony Bank*
   No. 14-cv-1865, 2015 WL 2374696 (E.D. Mo. May 18, 2015) ............................ 11

*Hooker v. Sirius XM Radio, Inc.*
   No. 13-cv-3, Dkt. 136 (E.D. Va., Sept. 25, 2015) .............................................. 1, 11

*In re TFT–LCD (Flat Panel) Antitrust Litig.*
   No. 07–1827, 2012 WL 253298 (N.D. Cal. Jan. 26, 2012) ................................... 16

*Itex, Inc. v. Mount Vernon Mills, Inc.*
   No. 08 CV 1224, 2010 WL 3655990 (N.D. Ill. Sep. 9, 2010) ................................ 12

*Jamison v. First Credit Servs., Inc.*
   290 F.R.D. 92 (N.D. Ill. 2013).............................................................................. 11

*Kaltwasser v. Cingular Wireless LLC*
No. C 07-00411 JF (PVT), 2010 WL 2348642 (N.D. Cal. June 8, 2010) .................................. 12

*Kamakahi v. Am. Soc'y for Reprod. Med.*
305 F.R.D. 164 (N.D. Cal. 2015) .......................................................................... 16

*Keating v. Peterson's Nelnet, LLC*
615 F. App'x 365 (6th Cir. 2015) ............................................................................ 8

*King v. Time Warner Cable*
No. 14-cv-2018, 2015 WL 4103689 (S.D.N.Y. July 7, 2015)................................. 10

*Landis v. N. Am. Co.*
299 U.S. 248 (1936)......................................................................................... 4, 6, 16

*Leyse v. Bank of Am. Nat. Ass'n*
No. 14-cv-4073, 2015 WL 5946456, (3d Cir. October 14, 2015) ........................... 10

*Leyva v. Certified Grocers of California, Ltd.*
593 F.2d 857 (9th Cir. 1979) ................................................................................... 6

*Lockyer v. Mirant Corp.*
398 F.3d 1098 (9th Cir. 2005) ......................................................................... 4, 6, 16

*Mazza v. Am. Honda Motor Co.*
666 F.3d 581 (9th Cir. 2012) .............................................................................. 15, 16

*McColm v. San Francisco Hous. Auth.*
No. C 02-5810 PJH, 2007 WL 1342502 (N.D. Cal. May 8, 2007) ......................... 19

*Molnar v. NCO Fin. Sys., Inc.*
No. 13-cv-00131, 2015 WL 1906346 (S.D. Cal. April 20, 2015) ........................... 19

*Morgenstein v. AT & T Mobility LLC*
No. CV 09-3173 SBA, 2009 WL 3021177 (N.D. Cal. Sept. 17, 2009)..................... 12

*Murphy v. DCI Biologicals Orlando, LLC*
797 F.3d 1302 (11th Cir. 2015) ............................................................................... 8

*Murray v. GMAC Mrtg. Corp.*
434 F.3d 948 (7th Cir. 2006) ................................................................................... 3

*Ollier v. Sweetwater Union High School Dist.*
768 F.3d 843 (9th Cir. 2014) ................................................................................. 15

*Olney v. Progressive Cas. Ins. Co.*
993 F. Supp. 2d 1220 (S.D. Cal. 2014)................................................................... 10

-vi-

*Osorio v. State Farm Bank, F.S.B.*
   746 F.3d 1242 (11th Cir. 2014) ................................................................. 10

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.C., P.A.*
   781 F.3d 1245 (11th Cir. 2015) ................................................................. 3

*Pagtalunan v. Galaza*
   291 F.3d 639 (9th Cir. 2002) ................................................................... 19

*Ries v. Az. Beverages USA LLC*
   287 F.R.D. 523 (N.D. Cal. 2012) ............................................................ 16

*Robey v. Shapiro, Marianos & Cejda, L.L.C.*
   434 F.3d 1208 (10th Cir. 2006) ................................................................ 3

*Satterfield v. Simon & Schuster, Inc.*
   569 F.3d 946 (9th Cir. 2009) ..................................................................... 8

*Shaw v. Marriott Int'l, Inc.*
   605 F.3d 1039 (D.C. Cir. 2010) ................................................................. 3

*Sirius XM Radio Inc. v. FCC*
   No. 15-1218 (D.C. Cir., July 14, 2015) .................................................... 6

*Sojka v. DirectBuy, Inc.*
   35 F. Supp. 3d 996 (N.D. Ill. 2014) .......................................................... 8

*Soppet v. Enhanced Recovery Co., LLC*
   679 F.3d 637, 640 (7th Cir. 2012) ....................................................... 9-10

*Speer v. Whole Foods Market Grp., Inc.*
   No. 8:14-cv-3035, ECF No. 46  (M.D. Fla. Apr. 29, 2015) ................................ 3-4, 15

*Spokeo, Inc. v Robins*
   No. 13-1339, 2015 WL 1879778 (U.S. Apr. 27, 2015) ...................................... *passim*

*Stearns v. Ticketmaster Corp.*
   655 F.3d 1013 (9th Cir. 2011) ................................................................. 15

*Tietsworth v. Sears, Roebuck and Co.*
   No. 0900288, 2012 WL 1595112 (N.D. Cal. May 4, 2012) .............................. 16

*Vernal Enterprises, Inc. v. FCC*
   355 F.3d 650 (D.C. Cir. 2004) .......................................................... 1, 11

*Walker v. Life Ins. Co. of the Sw.*
   No. 10–9198, 2012 WL 7170602 (C.D. Cal. Nov. 9, 2012) ............................ 16

-vii-

TABLE OF AUTHORITIES
Civil Action No. 14-cv-05678-JST

*Waller v. Hewlett-Packard Co.*
  295 F.R.D. 472 (S.D. Cal. 2013) ................................................................. 15, 16

*Warth v. Seldin*
  422 U.S. 490 (1975) ..................................................................................... 3

*Whiteamire Clinic, P.A., Inc. v. Quill Corp.*
  No. 12-cv-5490, 2013 WL 4782161 (N.D. Ill. Sept. 6, 2013) ............................ 12, 13

*Yong v. I.N.S.*
  208 F.3d 1116 (9th Cir. 2000) ....................................................................... 18

**Statutes**

5 U.S.C. § 706 ................................................................................................ 11

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* ........................ 2, 3, 14, 15

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* .......................... 1, 9, 17

**Rules and Regulations**

Fed. R. Civ. P. 23 ........................................................................................... 19

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Declaratory Ruling*, CG Docket No. 02-278, 23 FCC Rcd. 559 (Jan. 4, 2008) ( "2008 Declaratory Ruling") ........................................................................... 7, 9, 10

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Declaratory Ruling*, CG Dkt. No. 02-278 (July 10, 2015) (Dkt. 12-1) ("2015 FCC Order") ............................................................................... *passim*

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order*, CG Docket No. 02-278, (Feb. 15, 2012) ("2012 FCC Order") ..... 8

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order*, CG Docket No. 02-278, 18 FCC Rcd. 14014 (July 3, 2003) ("2003 FCC Order") ........................................................................... 7, 8, 9

I.   **INTRODUCTION**

Uber's request for an indefinite stay serves no practical purpose and would needlessly and unfairly delay resolution of this action.  Neither of Uber's two supposed grounds for a stay has any merit, and its Motion should be summarily denied.

