**VIA CM/ECF**

December 23, 2015

The Honorable Jon S. Tigar
San Francisco Courthouse
Courtroom 9 - 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *Lathrop et al. v. Uber Technologies, Inc.*, Case No. 3:14-cv-05678-JST

Dear Judge Tigar:

      The parties disagree about whether Uber must produce: (1) logs of text messages sent to putative class members; and (2) additional screen flows from its mobile application and mobile and desktop websites. The parties further disagree about whether the Court should require Uber to appear for at least two 7-hour Rule 30(b)(6) depositions.

### 1. Text Logs (Request Nos. 13, 14, 15, and 23)

      <u>Plaintiffs' Position</u>:  Contrary to Uber's misstatements (*see* Dkt. 78-1 at 18), Plaintiffs have *not* requested all text messages ever sent by Uber. Instead, Plaintiffs requested logs for the following universe: messages sent by Uber (during the Class Period) to all mobile-terminating cellular telephone numbers related to: (1) recruiting Uber drivers and/or the process of applying to become a driver and (2) referring new drivers and/or Uber's "refer a friend" program. These logs would also capture messages sent even after the recipients revoked any purported consent.

      The requested text logs are narrowly tailored to Plaintiffs' claims[1] and are directly relevant to, amongst other things, class certification, Uber's use of an automated telephone dialing system ("ATDS") and damages. Production of text logs is a standard part of discovery in TCPA litigation. They can be used to (a) calculate the number of Class members, (b) identify the Class members, (c) ascertain the number of TCPA violations, (d) determine which Class members asked Uber to stop texting them, but still received more texts from Uber, and (e) show that Uber used an ATDS to send its text messages. Uber does not argue that the requested logs are irrelevant, nor does it dispute that production of such logs is commonplace in TCPA cases. Uber's citation to non-TCPA case *Dziennik*, *infra*, is inapposite: Plaintiffs are not seeking the logs to recruit more class representatives. Uber's blanket argument that the logs are not relevant to class certification is non-sensical and the 37-year old non-TCPA case it cites, *Oppenheimer Fund*, includes no such holding. Even if, as Uber claims, the logs do not identify individuals by name, the logs can be used in concert with other sources to bridge any gap.

      Although Uber has claimed, for months, that it was working to carve out these text logs, it recently informed Plaintiffs that it is *impossible* to do so. Yet, nowhere in Uber's submission (including the Declaration of Michael Kadin) does Uber actually state that this task is

---

[1] Uber does not explain or support its contention that the requests are "far from narrowly tailored."

impossible. Uber admits that the log files are searchable (just not "easily") and there are only 100 topics that need to be searched. The thrust of Uber's new burden (rather than impossibility) argument is that the volume of data is enormous—yet, running queries or scripts across large amounts of data only increases the time it takes to get results, not any added burden. Uber's claims of burden are especially dubious considering that it is one of the foremost technology companies in the world—named by MIT as one of the 50 Smartest Companies in 2015 and called "A Paragon of Operational Innovation" by Wharton Magazine. Further, Uber has used Twilio, Inc.—a leading company that allows software developers to rapidly and programmatically send and receive thousands of text messages—to send the "overwhelming majority" of the messages at issue, and Uber could obtain the logs from Twilio. According to Plaintiffs' expert,[2] who has been involved in over a hundred TCPA cases, Twilio regularly produces the types of text logs sought by Plaintiffs.[3] Uber should be ordered to produce (or obtain from Twilio) the specific logs requested by Plaintiffs. Alternatively, Uber should be ordered to produce all of its logs to Plaintiffs or a third-party vendor to perform the work that Uber refuses to do.

