UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LATHROP, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>    Defendant. | Case No.  14-cv-05678-JST<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STAY PROCEEDINGS**<br><br>Re: ECF No. 71 |

Before the Court is Defendant Uber Technologies, Inc.'s ("Uber") Motion to Stay. ECF No. 71. For the reasons set forth below, the Court will deny the motion.

**I.    BACKGROUND**

   **A.    Procedural History**

On December 31, 2014, Plaintiffs filed this putative class action against Uber for alleged violations of the Telephone Consumer Protection Act ("TCPA"). Second Amended Complaint, ECF No. 54 ("SAC"). Uber "is a nationwide passenger transportation service that connects riders and drivers through a cellular telephone application." Id. ¶ 5. According to Plaintiffs, "Uber's recruiting tactics include sending prolific text messages to prospective Uber drivers." Id. ¶ 10. Plaintiffs allege that they received recruiting texts from Uber without providing prior express consent. Id. ¶¶ 32, 48, 61, 75, 88, 98. Plaintiffs Justin Bartolet, Sandeep Pal, Jonathan Grindell, and Jennifer Reilly further allege that they continued to receive texts after asking Uber to stop. Id. ¶¶ 53, 70, 82, 93. Plaintiffs allege that in making these texts, Uber used a device that qualifies as an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1). Id. ¶¶ 30, 46, 59, 73, 86, 96.

On November 13, 2015, Uber filed a Motion to Stay Proceedings in light of two pending

appeals.[1] ECF No. 71 at 1–2. Uber argues that both the D.C. Circuit's review of the FCC's 2015 Omnibus Order of the TCPA in <u>ACA International, et al. v. Federal Communications Commission</u>, No. 15-1211 (D.C. Cir. filed July 10, 2015), and the Supreme Court's upcoming decision in <u>Spokeo, Inc. v. Robins</u>, 135 S.Ct. 1892 (2015), could fundamentally alter the outcome of this case. <u>Id.</u>

**B.     The FCC's 2015 Order and the D.C. Circuit Appeal in <u>ACA International</u>**

On July 10, 2015, the FCC issued a Declaratory Ruling and Order, addressing a number of petitions related to the TCPA. See <u>In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, 30 F.C.C. Rcd. 7961 (July 10, 2015) ("2015 FCC Order"). Uber specifically highlights the FCC's rulings on "automatic telephone dialing system," "called party," and revocation of consent.[2] ECF No. 71 at 12–15. Uber contends that the definitions of these terms are at issue in this case and request a stay while the definitions of these terms are contested. <u>Id.</u> at 15–17.

To qualify as an automatic telephone dialing system, equipment must have "the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A). In its July 2015 order, the FCC clarified that the TCPA's use of the term "capacity" in the definition of "automatic telephone dialing system" does not exempt equipment that lacks the "present ability" to dial randomly or sequentially.[3] 2015 FCC Order ¶ 15. "In other words, the capacity of an autodialer is not limited

---

[1] Three additional TCPA cases against Uber are pending: (1) <u>Kolloukian v. Uber Technologies, Inc.</u>, Case No. 2:15-cv-02856-PSG-JEM filed in the Central District of California on April 17, 2015; (2) <u>Vergara v. Uber Technologies, Inc.</u>, Case No. 1:15-cv-06942 filed in the Northern District of Illinois on August 7, 2015; and (3) <u>Kafatos v. Uber Technologies, Inc.</u>, Case No. 3:15-cv-03727 filed in the Northern District of California on August 14, 2015. Uber filed motions to stay in each case. In <u>Kolloukian</u>, the plaintiff did not oppose the motion, and the court granted the motion to stay. See ECF No. 84, Ex. A. In <u>Vergara</u>, the court denied the motion to stay but encouraged the parties to limit discovery. See ECF No. 85, Exs. A and B. The motion to stay in <u>Kafatos</u> is currently pending before this Court.

[2] Uber also flagged the FCC's interpretation of "call." See ECF No. 71 at 14. However, because petitioners did not brief this issue on appeal, Uber no longer relies on the challenge as a basis for granting the stay. ECF No. 77 at 8 n.2.

