# EXHIBIT A

# [REDACTED]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LATHROP, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>    Defendant. | Case No.  14-cv-05678-JST   (KAW)<br><br>**ORDER REGARDING DISCOVERY LETTER BRIEFS**<br><br>Re: Dkt. Nos. 159, 161 |

The parties to this class action have filed three joint discovery letter briefs, which have been referred to the undersigned for resolution. The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b). Having reviewed the papers filed by the parties and the relevant legal authority, the Court resolves the parties' discovery disputes as set forth below.[1]

## I.    BACKGROUND

James Lathrop, Julie McKinney, Sandeep Pal, Jennifer Reilly, Justin Bartolet, and Jonathan Grindell ("Plaintiffs") commenced this class action against Uber Technologies, Inc. ("Uber") on December 31, 2014, alleging that Uber's practice of sending text messages to recruit drivers violates the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 277 et seq. (Compl., Dkt. No. 1; 2d Am. Compl. ("SAC") ¶¶ 111-117, Dkt. No. 54.)

The operative second amended complaint is filed on behalf of six named plaintiffs, who

---

[1] The parties' second joint discovery letter brief, Dkt. No. 160, will be resolved by separate order.

bring claims on behalf of themselves and two putative nationwide classes.[2] (*Id.* ¶¶ 16-21, 100-110.) Two of the named plaintiffs, Julie McKinney[3] and Sandeep Pal, have never been Uber members, drivers, or users, have never applied to be Uber drivers, and have never given Uber their cellular telephone numbers. (*Id.* ¶¶ 23, 63.) The other four named plaintiffs—James Lathrop, Jonathan Grindell, Jennifer Reilly, and Justin Bartolet—began the driver application process through Uber's website, as part of which they provided their cellular telephone numbers. (*Id.* ¶¶ 34-35, 50, 77, 90.) None of the Plaintiffs, however, completed the process to become Uber drivers. (*Id.* ¶¶ 36, 50, 77, 90.)

## II.   LEGAL STANDARD

Rule 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Rule 34(a) provides:

A party may serve on any other party a request within the scope of Rule 26(b):

---

[2] Plaintiffs define Class A as:

> All persons domiciled within the United States who, within the last four years, received a non-emergency text message on their cellular telephone from Uber, without their prior express consent, via an ATDS, and prior to receiving the text message had not provided Uber with the cellular telephone number at which they received the text message from Uber.

SAC ¶ 100. Class B is defined as:

> All persons domiciled within the United States who, within the last four years, received a non-emergency text message on their cellular telephone from Uber, without their prior express consent, via an ATDS, after providing Uber with the telephone number at which they received the text message from Uber through Uber's website.

*Id.* ¶ 101.

[3] On February 3, 2016, the parties stipulated to dismiss Julie McKinney's with prejudice. Dkt. Nos. 123, 125.

>    (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
>       (A) any designated documents or electronically stored information--including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
>       (B) any designated tangible things[.]

Fed. R. Civ. P. 34(a).

### III.   DISCUSSION

#### A.   Text message logs

The parties' first joint discovery letter concerns Plaintiffs' requests for logs of text messages between Uber and certain telephone numbers. (Dkt. No. 158-4.) The specific requests for production are as follows:

> **Request No. 13**: Any and all text message call detail records/logs from Uber.
>
> **Request No. 14:** Any and all text message call detail records/logs from Uber's mobile marketing agent(s).
>
> **Request No. 15:** Any and all text message call detail records/logs from Uber's SMS aggregator(s).
>
> **Request No. 23:** Any and all outbound dial lists of all telephone numbers text called by Uber using its text message system.

(Dkt. No. 158-4 at 17.)

Plaintiffs explain that they seek "text messages to and from two 'Profiles':  (1) numbers obtained by Uber through its 'refer-a-friend' program; and (2) individuals who have never been approved to drive on the Uber platform." (Dkt. No. 158-4 at 2.)[4] In their final compromise, Plaintiffs propose that Uber:  (1) produce counts of the total number of text messages sent by Uber from the relevant log codes to each Profile, (2) produce a sample of 5,000 text message logs (2,500 from each Profile), to Plaintiffs' expert only, and (3) produce an additional sample of 50 text logs for each Profile. (*Id.* at 3.) Plaintiffs assert that the first set of counts is necessary for determining damages in this case, which Plaintiffs state "are based on the number of actionable text messages," that the 5,000 text message log sample will help determine damages with respect to the opt-out subclass without requiring Uber to produce all of the text logs, and that the 100 text

---

[4] In this order, the Court will cite to the unredacted versions of the parties' joint letters.