Uber's first argument is that this case should be put on ice pending the D.C. Circuit's review of the Federal Communications Commission's July 10, 2015 ruling, which clarified the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") in several respects.  Uber is attempting to create an alternate reality—one where the 2015 FCC Order represented a "seismic shift" in TCPA law, making reversal by the D.C. Circuit just a matter of time.  In the real world, however, the 2015 FCC Order tracks a long line of FCC orders and court decisions.[1]  Further, numerous federal district courts and circuit courts of appeals have adopted the FCC's interpretations of the TCPA provisions at issue—or have independently reached the same conclusions—and have implemented the FCC's TCPA rulings accordingly.[2]  Not to mention that the D.C. Circuit's standard of review—which Uber ignores entirely—is highly deferential: the D.C. Circuit presumes that the FCC's actions are valid and defers to the FCC's own precedents.  *ADX Commc'ns of Pensacola v. FCC*, 794 F.3d 74, 79 (D.C. Cir. 2015); *Vernal Enterprises, Inc. v. FCC*, 355 F.3d 650, 658 (D.C. Cir. 2004).

One district court recently denied a similar motion to stay, finding that a stay pending the D.C. Circuit's review of the 2015 FCC Order would be a "significant waste of time."  *See Hooker v. Sirius XM Radio, Inc.*, No. 13-cv-3, Dkt. 136, at 6 (E.D. Va., Sept. 25, 2015).[3]  This Court should reach the same conclusion.  Stalling these proceedings indefinitely on the speculative chance that the D.C. Circuit will vacate the 2015 FCC Order is unjustified.  Even if the D.C. Circuit were to vacate the 2015 FCC Order and upend years and years of TCPA jurisprudence, this case will not be over.  Uber admits as much in its Motion.  The parties will still need to conduct discovery and

---

[1] *See infra* part III.A.i-iii (discussing prior rulings by the FCC and courts regarding the definition under the TCPA of "called party," whether text messaged are "calls," and the definition of an "automatic telephone dialing system").

[2] *Id.*

[3] The order denying the motion to stay in *Hooker v. Sirius VM Radio* is attached hereto as Exhibit A.

motion practice regardless of the D.C. Circuit's conclusion. This case will be litigated, and there is little to be gained by imposing an indefinite stay.  Put simply, Uber has manufactured a TCPA controversy as a thinly-veiled ploy to delay potential relief to thousands of consumers.

Uber's second argument—that this case should be halted pending the United States Supreme Court's decision in *Spokeo, Inc. v. Robins*—is equally unavailing.  In *Spokeo*, the Supreme Court granted a writ of certiorari with respect to a single, narrow constitutional issue—Article III standing. *See Spokeo, Inc. v Robins*, No. 13-1339, 2015 WL 1879778, at *1 (U.S. Apr. 27, 2015) (hereinafter "*Spokeo*"). The question on which the Court granted certiorari in *Spokeo* is "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." *See* Order Granting Cert., *Spokeo v. Robins*, 13-1339 (S. Ct. April 27, 2015).

Uber contends that *Spokeo* may be dispositive here, but its argument turns on its false, and completely unsupported, statement that "most of the Plaintiffs and putative class members in this case" have suffered "no actual injury[.]"  (Mot. at 2.)  Plaintiffs have specifically alleged that they have "suffered damages in the form of text message, data, and other charges to their cellular telephone plans."  Second Amended Complaint ("SAC"), ¶ 116.  Further, as pled in the Complaint, the members of the putative classes have suffered these injuries as well.  *Id*.  Uber's bald assertion to the contrary is based simply on its wishful thinking, not evidence.  Indeed, Uber filed its Motion before it received any written discovery responses from Plaintiffs and before it has taken a single Plaintiff's deposition.

Furthermore, the facts and legal issues in *Spokeo* are different.  *Spokeo* involves Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* claims brought against a California software developer that aggregates data about individuals from various sources, and then makes that information available to the public on its website.  *See Robins v. Spokeo*, Case No. 2:10-cv-05306, ECF No.40 at ¶¶ 10-25.  The *Spokeo* complaint is founded largely on the fact that the information the defendant put on the internet about the plaintiff was *favorably* inaccurate.  Specifically, Spokeo reported that the plaintiff was wealthier and better educated than he actually is.  The plaintiff sued

-2-

Spokeo on the grounds that, *inter alia*, it failed to maintain reasonable procedures to ensure the maximum possible accuracy of information about him.  He did not allege that any particular person ever viewed his profile or even saw the inaccurate information Spokeo published.  And he never argued that he was deprived of mandated information or disclosure.  The *Spokeo* plaintiff's damages claim is factually unique, and wholly distinct from Plaintiffs' claims here.

      *Spokeo* will likely clarify whether an FCRA litigant needs to plead anything other than a "bare violation" of the FCRA in order to invoke the subject matter jurisdiction of a federal court.  Such a FCRA-specific ruling will not affect this case.  The mere fact that four Justices voted to grant *certiorari* in *Spokeo* is not predictive of any outcome, and certainly not an outcome that would be dispositive in this TCPA case.  Indeed, the Ninth Circuit's decision in *Spokeo* is consistent with every other circuit court of appeals decision as to whether the violation of a consumer protection statute that provides for statutory damages where harm is otherwise difficult to measure confers Article III standing.[4]

      Courts who have considered stays pending a decision in *Spokeo* have rejected the request.  *See*, *e.g.*, *Dreher v. Experian Info. Solutions, Inc.*, No. 3:11-cv-624 (E.D. Va.) at ECF No. 344 (April 30, 2015 order denying defendant's motion to stay pending decision in *Spokeo*). *Speer v.*

---

[4] *Beaudry v. TeleCheck Servs., Inc.,* 579 F.3d 702, 707 (6th Cir. 2009); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.C., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015) ("Thus, where a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights."); *Hammer v. Sam's E., Inc.*, 754 F.3d 492, 498-99 (8th Cir. 2014) (finding standing in FCRA case and stating "[i]t is of no consequence that appellants' injury is dependent on the existence of a statute."); *Murray v. GMAC Mrtg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury."); *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1042 (D.C. Cir. 2010) ("The deprivation of such a statutory right may constitute an injury-in-fact sufficient to establish standing, even though the plaintiff 'would have suffered no judicially cognizable injury in the absence of [the] statute.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 514 (1975))); *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1211 (10th Cir. 2006) ("Congress may expand the range or scope of injuries that are cognizable for purposes of Article III standing by enacting statutes which create legal rights."); *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009) ("A plaintiff need not demonstrate that he or she suffered actual monetary damages, because the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." (internal quotations omitted)).