Defendant's Response: This is not a "standard" TCPA case. Uber does not send text messages to random or purchased lists of recipients. Instead, Uber sends text messages in a variety of contexts, many of which have nothing to do with Plaintiffs' claims. *See* Declaration of Michael Kadin ¶ 2.[4] Plaintiffs insist that their request for logs is "narrowly tailored." However, the categories requested by Plaintiffs are far from "narrowly tailored" and such messages are simply not separately identifiable. As Uber has repeatedly explained to Plaintiffs' counsel, it is not possible to automatically retrieve lists of all text messages Plaintiffs are seeking. *Id*. ¶ 17-18; *see also* Dkt. No. 78 at 4. Text messages that flow through Uber's servers are logged together with other server events and each month Uber logs over a petabyte of data. Kadin Decl. ¶ 3, 9. Log file entries reflecting text messages relevant to this lawsuit are intermingled with log file entries reflecting myriad other irrelevant events. *Id.* ¶ 4-5. The only way to retrieve the information requested by Plaintiffs with accuracy is a <u>manual</u> search of these log files to locate a subset of potentially relevant log files relating to text messages. This subset, estimated to exceed over ten terabytes of data in the aggregate, would then also need to be manually reviewed—a practical impossibility. *Id* ¶ 17.[5]

The enormous burden associated with producing logs to Plaintiffs far outweighs any marginal relevance to Plaintiffs' claims. Plaintiffs are not entitled to the logs merely to "identify the class members" prior to certification. *See Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI)(MDG), 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) (collecting cases). And the logs are not relevant to issues of class certification under Rule 23. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 (1978) (lists of putative class members not "within the scope of

---

[2] Should the Court find it appropriate, Plaintiffs can submit a declaration of their expert on these issues. However, Plaintiffs did not receive a draft of Uber's Declaration of Michael Kadin until 2:22 AM EST this morning and did not have time to prepare a declaration in response.

[3] Plaintiffs have subpoenaed Twilio, but Twilio has currently refused to produce the information on the basis that Uber *can* produce it and, as such, Twilio, as a non-party, should not be required to.

[4] The contents of the declaration should be of no surprise to Plaintiffs as it merely reiterates what Uber has previously tried to explain to Plaintiffs with no avail. Plaintiffs were apprised of the fact that Uber would be filing the declaration no later than around 9 a.m. PST on Monday.

[5] *See also Megabytes, Gigabytes, Terabytes... What Are They?*, http://www.whatsabyte.com/ ("Ten Terabytes could hold the printed collection of the Library of Congress.").

legitimate discovery" unless relevant to issues under Rule 23).  The log files may identify phone numbers or user ID numbers associated with individual text messages, but they do not identify individuals.  *See* Kadin Decl. ¶ 18, Ex. A; *see also Smith v. Microsoft*, 297 F.R.D. 464, 472 (S.D. Cal. 2014) (proposed class was not ascertainable where log files failed to identify individuals, as opposed to phone numbers to which texts were sent); *Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG, 2015 WL 5604400, at *1 (S.D. Cal. Sept. 23, 2015).  Nor do the log files identify which text messages were actually received by a particular individual/phone number and which messages were filtered or failed to be delivered.  Kadin Decl. at ¶ 6; *see also Smith*, 297 F.R.D. at 472.  Finally, the log files are entirely irrelevant to whether Uber used an ATDS to send text messages.

In this letter, Plaintiffs for the first time seek wholesale production of *all* of Uber's text logs, for their "expert" to review.  This request is unreasonable and untenable.  By way of example, Uber could very well be barred by federal criminal law from disclosing to Plaintiffs—let alone a third party—the content of some text message communications in its log files that are not directed to or from Uber.  *See* 18 U.S.C. §§ 2701, *et seq.*  Kadin Decl. ¶ 5.  As another example, Uber's log files contain text messages wherein users transmit their personal identifying information to Uber.  *Id.*  Even if there were a way to mitigate privacy concerns—which there is not—the sheer volume requested renders Plaintiffs' demands unreasonable.  *See Long v. Immigration & Customs Enf't*, No. CV 14-00109 (APM), 2015 WL 8751005, at *12 (D.D.C. Dec. 14, 2015) (holding it was unduly burdensome to compel a federal agency to produce database snapshots containing over five terabytes of data).

### 2. Images of Uber's Application and Websites (Request Nos. 28, 29, 33 and 34)

<u>Plaintiffs' Position</u>:  Plaintiffs asked Uber to produce: (1) Images of Uber's mobile application and mobile and desktop websites, including all sub-pages, and including exemplars of screens presented to prospective drivers at every step of the process used to apply to become a driver, including changes made to the aforementioned websites or application over time and any geographic variations; and (2) Images of Uber's mobile application and mobile and desktop websites to which Uber users are directed, including all sub-pages, and including exemplars of screens presented to users at every step of any process by which users provide Uber with the phone numbers of prospective drivers, including changes made to the aforementioned website or application over time and any geographic variations.