[3] The FCC has previously interpreted an ATDS as "cover[ing] any equipment that has the specified capacity to generate numbers and dial them without human intervention, regardless of

to its current configuration but also includes its potential functionalities." Id. ¶ 16.

The FCC also concluded that the term "called party" should be defined as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." Id. ¶ 73. The FCC created a very limited safe harbor for "callers who make calls without knowledge of reassignment and with a reasonable basis to believe they have valid consent to make the call." Id. at ¶ 72. Subject to this exception, "calls to reassigned wireless numbers violate the TCPA when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based." Id. at ¶ 73.

Although the TCPA does not explicitly discuss revocation of consent, the FCC determined that "the most reasonable interpretation of consent is to allow consumers to revoke consent if they decide they no longer wish to receive voice calls or texts." Id. ¶ 56.

After the FCC issued its ruling, nine companies, trade associations, and other entities filed petitions with the U.S. Court of Appeals for the District of Columbia Circuit seeking review of the 2015 FCC Order. The petitions were subsequently consolidated into a single case, ACA International, et al. v. Federal Communications Commission, No. 15-1211. The petitions request that the D.C. Circuit vacate the FCC's ruling with regard to the potential liability for calls to reassigned cell phone numbers and the definition of an "automatic telephone dialing system." The D.C. Circuit set a briefing schedule requiring all briefs to be filed by February 24, 2016. It is unknown when the D.C. Circuit will schedule oral argument or issue a decision.

---

whether the numbers called are randomly or sequentially generated or come from calling lists." In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14017 (2003) ("2003 FCC Order"). The FCC has also ruled that "predictive dialers" fall "within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." Id. Predictive dialers have hardware that, "when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, from a database of numbers." Id. The 2015 FCC Order justified its "potential capacity" interpretation based on the 2003 FCC Order: "By finding that, even when the equipment presently lacked the necessary software, it nevertheless had the requisite capacity to be an autodialer, the Commission implicitly rejected any "present use" or "current capacity" test." 2015 FCC Order ¶ 16.

### C. The Supreme Court's Pending Decision in Spokeo

In Robins v. Spokeo, Inc., 742 F.3d 409 (9th Cir. 2014) cert. granted, 135 S. Ct. 1892 (2015), the plaintiff alleged violations of the Fair Credit Reporting Act ("FCRA"), based on a website's publication of inaccurate consumer information regarding the plaintiff. 742 F.3d at 410. The district court ruled that the plaintiff had not alleged any actual or imminent harm because plaintiff only alleged the misinformation harmed his employment prospects. Id. The Ninth Circuit reversed and held that the alleged violation of the plaintiff's statutory rights under the FCRA, in itself, was sufficient to satisfy the injury-in-fact requirement. Id. at 413–14. The Ninth Circuit held that the relevant interests protected by the FCRA were "sufficiently concrete and particularized" to satisfy the requirements of Article III. Id. Because the panel determined that the plaintiff had standing based on the alleged violations of his statutory rights, the panel did not decide whether harm to the plaintiff's "employment prospects or related anxiety could be sufficient injuries in fact." Id. at 414 n.3.

On April 27, 2015, the United States Supreme Court granted the defendant's petition for a writ of certiorari, Spokeo, Inc. v. Robins, 135 S. Ct. 1892 (2015). The question presented was, "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute," Pet. Writ of Cert. at i, Spokeo, Inc. v. Robins, No. 13-1339 (U.S. May 1, 2014); Br. of Pet'r at i, Spokeo, Inc. v. Robins, No. 13–1339 (U.S. July 2, 2015). The Supreme Court heard oral argument on November 2, 2015 and a decision is expected by June 2016.

Uber contends that the result in Spokeo is important because Plaintiffs have only alleged statutory damages without identifying concrete harm. ECF No. 71 at 20–21.