message log sample will allow Plaintiffs to analyze the "the specific content of putative class member text message activity." (*Id.*)

Uber argues that Plaintiffs' requests are overbroad, are untethered to Plaintiffs' theory of liability, and seek information that is irrelevant and disproportionate to the needs of the case.[5] (Dkt. No. 158-4 at 5.) Uber states that it "does not maintain 'text message call detail record/logs ' ('text logs'), which show the phone numbers texted to/from, the message content, and the date/time sent." (*Id.*) Rather:

> Uber's records that contain text message data also contain a myriad of other data that cannot be produced without manual redaction, including sensitive personal information ("SPI," e.g., social security and driver's license numbers) of absent class members and individuals who may not be parties to this suit; and communications the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 et seq., may prohibit from disclosure without a warrant.

(Dkt. No. 158-4 (footnote omitted).) Uber requests that if it is required to produce text logs in addition to those already produced, it should not be required to produce more than 100. (*Id.* at 6.) Uber also proposes that if this sample of 100 additional text logs is not sufficient to meet Plaintiffs' needs, Plaintiffs may seek additional text logs after reviewing the 100 produced. (*Id.*)

At this stage of the case, the Court finds that Uber's proposal is adequate. Plaintiffs may review an initial sample of 100 random text logs, and upon completing their review, Plaintiffs may request additional text logs if the initial sample is insufficient. *See O'Connor v. Uber Technologies, Inc.*, No. C-13-03826 EMC (DMR), 2014 WL 5794323, at *3 (N.D. Cal. Nov. 6, 2014) (ordering production of materials based on a random sample of 100 deactivated drivers).[6]

This approach has the advantage of educating Plaintiffs, and Plaintiffs' expert, on how Uber stores the information that Plaintiffs claim is relevant to their case, and in turn, the parties will be in a better position to tailor their discovery efforts accordingly. Uber's proposal is appropriate for the additional reason that, according to Plaintiffs, the sample of 5,000 text logs and

---

[5] In their joint letters, both parties cite to other docket entries that were not included as attachments. Accordingly, with the exception of court orders, the undersigned has only considered material attached to the joint letters, especially since the parties were granted leave to exceed the applicable page limits. Dkt. No. 165.

[6] Plaintiffs argue that *O'Connor* is distinguishable because the presiding judge in that case placed certain limits on discovery, which are not present here. Dkt. No. 158-4 at 4. Nonetheless, the Court finds that ordering production on a sample size basis is appropriate at this juncture.

the text message counts they seek are relevant to damages.  (Dkt. No. 158-4 at 3.)  Given that Uber's summary judgment motion is set for hearing on June 30, 2016 and Plaintiffs' motion for class certification is not due until October 17, 2016, the Court finds that requiring Uber to compile the voluminous information Plaintiffs currently seek would be unnecessarily burdensome at this time.[7]  *See Johnson v. Sky Chefs, Inc.*, No. C11-05619 LHK (HRL), 2013 WL 11081261, at *2 (N.D. Cal. May 28, 2013) ("Though the requested discovery appears to be relevant to a damages calculation, or to the case generally, plaintiffs have not convinced the Court that they are entitled to the requested information prior to class certification.").  Plaintiffs may renew their requests at a later date.

### B.   Uber's analytics database

The parties' third joint discovery letter concerns Plaintiffs' requests for information related to Uber's analytics database.  (Dkt. No. 158-8.)  The relevant requests for production read:

> **Request No. 35:**  All documents comprising or relating to any database(s) utilized by Uber containing information provided by prospective drivers (or partners) to Uber during the process of applying to be an Uber driver (or Uber partner), including, but not limited to, the following: mobile telephone number, name, address, email address, other contact information, application status, and indication of consent to receive SMS messages.
>
> **Request No. 40:**  With respect to Uber's ▆▆▆▆▆ database, as described during the January 25, 2016 deposition of Michael Kadin (e.g., pages 176-191, 208-212, 217-218): a. A list of all fields in the database; b. A list of all tables in the database; c. A list of all columns in the database; d. A list of all potential values for each field in the database; and e. A database dictionary.

(Dkt. No. 158-8.)  Plaintiffs now seek a variant of the information set out in those requests, specifically, "(1) all of the information in Uber's analytics database related to them personally,[8] and (2) identification of all *fields* in the ▆▆▆▆▆ database (and not production of the database

---

[7] The presiding judge has also indicated that "the Court expects to consider any motions for summary judgment after it has resolved the question of class certification.  Therefore, the earlier filing of a motion for summary judgment may not automatically result in its earlier consideration."  Dkt. No. 145 at 1.