*Whole Foods Market Grp., Inc.*, No. 8:14-cv-3035 (M.D. Fla.) at ECF No. 46 (April 29, 2015 order denying defendant's motion to stay pending decision in *Spokeo* because grants of certiorari have no precedential significance).  These rulings are not surprising because "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."  *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

Uber must do more than simply ask for a stay or hypothesize about prejudice. A stay is only warranted if there is "a clear case of hardship or inequity" in being required to go forward with litigation. *Id.*  Critically, the only purported hardship identified by Uber is the costs of defending this case, but such costs are unquestionably insufficient to require a stay.  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (stay vacated).  Plaintiffs, and the putative Classes, however, will be significantly prejudiced by a lengthy, perhaps indefinite, stay.  Uber's Motion should be denied.

## II.   **BACKGROUND**

Plaintiffs brought suit against Uber on December 31, 2014, after they received multiple unsolicited, automated text messages from Uber on their cellular phones.  (SAC at ¶¶ 24-25, 32, 37-41, 51-55, 64-65, 75, 78-83, 91-92.)  Plaintiffs have brought claims on behalf of two classes—Class A and Class B.

Plaintiffs McKinney and Pal seek to represent Class A.  (*Id.* ¶ 100.) Class A Plaintiffs never had any prior communication with Uber of any kind.  (*Id.* ¶¶ 23, 63.)  Uber texted the Class A Plaintiffs out of the blue, even though they never provided their cell phone numbers to Uber or otherwise indicated an interest in any sort of commercial relationship with Uber.  (*Id.* ¶¶ 23-24, 64-64.)  Uber contends that Plaintiff McKinney's telephone number was submitted by "Randy McKinney" (her husband) and, thus, any of its text messages were intended for him.  (Mot. at 3.)  Uber also contends that Plaintiff Pal's telephone number was submitted to Uber by unnamed individuals who purported to "certify" in some undefined way that they had Pal's prior express consent to be texted by Uber.  (*Id.*)  Plaintiffs McKinney and Pal will testify that they never gave anyone express consent to be contacted by Uber on their telephones.  In any event, even if Uber's stories about Plaintiffs McKinney and Pal were accurate, adequate prior express consent was not

-4-

1    provided.

2          Plaintiffs Lathrop, Reilly, Bartolet, and Grindell seek to represent Class B.  The Class B

3    Plaintiffs all allege that they began to sign up as drivers for Uber but decided not to complete the

4    process and did not wish to become Uber drivers.  (SAC, ¶¶ 35, 50, 77, 90.)  During this process,

5    they provided Uber with their cellular telephone numbers.  (*Id.* ¶ 101.)  At no time during this

6    process did any of the Class B Plaintiffs expressly indicate (in writing or orally) that they were

7    consenting to Uber sending them text messages at the number they provided.  (*Id.* ¶¶ 48, 61, 88, 98.)

8          Uber has bombarded Plaintiffs with automated text messages.  (*Id.* ¶¶ 24, 40, 54, 66-70, 80-

9    83, 92.)  Bartolet, for example, received at least 44 text messages from 23 different telephone

10   numbers.  (*Id.* ¶ 92.)  Lathrop received approximately 19 text messages.  (*Id.* ¶ 40.)  Grindell

11   received text messages daily for at least two weeks.  (*Id.* ¶ 54.)

12         Three of the Class B Plaintiffs—Reilly, Bartolet, and Grindell—and one of the Class A

13   Plaintiffs—Pal—replied to Uber's unwanted text messages and asked Uber to stop texting them.

14   (*Id.* ¶¶ 53, 70, 82, 93.)  Even after these Plaintiffs asked Uber to stop texting them, Uber continued.

15   For instance, Grindell sent Uber a text message with the word "Remove," but Uber continued to text

16   her.  (*Id.* ¶ 53.)  Reilly sent a text message to Uber asking, "Can you please take me off this list," but

17   in spite of that, she received another message from Uber asking her to finalize her application.  (*Id.*

18   ¶¶ 82-83.)  Bartolet instructed Uber to "[s]top texting this number," among other requests to stop,

19   but he received at least 29 messages from Uber after making his request.  (*Id.* ¶ 93.)  Pal told Uber,

20   "Stop Regards, True Pal," to which Uber replied, "Uber does not accept messages at this time."  (*Id.*

21   ¶ 70.)

22         Contrary to Uber's assertion that Plaintiffs do not "allege actual injury of *any* kind" (Mot. at

23   21), Plaintiffs' Complaint specifically alleges that "Plaintiffs and members of the Classes also

24   suffered damages in the form of text message, data, and other charges to their cellular telephone

25   plans."  (SAC, ¶ 116.)

26         On July 10, 2015, the FCC issued a comprehensive ruling (the "2015 FCC Order")[5] that

27   _____

28   [5] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of
1991, FCC Declaratory Ruling*, CG Dkt. No. 02-278 (July 10, 2015) (Dkt. 12-1).

addressed 21 petitions relating to the TCPA.  The 2015 FCC Order, among other things, further

clarified the definition of several terms that appear in the TCPA.  Faced with potential liability

under the TCPA and the 2015 FCC Order, some companies in the telecommunications industry

have sought to change the state of the law, and have filed Petitions for Review with the D.C. Circuit

Court of Appeals, asking for a ruling that the 2015 FCC Order is unlawful, "arbitrary," and an

"abuse of discretion."[6]

## III.   LEGAL STANDARD

The standard for a stay pending the consideration of an unrelated case in another court was

set out decades ago by the Supreme Court:

> [T]he power to stay proceedings is incidental to the power inherent in every court to
> control the disposition of the causes on its docket with economy of time and effort
> for itself, for counsel, and for litigants. How this can best be done calls for the
> exercise of judgment, which must weigh competing interests and maintain an even
> balance. True, the suppliant for a stay must make out a clear case of hardship or
> inequity in being required to go forward, if there is even a fair possibility that the
> stay for which he prays will work damage to some one [sic] else. Only in rare
> circumstances will a litigant in one cause be compelled to stand aside while a litigant
> in another settles the rule of law that will define the rights of both.

*Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 248, 81 L.Ed. 153 (1936).  "Judicial

economy" is a necessary, but not alone sufficient, ground for a stay.  *See Dependable Highway*

*Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citing *Lockyer*, 398 F.3d at

1112).  Second, "if there is even a fair possibility that the stay ... will work damage to some one

[sic] else, the stay may be inappropriate absent a showing by the moving party of hardship or

inequity." *Id*. (quoting *Landis*, 299 U.S. at 255 (internal quotation marks omitted)).  In other words,

a stay is inappropriate unless: (1) there is no "fair possibility" of harm to the other side; or (2) the

party seeking the stay can demonstrate "hardship or inequity."  Critically, "being required to defend

a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of

*Landis*." *Lockyer*, 398 F.3d at 1112.  Third, "[a] stay should not be granted unless it appears likely

the other proceedings will be concluded within a reasonable time."  *Dependable*, 498 F.3d at 1066

---

[6] *See, e.g., ACA Int'l v. FCC*, No. 15-1211, at 3 (D.C. Cir. July 13, 2015); *Sirius XM Radio Inc. v. FCC*, No. 15-1218, at 2 (D.C. Cir., July 14, 2015).

(quoting *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979)).  Finally, the party moving for a stay must articulate "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

## IV.   ARGUMENT

### A.   Uber Has Not Shown That Any D.C. Circuit Court Decision Would Even Impact This Case.

Uber contends that a stay is warranted because the D.C. Circuit may review the definitions of certain terms used in the TCPA—"call," "called party," and "capacity"—and that the D.C. Circuit's review could have an impact on this litigation.  (Mot. at 13-18.)  However, the D.C. Circuit will not be considering these issues on a "clean slate."  *See Frydman v. Portfolio Recovery Assocs., LLC*, No. 11-cv-524, 2011 WL 2560221, at *4 (N.D. Ill. June 28, 2011).  Rather, there is a long line of FCC rulings interpreting these terms, dating back up to twelve years to a Report and Order issued in 2003 ("2003 FCC Order").[7]  Since 2003, the FCC has consistently implemented the TCPA and provided additional guidance in the form of orders and declaratory rulings.[8]  Moreover, numerous courts nationwide have found the FCC's rulings persuasive and have applied the TCPA accordingly. In light of this long line of consistent precedent, and the highly deferential standard under which the 2015 FCC Order will be evaluated by the D.C. Circuit, there is only a remote, speculative chance that the D.C. Circuit will vacate the 2015 FCC Order or otherwise impact this litigation.

> i.   *The FCC's clarification that "text messages" are "calls" under the TCPA is well-founded in prior FCC rulings and court decisions across the country.*

The FCC's position that the term "call" includes text message calls (2015 FCC Order at ¶ 107) originated in the 2003 FCC Order, where the FCC found that the TCPA broadly prohibits "*any*

---

[7] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order*, CG Docket No. 02-278, 18  FCC Rcd. 14014 (July 3, 2003). Relevant excerpts of the 2003 FCC Order are attached hereto as <u>Exhibit D</u>.

[8] *See, e.g. In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Declaratory Ruling*, CG Docket No. 02-278, 23 FCC Rcd. 559 (Jan. 4, 2008) (hereinafter "2008 Declaratory Ruling"). The 2008 Declaratory Ruling is attached hereto as <u>Exhibit E</u>.

*call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number" regardless of whether they are voice or text calls.  (2003 FCC Order at ¶ 165) (emphasis in original).  Since that time, and even prior to the 2015 FCC Ruling, the FCC has reaffirmed this position many times.[9]  Numerous courts have considered the FCC's rulings and adopted its interpretation.  The Ninth Circuit has considered the issue, and deferred to the FCC, finding the FCC's holding "reasonable" and "consistent with the purpose of the TCPA[.]" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).  The same is true for the Eleventh Circuit, *see Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) ("[t]he prohibition against auto dialed calls applies to text message calls as well as voice calls"), and courts within the Seventh Circuit.  *See, e.g., Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1000 (N.D. Ill. 2014) ("[a] text message is a 'call' within the meaning of the TCPA").

The precise question of whether the FCC's inclusion of a text message as a "call" under the TCPA is "arbitrary, capricious, or manifestly contrary to the statute" has recently come before the Sixth Circuit in *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015).  In *Keating*, the Sixth Circuit "unhesitatingly afford[ed] deference to the [FCC] holding that a text message should be treated as a 'call' for purposes of the TCPA." *Id.* at 371.  In other words, Uber's request for an indefinite stay turns on its wild speculation that the D.C. Circuit will part ways with twelve years of FCC precedent and numerous other courts of appeals and district courts—all of which have specifically addressed the issue of whether text messages are "calls" under the TCPA and found that they are.

> ii.  *The FCC's explanation that "capacity" includes "potential ability" is deeply rooted in prior FCC rulings.*

Similarly, the FCC's explanation of "capacity" is firmly established FCC precedent.  Uber incorrectly argues that the FCC has "dramatically sought to broaden the statutory definition" of

---

[9]*See, e.g. In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order*, CG Docket No. 02-278, at ¶ 4 (Feb. 15, 2012) (stating that the prohibition on using an ATDS to dial cellular telephone numbers "encompasses both voice and text calls") (hereinafter "2012 FCC Order"). The 2012 FCC Order is attached hereto as <u>Exhibit F</u>.

"capacity." (Mot. at 5.)  Yet, the FCC's explanation of "capacity"—in the context of what dialing equipment constitutes an ATDS—also dates back to the 2003 FCC Order.  (*See* 2003 FCC Order at ¶ 131.)  In that Order, the FCC acknowledged that, under the specific terms of the TCPA, "in order to be considered an 'automatic telephone dialing system,' the equipment need only have the 'capacity to store or produce telephone numbers (emphasis added)[.]'" (*Id*. at ¶ 132) (quoting 47 U.S.C. 227(a)(1)).  In discussing "capacity," the FCC explained that certain types of calling equipment will constitute an ATDS even though they cannot presently store or produce telephone numbers without the addition of "certain software." (2003 FCC Order at ¶ 131.)  The FCC reiterated this position in its 2008 Declaratory Ruling, where it *rejected* arguments that dialing equipment is an ATDS "only when it randomly or sequentially generates telephone numbers[.]" (2008 Declaratory Ruling at ¶ 12.)

The recent 2015 FCC Order only further clarified what the FCC stated in its 2003 Order— "[b]y finding that, even when the equipment presently lacked the necessary software, it nevertheless had the requisite capacity to be an [ATDS], the [FCC] implicitly rejected any 'present use' or 'current capacity' test." (2015 FCC Order at ¶ 16; *see also* 2015 FCC Order at ¶¶ 10–16.)  Uber paints the FCC's efforts to clarify and reiterate its position as a rogue ruling outside its regulatory authority.  Quite the contrary, the FCC's statements flow from consistent FCC precedent, and simply echo Congress's "need to consider changes in technologies," and its concerns that telemarketers may try to circumvent the TCPA.  (*Id*. at ¶ 22 n.79.)