Uber contends that it does not possess *any* responsive internal documents showing these screenflows over time, but admits that it can recreate them.  Indeed, during the parties' meet-and-confer efforts, Uber suggested a "compromise" solution, offering to access its codebase for a given page and recreate every variation of that page over time.  Dkt. 78-1 at 8.  Encouraged, Plaintiffs identified a specific set of URLs for specific dates.  *Id.* at 13-14.  Uber recanted, claiming it was impossible to do this work, *Id.* at 19, and now claims it would be difficult.

Uber contends that the best evidence of what its websites (but not its mobile application) looked like over time is on the Internet Archive Wayback Machine  (https://archive.org/web) ("Wayback").  Wayback's records are woefully deficient in at least three key respects:  (1) Wayback only keeps snapshots of certain pages of websites at limited points in time, not all screenflows over the Class Period; (2) for pages with interactive elements (*i.e.* drop-down menus), Wayback's archived pages do not always respond to user input in the same manner as

the original pages; and (3) Wayback has *no* records related to Uber's mobile application.[6] It defies logic that Uber, a $40 billion company whose business centers on its website and application, has no records that show how its website and application appeared over time.

Defendant's Response: Uber does not maintain a repository of images or screen captures of its websites over time. *See* Kadin Decl. ¶ 19.[7] Thus Uber does not have what Plaintiffs are demanding it produce. The best evidence of past iterations of Uber's websites is the archive.org repository, from which Uber has produced all known/relevant website captures to Plaintiffs. *Id.* ¶ 24. Although Plaintiff complains that archive.org does not have records relating to Uber's mobile application, potential drivers cannot sign up for an account on the Uber App. Instead, potential drivers are re-directed from the Uber App to Uber's web sign-up page. *Id.* ¶ 25.

Uber initially explored the possibility of reconstructing webpages that existed at the time the Plaintiffs signed up to drive using the Uber platform. After further internal review, it became apparent that such efforts were extremely burdensome, would require an inordinate amount of engineering time, and the resulting reconstructions would be incomplete and likely inaccurate. *See id.* ¶ 22-23. For example, reconstructing one of the web pages at issue at a single point in time requires two weeks of engineering time for an engineer who is familiar with the codebase at that point in time. *Id.* ¶ 23. Further, Plaintiffs have specified that even if Uber reconstructed the webpages for all named Plaintiffs, they would not view such efforts sufficient. Instead, Plaintiffs have requested over 30 reconstructions, or approx. 60 weeks of engineering time.

Plaintiffs are not entitled to website reconstructions merely because Uber raised the idea as a possible avenue of cooperation, before it was able to fully investigate the resources required and whether such reconstructions would be accurate. Uber is required only to produce documents that already exist and is not required to create documents for production. *See* Fed. R. Civ. P. 34; *Paramount Pictures Corp. v. Replay TV*, CV 01–9358 FMC(Ex), 2002 WL 32151632, at *2 (C.D. Cal. May 30, 2002) ("A party cannot be compelled to create, or cause to be created, new documents solely for their production."). Plaintiffs cannot compel Uber to produce information it does not have.

### 3. Fed. R. Civ. 30(b)(6) Depositions of Uber

Plaintiffs' Position: On June 15, 2015, Plaintiffs noticed the 30(b)(6) deposition of Uber. Plaintiffs subsequently had numerous discussions with prior counsel for Uber about the number of witnesses that Uber may designate and the content and timing of the deposition(s). As part of that negotiation process (and not because of any rule violation), Plaintiffs offered to withdraw its single all-encompassing Rule 30(b)(6) notice and serve targeted notices aimed at specific deponents. However, Uber repeatedly changed its position on its designees and the number of depositions, and the parties could not resolve those issues before prior counsel's withdrawal. When Uber's current counsel joined the case, Plaintiffs promptly restarted these talks. The need for a deposition on discovery issues crystalized as Uber took the stance that the crucial discovery

---

[6] Plaintiffs are entitled to explore, via deposition, Uber's new claim that prospective drivers cannot begin the application process via the Uber App and, instead, are always redirected to the website.