## II. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Whether to stay proceedings is entrusted to the discretion of the district court. See id. 254–55 ("How this can best

1   be done calls for the exercise of judgment, which must weigh competing interests and maintain an
2   even balance.").
3          In deciding whether to stay proceedings pending resolution of an appeal in another action,
4   a district court must weigh various competing interests, including the possible damage which may
5   result from granting a stay, the hardship a party may suffer if the case is allowed to go forward,
6   and "the orderly course of justice measured in terms of the simplifying or complicating of issues,
7   proof, and questions of law which could be expected to result from a stay." Lockyer v. Mirant
8   Corp., 398 F.3d 1098, 1110 (9th Cir. 2005).  The burden is on the movant to show that a stay is
9   appropriate.  See Clinton v. Jones, 520 U.S. 681, 708 (1997).

10  **III.   DISCUSSION**
11         Uber contends that the possibility that the 2015 FCC Order will be vacated by the D.C.
12  Circuit "is far from speculative." Id. at 16.  Uber particularly stresses that two of the five FCC
13  Commissioners issued strong dissents to the Order, arguing that the Order deviated from the plain
14  language of the TCPA.  Uber also brings two cases to the Court's attention in which the district
15  courts granted stays pursuant to the D.C. Circuit's decision in ACA International: Gensel v.
16  Performant Techs., Inc, No. 13-C-1196, 2015 WL 6158072 (E.D. Wisc. Oct. 20, 2015) and Fontes
17  v. Time Warner Cable, Inc., No. CV14-2060-CAS(CWx), 2015 WL 9272790 (C.D. Cal. Dec. 17,
18  2015).
19         In Gensel v. Performant Techs., Inc, the court concluded that it appeared that the FCC's
20  definition of "capacity" contradicted the plain language of the statute.  2015 WL 6158072, at *2
21  (E.D. Wis. Oct. 20, 2015).  As such, the agency's interpretation would not be entitled deference on
22  appeal.  The court stayed the case pending ACA International and a Seventh Circuit appeal.  The
23  court noted that "most importantly, if the Seventh Circuit were to rule that 'capacity' means
24  'present capacity' in accordance with the plain language of the statute, such a ruling would be
25  dispositive of the instant case because it is undisputed that [the defendant's] telephony system did
26  not and does not have the capacity to randomly or sequentially call phone numbers." Id.  Fontes v.
27  Time Warner Cable, Inc. similarly discussed the FCC's broadened definition of "capacity." See
28  2015 WL 9272790, at *4 (C.D. Cal. Dec. 17, 2015) ("[T]he FCC adopted a broader definition of

United States District Court
Northern District of California

1   'automatic telephone dialing system' that focuses on a device's *potential* capabilities, as opposed
2   to a narrow definition based on a device's *present* capabilities." (emphasis in original)).

3   Uber argues that should the D.C. Circuit vacate the FCC's "potential capacity" definition,
4   the focus and scope of discovery would constrict. ECF No. 77 at 15. "For example, if the D.C.
5   Circuit vacates the FCC's expanded definition of 'ATDS,' Plaintiffs will not be able to argue that
6   they are entitled to discovery on the 'potential ability' of Uber's systems, significantly reducing
7   discovery." Id. Uber asserts that it did not send text messages using an automatic telephone
8   dialing system. See ECF No. 56 (Answer) at 17. Uber similarly contends that its discovery
9   obligations may narrow should the D.C. Circuit address the definition of "called party" or the
10  means a party may use to revoke consent. ECF No. 77 at 16.

11  Plaintiffs counter that the FCC Order's definitions are not new, are likely to be upheld due
12  to their long-standing history, and have been adopted by numerous courts over the years. Id. at
13  15–18. Plaintiffs also point out that regardless of the D.C. Circuit's decision, the parties would
14  "still need to obtain the relevant facts in discovery, as well as the expert opinions necessary, for
15  the Court to apply the law to the undisputed facts." ECF No. 74 at 25. Thus, for example, even if
16  the D.C. Circuit invalidated the FCC's interpretation of an ATDS, "[d]iscovery is still necessary
17  and this Court must still determine whether the calling equipment that Uber actually used qualifies
18  as an ATDS under the TCPA . . . ." Id.