[8] Uber argues that this reformulation by Plaintiffs "stretches beyond what they asked for in their RFPs."  Dkt. No. 158-8 at 5.  To the extent the information Plaintiffs now seek is no longer limited to "information provided by prospective drivers," the Court agrees.  *Compare* Dkt. No. 158-8 at 3 *with* RFP No. 35.

entries themselves)." (*Id.* at 3.)

As to Plaintiffs' request for information concerning prospective Uber drivers, Uber contends that to the extent the requests seek any relevant information, that information has already been produced. (*Id.* at 5.) Specifically, Uber states that it "has already produced all information from the ▇▇▇▇ table—and from other database tables and cloud storage—that the named Plaintiffs provided to Uber, as well as other information directly triggered by an action of the named Plaintiffs (e.g., sign-up time)." (*Id.*) In light of this representation, and given that Plaintiffs now seek information, though broader in scope than that sought in the original request, "related to them personally," the Court is not inclined to order further production in response to this request at this time. The Court rejects Plaintiffs' argument that Request No. 35 should not be read as seeking only information inputted by Plaintiffs since that limitation appears in the text of the request itself.[9] *See* RFP No. 35 ("All documents comprising or relating to any database(s) utilized by Uber containing information provided by prospective drivers (or partners) to Uber . . . .").

With respect to their request for the fields of the ▇▇▇▇ database, Plaintiffs argue:

> Relevant information could include, inter alia, a field indicating whether consent to receive SMS messages was provided,[10] timestamps indicating receipt of information, or "null" entries showing that required documents were never supplied. Due to Uber's silence, Plaintiffs have no way to know whether such information exists. Notably, Uber has not denied that these sorts of fields exist. And Uber already has a list of the exact fields in the ▇▇▇▇ table—its corporate designee testified that he has seen it. Ex. A (Kadin Dep. Tr. at 177). Production of this existing list is unquestionably proportional to the needs of this high-stakes case.

(*Id.* at 4.) Despite Plaintiffs' claim that "Uber's self-serving argument that the unidentified ▇▇▇▇ table fields are not relevant is based on nothing more than its say so," Plaintiffs nonetheless bear the burden of establishing the information's relevance. Fed. R. Civ. P. 26(b)(1); *see Trejo v. Macy's, Inc.*, 5:13-cv-02064-LHK (PSG), 2014 WL 1091000, at *1 (N.D. Cal. Mar. 18, 2014) ("On a motion to compel, the party seeking to compel discovery has the initial burden of

---

[9] For this reason, Plaintiffs have not established that the content of ▇▇▇▇ field in Uber's databases falls within the scope of its request.

[10] Uber states that it "has already produced the field Plaintiffs contend they seek indicating consent to receive text messages or a timestamp of such consent—the date/time stamp of each of the Class B Plaintiffs' sign-up." Dkt. No. 158-8 at 6.

establishing that its request satisfies the relevancy requirements of Rule 26(b)(1).") (footnote and internal quotations omitted). Here, Plaintiffs have not done that. To the extent the content of certain fields, as Plaintiffs claim to be the case with the ▇▇▇▇ field,[11] might bear on the issue of consent or the ascertainment of a class, Plaintiffs were free to ask for such information rather than seeking out mere precursors to that information. But their current request for "identification of all fields in the ▇▇▇▇ database (and not production of the database entries themselves)" does not seek content at all. This convinces the Court that Plaintiffs are in pursuit of potential information that, in turn, might lead to the discovery of admissible evidence—a pursuit no longer authorized by the current version of the Federal Rules of Civil Procedure. *See Gilead Sciences, Inc. v. Merck & Co., Inc.*, No. 5:13-cv-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Mar. 17, 2014) ("No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence."). Accordingly, Plaintiffs' request for this information must be denied.

IV. **CONCLUSION**

For the reasons set forth above, Plaintiffs' requests are denied with the following exception: Plaintiffs may review an initial sample of 100 random text logs prepared by Uber, and upon completing their review, Plaintiffs may request additional text logs if the initial sample is insufficient.

**IT IS SO ORDERED.**

Dated: 05/27/16

KANDIS A. WESTMORE
United States Magistrate Judge

---

[11] Relying on the deposition testimony of Uber's corporate designee, Plaintiffs argue that because an ▇▇▇▇ denotation in the ▇▇▇▇ field means that a driver has completed all on-boarding steps, it follows that the absence of such a denotation means that a prospective driver did not complete all on-boarding steps, and by extension, did not consent to receive text messages from Uber. Dkt. No. 158-8 at 3-4.

7