> iii.  *The FCC's conclusion that "called party" does not mean "intended recipient" is not a sea change but, rather, is consistent with the decisions of three federal circuit courts of appeal.*

Uber also argues that this case should be stayed because the D.C. Circuit may hold that "called party" means "intended recipient."  Uber admits that this issue only impacts, at best, one of the six named plaintiffs, Plaintiff McKinney.  (Mot. at 15.)  Plaintiffs dispute Uber's factual claims as to McKinney, but even if Uber is factually correct, this case should not be stopped pending a decision on a narrow legal issue that only affects a sliver of the case.  This is especially true considering that three courts of appeals have rejected Uber's suggestion that "called party" means

"intended recipient."  *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 640, 643 (7th Cir. 2012) (ruling that "called party" means the person subscribing to the number at the time it was called, and rejecting as completely unjustified the argument that "called party" means "intended recipient"); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014) ("[w]e accordingly reject [defendant]'s argument that the 'intended recipient' is the 'called party'"); *Leyse v. Bank of Am. Nat. Ass'n*, No. 14-cv-4073, 2015 WL 5946456, at *4 (3d Cir. October 14, 2015) (reversing because lower court incorrectly held that standing to sue under the TCPA was limited to the "intended recipient" and holding that the "caller's intent" cannot "circumscribe standing" to sue under the TCPA).

The rulings by the Third, Seventh, and Eleventh Circuits mirror the FCC's own rulings.  The FCC has steadfastly maintained that "called party" refers to the party who was actually called, whether that is the cell phone subscriber, *i.e.* the one who subscribes to the cell phone plan, or the person who actually received the call, sometimes called the "customary user."  (2015 FCC Order at ¶ 73 n.264, ¶ 78; 2008 Declaratory Ruling at ¶ 9.)  Given that the FCC's interpretation of "called party" is consistent with the only three courts of appeals of which Plaintiffs are aware that have directly ruled on this issue, Uber's claim that there is "significant disagreement" on this issue is simply false.  (Mot. at n.7.)  As one district court has recently found, "the issue is not nearly as contested as [the defendant] portrays it . . . [T]he Court is not aware of any decision that has found 'called party' to mean 'meant-to-have-called party.'"  *King v. Time Warner Cable*, No. 14-cv-2018, 2015 WL 4103689, at *3 (S.D.N.Y. July 7, 2015).[10]

---

[10]Contrary to Uber's suggestion, most district courts have interpreted the term "called party" consistently with the FCC's rulings and have rejected an "intended recipient" interpretation. *See, e.g., King*, 2015 WL 4103689, at *3 ("The text is clear and unambiguous on its face: *called party* means the party that was called.") (emphasis in original); *see also Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1226 (S.D. Cal. 2014) (rejecting the conclusion that "'called party' means 'intended recipient'"); *Gutierrez v. Barclays Grp.*, No. 10CV1012 DMS BGS, 2011 WL 579238, at *4-5 (S.D. Cal. Feb. 9, 2011) (holding that the TCPA is designed to protect telephone subscribers, which is not limited to the intended recipient).

iv.   *The D.C. Circuit must defer to the FCC's rulings, including its 2015 FCC Order, so long as the FCC articulated a rational connection between the facts found and the choice made.*

Uber fails to mention the extremely deferential standard for review under which the 2015 FCC Order will be evaluated.  When a party challenges an agency order in the D.C. Circuit as being "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), the agency's action will be upheld as long as the agency "articulated a rational connection between the facts found and the choice made."  *ADX Commc'ns of Pensacola*, 794 F.3d at 79 (internal citations omitted).  Such review is "highly deferential," and the agency's action is presumed valid.  *Vernal Enterprises, Inc.*, 355 F.3d at 658.  The D.C. Circuit will defer to the FCC's "interpretation of its own rules" and "reasonable application of its own precedents."  *ADX Commc'ns of Pensacola*, 794 F.3d at 79.  Accordingly, the D.C. Circuit will start with the presumption that the 2015 FCC Order is valid and defer to the FCC's definitions of "call," "called party," and "capacity"—definitions which, as explained above, are supported by well-established FCC precedent as well as numerous court rulings.  It is at best speculative to argue that the D.C. Circuit will contradict multiple other circuit courts, as well as established FCC precedent, given the highly deferential standard of review that applies.

v.   *Numerous courts have declined to stay litigation pending review of FCC orders.*

Numerous courts—including the court in *Hooker v. Sirius XM Radio, Inc.* (*see* Exhibit A)—have rejected stays pending a challenge to an FCC order.[11]  Time and again, courts have noted that a stay was not warranted in light of the consistent body of decisional law on the very TCPA issues that Uber claims are somehow in flux.  Many of these cases involved a stay pending a petition

---

[11] *See, e.g., Harnish v. Frankly Co.*, No. 14-cv-02321, 2015 WL 1064442, at *4 (N.D. Cal. March 11, 2015) ("[T]he courts' interpretation of ATDS have been consistent with the FCC, and a stay for an indeterminate amount of time would result in delay and prejudice towards Plaintiff"); *Espejo v. Santander Consumer USA, Inc.*, No. 11-cv-89876, 2014 WL 4347185, at *1-3 (N.D. Ill. Aug. 28, 2014) (denying a stay under the primary jurisdiction doctrine); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 101 (N.D. Ill. 2013) ("a stay is not warranted . . . because the FCC has already ruled that a predictive dialer constitutes [ATDS] equipment three times"); *Ayers v. Verizon Commc'ns, Inc.*, No. 14-cv-626, 2014 WL 2574543, at *2 (M.D. Fla. June 9, 2014); *Hofer v. Synchrony Bank*, No. 14-cv-1865, 2015 WL 2374696, at *4 (E.D. Mo. May 18, 2015) ("[A]ny ruling by the FCC would come only after a lengthy delay. Such a delay would prejudice [Plaintiff] as well as potential class members.")