[7] Uber has grown exponentially—from 75 employees in 2012 to 550 in 2014 to over 4,000 by July of this year. As Uber has explained repeatedly to Plaintiffs, Uber is a young company that does not have the same procedures that a larger, established company might. Plaintiffs' gaudy reference to Uber's purported valuation is not relevant to this dispute and belies the true reason why Uber finds itself subject to the types of claims at issue here.

discussed herein was inaccessible and/or unavailable. Although Uber agreed to a deposition on discovery issues on December 15 (only after the parties' most recent conference with the Court and, contrary to Uber's claim, with no conditions on other agreements), it recanted days later. Instead, Uber suggested that the parties participate in an informal meeting. That is unworkable, however, as Plaintiffs must move expeditiously to obtain the evidence necessary to evaluate Uber's claims of burden or so-called impossibility and, if needed, seek further relief. That evidence must be gathered via a deposition, not an informal meeting. The case cited by Uber does not stand for the proposition that a self-serving eleventh hour declaration is sufficient. *See Wells*, *infra* (allowing deposition). In a case that is actually on-point, the court held that plaintiffs are entitled "to take the deposition of any affiants or declarants concerning document retention and storage and the searches made for those documents." *Local Union No. 40 of the Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. Car-Win Const., Inc.*, No. 12 CIV. 4854 LTS MHD, 2014 WL 61443 (S.D.N.Y. Jan. 2, 2014).

Plaintiffs request that Uber be ordered to appear for Rule 30(b)(6) deposition on at least two separate 7-hour days. Plaintiffs have noticed a deposition of Uber on issues related to discovery as well as Uber's ATDS for January 20, 2016 (a date that Uber agreed to, prior to recanting). It is imperative that Plaintiffs obtain this testimony several weeks in advance of the deadline for their expert reports, which is currently February 19, 2016. Plaintiffs have also noticed a deposition of Uber on the remaining substantive issues for March 15, 2016.

Defendant's Response: Plaintiffs sought a 30(b)(6) deposition while responses to Plaintiffs' first discovery requests were still pending. This tactic "puts the cart before the horse" and is disfavored by courts. *See Miller v. York Risk Services Group*, No. 2:13-cv-1419, 2014 WL 1456349 (D. Ariz. Apr. 15, 2014). After withdrawing their original notice because it did not comply with the local rules, Plaintiffs again raised the issue of a 30(b)(6) deposition many months later, in connection with the current dispute. Following the December 11th conference with the Court, Uber agreed to January 20th as a possible date for a deposition, if the parties could agree on other issues. In the course of discussion of the issues with Plaintiffs' counsel, Uber offered an informal meeting with a corporate representative so that Uber could further substantiate its previous descriptions to Plaintiffs regarding the logs in question and answer questions about how the data is stored. Plaintiffs rejected this idea, requesting instead a deposition on both the discovery issues *and* the issue of whether Uber used an ATDS—suggesting that the true purpose of Plaintiffs' request for an additional 30(b)(6) deposition is to enlarge their overall deposition time with an Uber representative. Indeed, on December 21, 2015, Plaintiffs served two Rule 30(b)(6) notices, seeking 7 hours of time for each deposition.

With the attached declaration, Uber has provided the factual basis for its claims of impossibility. Thus, a separate discovery-specific 30(b)(6) deposition on these issues is not necessary. *Cf. Wells v. Xpedx*, No. 8:05-CV-2193TEAJ, 2007 WL 1200955, at *2 (M.D. Fla. Apr. 23, 2007) (granting request for 30(b)(6) deposition on discovery where defendant had *not* provided specific evidence regarding its discovery efforts).

Sincerely,

/s/ Hassan Zavareei                                  /s/ Debra Bernard
Hassan A. Zavareei                                   Debra R. Bernard
Counsel for Plaintiffs                               Counsel for Defendant

112060-0018/129090634.9