19  The Court finds that a stay in favor of the D.C. Circuit's decision in ACA International is
20  not appropriate. First, while the briefing schedule is set in the case, oral argument has not yet been
21  scheduled and neither the parties and nor the Court can forecast when the D.C. Circuit will
22  ultimately issue a decision. Plaintiffs argue persuasively that they would suffer prejudice from a
23  stay because the case would extend for an indeterminate length of time, increase the difficulty of
24  reaching class members, and increase the risk that evidence will dissipate. ECF No. 74 at 26–27.
25  Moreover, as counsel for Uber acknowledged at the hearing on this motion, the D.C. Circuit is
26  unlikely to be the final step in the litigation over the FCC's 2015 Omnibus Order. Whichever
27  party is unsuccessful in that court is almost certain to appeal to the Supreme Court. Thus, even the
28  most optimistic estimate of the time required for a decision from the D.C. Circuit significantly

1  understates both the delay a stay might engender and the concomitant prejudice to Plaintiff.

2  Second, although the decision in ACA International may vacate portions of the 2015 FCC
3  Order, discovery in this case will be required regardless of the outcome in that one. See 28 U.S.C.
4  § 2342(1) (stating that court of appeals, including the D.C. Circuit, may "enjoin, set aside, suspend
5  (in whole or in part) or []determine the validity" of final FCC orders). Even if the D.C. Circuit
6  were to modify or vacate the 2015 FCC Order, factual disputes, such as whether an ATDS was
7  used and whether text recipients provided their consent, will remain here. Although Uber may
8  suffer hardship, in the form of additional discovery, the Court concludes that this potential
9  hardship does not merit a stay in this case. Uber has not persuaded the Court that the potential
10 changes in the playing field of this case—the size of which are currently unknowable—are so
11 substantial or work such a hardship on Uber that a stay is necessary or appropriate.

12 The Court also declines to grant the stay based on the pendency of Spokeo. In the case at
13 bar, Plaintiffs have articulated concrete harm to them, and are not simply relying on a bare
14 violation of the statute. ECF No. 54 ¶¶ 114–116. In addition to claiming statutory and punitive
15 damages, Plaintiffs allege they and members of the class "suffered damages in the form of text
16 message, data, and other charges to their cellular telephone plans." Id. ¶ 116. Based on the
17 allegations in the Second Amended Complaint, the Court concludes that Plaintiffs have
18 sufficiently stated an injury in fact. See, e.g., Johnson v. Navient Sols., Inc., No.
19 115CV00716LJMMJD, 2015 WL 8784150, at *2 (S.D. Ind. Dec. 15, 2015) (denying motion to
20 stay in TCPA action pursuant to Spokeo because plaintiff's intrusion of privacy allegation stated a
21 claim for actual harm); Doe v. Selection.com, No. 15-cv-02338-WHO, 2015 WL 5853700 at *5
22 (N.D. Cal. Oct. 8, 2015) (denying motion to stay in FCRA action because plaintiff adequately
23 alleged actual injury and because balance of hardships did not warrant a stay). As Uber concedes,
24 it may seek discovery on "whether it can mount a *factual* attack" to Plaintiffs' claims of injury as
25 well as class certification issues. ECF No. 77 at 21. But neither Uber's description of the
26 proceedings in Spokeo nor the Court's independent review persuade the Court that Spokeo is
27 likely to render this case moot.

28 In sum, Uber may face additional discovery obligations but has not established that this

7

hardship justifies staying the case, which would otherwise be delayed with no identifiable end to the stay.  Decisions in ACA International and Spokeo may have a beneficial impact on the case by clarifying questions of law.  Nonetheless, Uber has not shown this is one of the "rare circumstances" in which a stay pending the resolution of an appeal in another case is appropriate.  See Landis, 299 U.S. at 255.

## CONCLUSION

For the foregoing reasons, the Court denies Uber's Motion to Stay.

IT IS SO ORDERED.

Dated:  January 8, 2016

_____
JON S. TIGAR
United States District Judge