1   directly to the FCC, but the courts' reasoning is equally applicable here.  For example, in

2   *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12-cv-5490, 2013 WL 4782161 (N.D. Ill. Sept. 6,

3   2013), the defendant moved for a stay pending resolution of a petition that it filed with the FCC

4   asking the FCC to revisit its regulations on fax advertisements.  *Id.* at *1–2.  There, as here, the

5   movants argued that the issues addressed in their petition would be "dispositive of the case" and that

6   staying the case pending guidance on those issues would "promote the interests of judicial economy

7   and conserve party resources[.]"  *Id.* at *1.  The *Whiteamire* court denied the request, finding that

8   because the FCC's position supporting the regulations was "clear and unwavering," the "chances"

9   of the regulations being "overrul[ed] . . . appear[ed] remote."  *Id.* at *2.  The court found that

10  because the defendant failed to establish that an FCC ruling repealing the regulations was "likely,"

11  it had "failed to establish that a stay would be an appropriate means of conserving judicial

12  resources."  *Id.*

13          Here, as in *Whiteamire*, the chance that the D.C. Circuit will overrule the FCC on any of

14  these issues is remote at the very best.  An indefinite stay on such a speculative basis—where a

15  party merely *hopes* that an appellate court in a different circuit might change an agency's

16  rulemaking—is unwarranted.  *See Itex, Inc. v. Mount Vernon Mills, Inc.*, No. 08 CV 1224, 2010 WL

17  3655990, at *2 (N.D. Ill. Sep. 9, 2010) (finding it "overly speculative" to stay a case based on the

18  chance that a patent, which had already been held valid twice, would be invalidated by another court

19  examining the same patent); *see also Dister v. Apple-Bay East, Inc.,* No. C 07-01377 SBA, 2007

20  WL 4045429, at *5 (N.D. Cal. Nov. 15, 2007) ("[O]nly in rare circumstances will a litigant in one

21  case be compelled to stand aside while a litigant in another settles the rule of law that will define the

22  rights of both.") (internal citation and brackets omitted); *Morgenstein v. AT & T Mobility LLC*, No.

23  CV 09-3173 SBA, 2009 WL 3021177, at *2 (N.D. Cal. Sept. 17, 2009) ("Defendant's request that

24  the Court indefinitely stay the proceedings pending the Ninth Circuit's resolution of [purportedly

25  relevant appeals] because the rulings could 'potentially' be dispositive in the present case is

26  unpersuasive."); *Kaltwasser v. Cingular Wireless LLC*, No. C 07-00411 JF (PVT), 2010 WL

27  2348642, at *3 (N.D. Cal. June 8, 2010) (citing *Morgenstein* and *Dister* for same propositions).

28  Because Uber has failed to establish that a ruling overturning the 2015 FCC Order on any of these

issues is "likely," there is nothing to suggest that a stay would actually conserve "judicial resources." *Whiteamire*, 2013 WL 4782161, at *2.

Uber's argument that the D.C. Circuit's ruling will influence this case is even more speculative in light of the fact that it relies on the assumption that the D.C. Circuit has the issues discussed above squarely before it, when it actually does not. The 2015 FCC Order addresses roughly 12 separate issues regarding the TCPA, and there is no guarantee that the D.C. Circuit will reach the merits of the specific issues that Uber raises in its Motion to Stay. *See, e.g., Dish Network, LLC v. FCC*, 552 F. App'x 1, 1 (mem) (D.C. Cir. Jan. 22, 2015) (dismissing a petition for review on jurisdictional grounds and declining to reach the substance of the FCC's guidance). Therefore, any ruling by the D.C. Circuit, to the extent the court even reaches the merits of the Petition for Review, might have no effect and be completely irrelevant to this litigation. And even if the D.C. Circuit does address the merits of the Petition, as demonstrated above, it will defer to the FCC's own precedents and likely dismiss the Petition. In effect, Uber is asking this Court to stay this case pending an event that, in all probability, will never occur. A stay on such a speculative basis would be entirely improper.

### B.   There is No Basis For Staying This Case Pending *Spokeo*.

#### i.   *Plaintiffs have alleged actual injury, making* Spokeo *inapposite.*

Uber dedicates two-and-a-half pages of its lengthy Motion to its secondary argument that the case should be stayed pending the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015). However, the foundation of Uber's argument that *Spokeo* may be dispositive here—that none of the Plaintiffs have suffered any actual injury—is inaccurate. All of the Plaintiffs have alleged actual injury: Plaintiffs specifically alleged that they "suffered damages in the form of text message, data, and other charges to their cellular telephone plans." (SAC, ¶ 116.) Plaintiffs also alleged that the members of the putative classes have suffered these injuries as well. *Id.*

Uber has not, because it cannot, proffered any evidence to dispute Plaintiffs' allegations. At best, Uber weakly states that it is "unlikely" that Plaintiffs will be able to allege actual injury. (Mot. at 20.) Not only is that false (Plaintiffs have alleged actual injury), it would be extremely

prejudicial to Plaintiffs and the putative Class members to stop this case in its tracks based solely on Uber's pipe dreams.

> ii.      There is no reasoned basis to believe that any Supreme Court opinion in *Spokeo* *will be as broad as Uber would need to impact Plaintiffs' claims here, let alone dispose of them.*

The facts of this case are vastly different than the facts in *Spokeo*, making it even more implausible that the Supreme Court's *Spokeo* decision will have any impact on this case, much less dispose of all six of the Plaintiffs' claims.  Defendant Spokeo is accused of having furnished inaccurate but *favorable* information about the consumer.  In other words, the *Spokeo* plaintiff had difficulty in showing actual *harm* because Spokeo's misreports made him look better—wealthier and better educated—than he actually is.  The *Spokeo* plaintiff did not even allege that any particular person ever viewed his profile or even saw the inaccurate information that Spokeo published.  No similar facts are present here.  Each of the Plaintiffs alleged that Uber's text spam was sent to a cell phone that is charged for incoming calls and texts and each of the Plaintiffs alleged that he or she suffered harm in the form of such charges.  There is no possibility here that, unlike the plaintiff in *Spokeo*, the defendant's conduct may have benefitted the Plaintiffs.

Furthermore, *Spokeo* involves very detailed and specific subsections of the FCRA that have nothing whatsoever to do with this TCPA case.  As explained above, the *Spokeo* complaint centers on the fact that the information Spokeo put on the internet about the plaintiff was *favorably* inaccurate. Accordingly, the plaintiff sued Spokeo under Section 1681e(b) of FCRA, claiming that Spokeo did not maintain reasonable procedures to ensure the maximum possible accuracy of information about him. He also claims that Spokeo did not obtain a necessary certification from its users that they would comply with the FCRA.  Thus, even if the Supreme Court were to rule in favor of Spokeo, the chance that it will have any application to this case—which involves a different statute altogether and different facts—is very remote.  For instance, the Supreme Court may, at most, rule that publishing inaccurate, but *favorable*, information about someone, and failing to obtain certificates of compliance with the FCRA, does not amount to a concrete injury sufficient to confer Article III standing.  Such a holding would have no impact on this case.  Uber's requested

-14-

stay pending *Spokeo* will only delay discovery, class certification, and a merits determination.  It will not end the litigation altogether, as Uber disingenuously pretends.

> iii.   The Supreme Court's mere grant of certiorari in Spokeo *does not say anything about how the Supreme Court will rule or how it may impact this case, and does not support a stay.*

It is telling that courts presiding over FCRA statutory damages class actions—cases (unlike this case) that involve the same statute—have declined to grant stays pending *Spokeo*.  *See Dreher v. Experian Info. Solutions, Inc.*, No. 3:11-cv-624 (E.D. Va.) at Dkt. No. 344 (April 30, 2015 Order denying defendant's motion to stay pending decision in Spokeo) (attached hereto as Exhibit B); *Speer v. Whole Foods Market Grp., Inc.*, No. 8:14-cv-3035 (M.D. Fla.) at Dkt. No. 46 (April 29, 2015 Order denying defendant's motion to stay pending decision in Spokeo because grants of certiorari have no precedential significance) (attached hereto as Exhibit C).  These rulings make Uber's request in this TCPA case all the more groundless.

As noted in *Speer*, the grant of a writ of certiorari is of no legal significance and it does not mean that the Ninth Circuit's decision in *Spokeo* will be overturned.  Nor does it mean that the Supreme Court will even decide the issue on which it granted review.  And it certainly does not support the imposition of a lengthy state in an unrelated case.  This is especially true considering that the Ninth Circuit's *Spokeo* decision tracks every other federal circuit's decision that violation of a consumer protection statute that allows for statutory damages when harm is hard to quantify confers Article III standing.  *See note 4, supra.*[12]

---

[12]Uber also argues that, should Spokeo prevail before the Supreme Court, the Plaintiffs here will "also need to establish actual injury to absent class members in order to certify a class."  (Mot. at 20.)  Uber is wrong.  In the Ninth Circuit, a class representative's Article III standing is sufficient to invoke federal court jurisdiction, even if other class members, including absent class members, do not have standing. "In a class action, standing is satisfied if at least one named plaintiff meets the requirements. . . . Thus, we consider only whether at least one named plaintiff satisfies the standing requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *see also Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 865 (9th Cir. 2014). More recently, "the Ninth Circuit insisted that only the standing of the representative party matters anyway: '[O]ur law keys on the representative party, not all of the class members, and has done so for many years.'" *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 476 (S.D. Cal. 2013) (citing and quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011)). Uber cites *Mazza v. Am. Honda Motor*

-15-

**C.      Uber Will Not Be Prejudiced By Continuing Litigation, But Plaintiffs And The Putative Classes Will Be Significantly Harmed.**

> *i.        Uber has failed to carry its burden of showing a clear case of hardship or inequity.*

Uber cannot articulate any real prejudice that it would suffer by moving forward.  Uber merely states that "staying this case will allow the parties and the Court to avoid the unnecessary costs and expense to litigate" (Mot. at 13), but "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."  *Lockyer*, 398 F.3d 1098, 1112; *see also, e.g., Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp.*, No. C-09-00882 RMW, 2009 WL 5108578, at *2 (N.D. Cal. Dec. 18, 2009) (quoting *Lockyer* for same proposition); *California Trout, Inc. v. U.S. Bureau of Reclamation*, ___ F. Supp. 3d ____, No. 14-7744 FMO (PLAx), 2015 WL 4477831, at *10 (C.D. Cal. June 22, 2015) (same); *Abassi v. BAE Sys. Info.*, No. 10cv1745 BEN (AJB), 2011 WL 4443340, at *2 (S.D. Cal. Nov. 1, 2010) (same). For this reason alone, Uber's Motion should be denied.

---

*Co.*, 666 F.3d 581, 594 (9th Cir. 2012), but numerous courts in the Ninth Circuit have recognized the tension between the single sentence in *Mazza* (cited by Uber) and other Ninth Circuit authority, including *Bates*.  *See, e.g., Waller*, 295 F.R.D. at 475–80 (collecting district court cases addressing this apparent contradiction and citing *Walker v. Life Ins. Co. of the Sw.*, No. 10–9198, 2012 WL 7170602 (C.D. Cal. Nov. 9, 2012)); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 474–75 (C.D. Cal. 2012); *Tietsworth v. Sears, Roebuck and Co.*, No. 0900288, 2012 WL 1595112, at *14 (N.D. Cal. May 4, 2012); *Baxter v. Rodale*, No. 12–00585, 2012 WL 1267880, at *2 (C.D. Cal. Apr. 12, 2012); *In re TFT–LCD (Flat Panel) Antitrust Litig.*, No. 07–1827, 2012 WL 253298, at *1 n. 2 (N.D. Cal. Jan. 26, 2012); *Ries v. Az. Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012); *Arnott v. United States Citizenship and Immigration Servs.*, 290 F.R.D. 579, 584 (C.D. Cal. 2012)). This Court has recognized that *Mazza* does not overrule *Bates* and require that every class member have Article III standing.  *See Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 191 (N.D. Cal. 2015), *leave to appeal denied* (May 12, 2015) ("While these rules present some tension, the rule stated in *Mazza* can be reconciled with the rule of *Bates*. A rule that plaintiffs seeking certification must show that each class member has standing would plainly contradict *Bates*, but it is not clear that *Mazza* contemplates such a requirement. […] In light of the Ninth Circuit's repeated statements that the issue of standing does not focus on individual class members, the Court construes *Mazza* as holding only that a class cannot be defined in a way that facially disregards the requirements of Article III standing[.]")

Furthermore, regardless of the decisions by the Supreme Court and the D.C. Circuit, the parties will still need to obtain the relevant facts in discovery, as well as the expert opinions necessary, for the Court to apply the law to the undisputed facts.  For example, even if the D.C. Circuit changes or invalidates the FCC's *interpretations* of terms in the TCPA (like ATDS), the *elements* of a TCPA claim will remain the same.  *See* 47 U.S.C. § 227(b)(1)(A).  Discovery is still necessary and this Court must still determine whether the calling equipment that Uber actually used qualifies as an ATDS under the TCPA and whether the people who received those messages ever gave prior express consent to receive them.  Even if the Supreme Court overturns the Ninth Circuit's decision in *Spokeo* in such a manner that impacts this case, this Court will still have to analyze whether Plaintiffs have Article III standing to pursue claims against Uber.

While Uber cites to *Chruby v. Global Tel Link Corp.*, No. 14-cv-456, 2015 WL 4740633, at *2 (E.D. Va. Jan. 14, 2015), in support of its argument that a stay would conserve the parties' resources, Uber fails to mention that the court in that case lifted the stay a mere two months later. *Chruby v. Global Tel Link Corp.*, No. 14-cv-456, 2015 WL 4740790, at *3 (E.D. Va. March 10, 2015).  In explaining why it lifted the stay, the *Chruby* court stated that it was "not confident that an indefinite stay pending the resolution of [the petition before the D.C. Circuit] would not unjustly burden Plaintiff and those similarly situated."  *Id. Chruby* supports Plaintiffs' argument that granting Uber's request for an indefinite stay would be prejudicial to Plaintiffs.[13]

Because staying this case pending a D.C. Circuit or Supreme Court ruling will not materially impact either the type or amount of discovery required, the more effective and efficient course of action would be to permit the parties to continue with discovery without any unjustified delay.

---

[13]Nor is Uber's citation to *Barron's Outfitters Inc. v. Big Hairy Dog Info. Sys.*, No. 14-cv-4335, Dkt. 30, at 2 (D.S.C. June 19, 2015), any more convincing. Unlike the petitions relied on by Uber in this Motion that *generally* challenge the 2015 FCC Order, the petition at issue in *Barron's* was a request for a waiver from the FCC for the specific violations committed by the defendant, and was based on the specific facts of that case. *See* Petition for Waiver filed with the FCC by defendant Big Hairy Dog Info. Sys., 14-cv-4335, Dkt. 20-13, at 1, 5 (E.D. Va. March 27, 2015) (attached hereto as Exhibit G). Accordingly, a favorable ruling on the petition in *Barron's* would *necessarily* have spoken directly to the conduct at issue. The same cannot be said of the Petitions Uber relies on here, which may not even be relevant in this case unless the D.C. Circuit chooses to address the specific issues relevant to this litigation. And even then, any such ruling is unlikely to be determinative of Uber's liability in the same way as a ruling in *Barron's* would have been.

ii.     *Plaintiffs and the putative classes will be severely prejudiced by the requested stay.*

A stay of this case pending a ruling by the D.C. Circuit and the Supreme Court would only serve to delay this litigation and cause prejudice to Plaintiffs.  Such a stay would be extremely lengthy, if not nearly indefinite, as the D.C. Circuit is unlikely to rule on the Petition for Review until over a year from now.[14]  The 2015 FCC Order is long and complex; at 138 pages including appendices, the Order resolved 21 requests for clarification and addressed roughly 12 separate legal issues.  (2015 FCC Order at ¶ 2.)  As such, it will take the D.C. Circuit a substantial amount of time to consider and rule on the Petition.  Further, the Petition before the D.C. Circuit is only at a very early stage procedurally.  Uber admits that the D.C. Circuit's decision is unlikely to occur until 2017.[15]  Uber is thus asking this Court to stay this case at the very least for over a year, and with the inevitable extensions of time that are typical in the appellate process, potentially as long as 18 months.

Even this conservative timeframe does not account for a potential appeal to the Supreme Court if and when the D.C. Circuit rules on the Petition—a point that Uber ignores entirely.  Accepting Uber's logic would require this Court to extend the stay pending Supreme Court review, which would further delay this case nearly indefinitely.  *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000) (in denying stay, observing that although the stay in question had only lasted for five months (at the time of the decision), "its term is indefinite" because even once the Ninth Circuit resolved the other appeal, "if the Supreme Court should grant certiorari to review this court's decision . . . the stay could remain in effect for a lengthy period of time, perhaps for years . . .").[16]

Uber is wrong to suggest that Plaintiffs will not be prejudiced by this delay.  The stay Uber requests would derail this litigation for an unreasonably excessive and indeterminate length of time.

---

[14]The Supreme Court's decision in *Spokeo* should be issued by June, 2016, but Uber's Motion intimates that the stay would last until both the Supreme Court and the D.C. Circuit issue their respective opinions.

[15]Uber states that the median time until disposition in the D.C. Circuit is fourteen months. (Mot. at 18, n.8.)

[16]Although *Yong* involved the stay of a habeas case, "the principles of *Yong* have been applied to other less compelling situations."  *ASUSTek Computer Inc. v. Ricoh Co., Ltd.*, No. C 07-01942 MHP, 2007 WL 4190689, at *3 (N.D. Cal. Nov. 21, 2007).

Unlike the ordinary delay inherent in litigation, this extended, "open-ended stay will likely cause delay and prejudice to Plaintiffs' case." *See Molnar v. NCO Fin. Sys., Inc.*, No. 13-cv-00131, 2015 WL 1906346, at *4 (S.D. Cal. April 20, 2015) (denying motion to stay on primary jurisdiction grounds where "there is nothing to suggest the FCC will imminently rule" on the issues before it). Stays increase the "risk that evidence will disappear and witness memories will fade[.]" *McColm v. San Francisco Hous. Auth.*, No. C 02-5810 PJH, 2007 WL 1342502, at *5 (N.D. Cal. May 8, 2007); *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale.") This is particularly concerning in putative class actions such as this one, where the ability to reach class members diminishes over time, and taking an additional year to determine whether a class should be certified and to notify that class would have an objectively measurable harm on putative class members.[17]

Staying this case for an unknown but undoubtedly inordinate amount of time would prevent the parties from going forward with discovery and preparing for class certification.  This would be highly prejudicial to Plaintiffs and the putative Classes.  Plaintiffs have suffered a concrete harm by having their legal rights violated by Uber's willful violation of the TCPA—a statute designed to protect the rights of consumers. The longer this harm exists without redress, the greater the prejudice to Plaintiffs and the putative class members. Indeed, Rule 23 of the Federal Rules of Civil Procedure specifically notes that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A) (emphasis added).  The lengthy stay sought by Uber flies directly in the face of Rule 23's insistence that class certification be timely decided.

Contrary to Uber's repeated claims, this case will proceed in litigation regardless of what the D.C. Circuit or the Supreme Court decides.  Both this Court and the public have an interest in this

---

[17]While Plaintiffs' filing of this lawsuit may have led to Uber "block[ing] the phone numbers at issue from receiving additional text messages to ensure they do not receive future text messages" (Mot. at 19), the same cannot be said for any other potential class members who may still be receiving the unauthorized messages and continue to suffer damages until Uber fixes the defects in its system.  This is especially true given that Uber has not indicated that it will cease sending text messages in violation of the TCPA while this case is stayed.

1   case moving forward in an expeditious manner. Uber's requested stay works directly against this

2   interest and should be denied.

3   **V.      CONCLUSION**

4        For the reasons stated above, Uber's Motion to Stay should be denied.

5

6   Dated: November 27, 2015                         Respectfully submitted,

7

8                                                     /s/ Hassan A. Zavareei
                                                     Hassan A. Zavareei (SBN 181547)
9                                                    hzavareei@tzlegal.com
                                                     **TYCKO & ZAVAREEI LLP**
10                                                   2000 L Street, N.W., Suite 808
                                                     Washington, DC 20036
11                                                   Tel.: (202) 973-0900
                                                     Fax: (202) 973-0950
12
                                                     *Attorney for Plaintiffs*
13                                                   *James Lathrop, Julie McKinney,*
                                                     *Jonathan Grindell, Sandeep Pal,*
14                                                   *Jennifer Reilly, and Justin Bartolet*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STAY
Civil Action No. 14-cv-05678-JST

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that, on November 27, 2015, I caused the foregoing document to be filed electronically through the Court's CM/ECF System and served on all counsel of record.

<u>/s/ Hassan A. Zavareei</u>
Hassan A. Zavareei
*Attorney for Plaintiffs*